Samuel Richard Rubin
FEDERAL DEFENDER
Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, New York Bar No. 5414099
ASSISTANT FEDERAL DEFENDERS
Federal Defender Services of Idaho
702 W. Idaho Street, Suite 900
Boise, ID 83702
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org
       Christopher_M_Sanchez@fd.org

Stanley J. Panikowski
(admitted *pro hac vice*)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:  619.699.2700
Facsimile:  619.699.2701
ECF:   stanley.panikowski@dlapiper.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **GERALD ROSS PIZZUTO, JR.,** and **THOMAS EUGENE CREECH,** | ) ) ) | **CASE NO. 1:20-cv-114-DCN** |
| Plaintiffs, | ) ) | **RESPONSE TO MOTION TO** |
| | ) | **DISMISS AMENDED COMPLAINT** |
| v. | ) | **[DKT. 21]** |
| | ) | |
| **JOSH TEWALT**, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The State's motion to dismiss, Dkt. 21, seeks to punish the plaintiffs for their diligence and force the Court to adjudicate complex, life-and-death matters on an unnecessarily last-minute schedule. For those reasons, and the others that follow, the motion should be denied.[1]

Because the issues are so interrelated, the plaintiffs incorporate every section of this response into every other section.

## I.    Legal Standards

When a motion to dismiss is brought under Rule 12(b)(1) for lack of standing, the court must defer to the plaintiff's factual allegations and "presume that general allegations embrace those specific facts that are necessary to support the claim." *Young v. Crofts*, 64 F. App'x 24, 25 (9th Cir. 2003). "[A] 12(b)(1) motion to dismiss for lack of standing can only succeed if the plaintiff has failed to make general factual allegations of injury resulting from the defendant's conduct." *Id.*[2] The standard for dismissal under Rule 12(b)(1) is equally applicable to motions challenging subject matter jurisdiction when such jurisdiction may be contingent on facts that are in dispute. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* To survive dismissal, a complaint need only contain sufficient factual matter, accepted

---

[1] Because they have removed him from their Amended Complaint as a defendant, *see* Dkt. 18 at 1, the plaintiffs do not object to the State's request that the Governor be dismissed from the lawsuit, *see* Dkt. 21-1 at 5.

[2] In this response, unless otherwise noted, all internal quotation marks and citations are omitted and all emphasis is added.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 2

as true, that is plausible on its face.  *Id*.  A claim is facially plausible when the facts pled allow the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.

## II.      The Claims Are Ripe

The State resists the claims on ripeness grounds, suggesting that the Court should allow

the Idaho Department of Correction ("IDOC") to follow its usual practice and compress all of the

difficult, high-stakes litigation regarding the plaintiffs' executions into a thirty-day period so as to

stack the deck against relief.  Dkt. 21-1 at 5–7.  Other than making things more convenient for

IDOC, the defendants' suggestion has no merit.

As a preliminary matter, the fundamental premise of the State's ripeness theory—that an

inmate has no standing to challenge his execution until it is scheduled—is mistaken.  The State

offers no precedent on the subject and well-reasoned authority is squarely inconsistent with its

approach.  *See Chester v. Beard*, 657 F. Supp. 2d 534, 538 (M.D. Pa. 2009) (denying a motion to

dismiss a lethal-injection complaint on standing grounds where a death warrant had not yet issued).

The State's current view of ripeness is also notably at odds with its historic position.  In

the most recent execution litigation in Idaho before the present case, the State opposed a stay of

execution when the lawsuit was brought "two months prior" to the date set in the death warrant

for the very reason that it was supposedly done at "the last minute."  *Creech v. Reinke*, D. Idaho,

No. 12-173, Dkt. 22 at 22.  Put another way, the State's view is that an execution challenge is

always either too early or too late, which cannot be the law.

The State's "heads-I-win-tails-you-lose" characterization of standing is especially

problematic when wielded against the plaintiffs' claims.  Whatever might be said in favor of a rule

rendering any *substantive* challenges to an execution protocol premature before a death warrant,

*but see Chester*, 657 F. Supp. 2d at 538, such a rule makes no sense when applied to the plaintiffs'

Amended Complaint, which is based on the very fact that they have no protocol to challenge. The harm alleged in a substantive challenge arguably does not occur until the unconstitutional execution takes place. By contrast, the injury inflicted on the plaintiffs by the defendants' refusal to supply them with any meaningful information about how they will be executed is taking place as we speak. It is now that the plaintiffs are unable to assess the State's plans for an execution, contest any aspect of those plans they believe to be unconstitutional, and raise their claims in court. *See McGehee v. Hutchinson*, --- F. Supp. 3d ----, 2020 WL 2841589, at *46 (E.D. Ark. 2020) (finding standing because an access-to-court claim alleged an injury based on the plaintiffs' inability to seek redress for a prospective execution-related constitutional violation). In that sense, to dismiss the claims for lack of standing would perpetuate the precise harm the Amended Complaint is founded on, as it would create an artificially compressed timeline for execution litigation and prevent the Court from engaging in the searching review that is warranted in a capital case.

Even setting aside that conceptual flaw at the heart of the State's motion to dismiss, its description of the facts at issue is still inaccurate. First, the State asserts it is unduly speculative for the parties and the Court to prepare for Mr. Pizzuto's execution now because he has pending a certiorari petition at the U.S. Supreme Court and a post-conviction proceeding at the Idaho Supreme Court. Certiorari petitions are denied approximately 99% of the time, *see* Dkt. 18 at 20, and the Idaho Supreme Court has already rejected Mr. Pizzuto's intellectual-disability claim once, *see Pizzuto v. State*, 202 P.3d 642 (Idaho 2008). While Mr. Pizzuto will continue to vigorously pursue those cases, the reality is that the odds are against him, and there is no cause for the Court to close its eyes to the likelihood of an execution until the month it is happening.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 4

Next, the State disparagingly refers to the plaintiffs' "presumption" that IDOC will amend its protocol before an execution takes place.[3]  Dkt. 21-1 at 6.  The Amended Complaint alleges that IDOC itself told undersigned counsel as much.  *See* Dkt. 18 at 8.  As with the State's motion to dismiss generally, the averments in the Amended Complaint must be accepted as true for purposes of its ripeness challenge under Federal Rule of Civil Procedure 12(b)(6).  *See Carson Harbor Vill. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004).  Unless the State is encouraging the Court to assume that IDOC was being dishonest with the plaintiffs, its intention to revise the protocol prior to the next execution is at this stage a fact, not a presumption.

Further, while disclaiming their own promises to the plaintiffs about issuing a new protocol before an execution, IDOC continues to defend its right to do so, describing this last-minute approach as "practical" and "efficient."  Dkt. 21-1 at 12.  In other words, the defendants' apparent belief is that the plaintiffs should challenge a protocol that the State itself has said will be superseded and then, after that lengthy and time-consuming litigation, IDOC will still replace the protocol a month before an execution.  To let IDOC have its cake and eat it too in that way might be "practical" and "efficient" for the defendants, because it would relieve them of any obligation to meaningfully defend the constitutionality of their execution plans.  But it is not practical and efficient for anyone else.

Moreover, even if one were to assume that IDOC's promise to change the protocol before the next execution was false, the claims would still be ripe.  The current protocol does not tie IDOC down to the use of any particular drug and gives the Director unfettered discretion to change it at

---

[3] Some of the State's arguments about speculativeness reappear in its section on whether the plaintiffs adequately pled their Amended Complaint, in addition to its section on standing.  *See* Dkt. 21-1 at 10–13.  For economy's sake, the plaintiffs address all such arguments here, and they should be understood as going to both standing and the pleading standards.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 5

will. *See* Dkt. 18 at 8, 64. Thus, if the current protocol were to continue to be in effect in any meaningful way, the plaintiffs' injury from the deprivation of information would remain live.

The State reads the Amended Complaint as assuming that no protocol will be in place before a death warrant is issued. Dkt. 21-1 at 6. There is no such statement in the Amended Complaint. The problem is rather that there will not be enough time to adequately litigate the contents of the protocol before an execution takes place. As noted earlier, that problem already exists. And it will be exacerbated if IDOC follows its past practice, which includes—for example—announcing the drug to be used in the Leavitt execution eighteen days before it took place, and announcing new protocols shortly before both of the two most recent executions. *See* Dkt. 18 at 11, 21. IDOC cannot seriously criticize the plaintiffs for "assuming" that it will behave similarly now to how it did the last time it executed someone. *See West v. Brewer*, No. 2:11-cv-1409, 2011 WL 2912699, at *4 (D. Ariz. July 20, 2011) (considering a correctional department's past execution practices in denying a motion to dismiss for failure to state a claim). It would be improper to assume that IDOC will behave any differently this time around, especially when all inferences must be drawn in the plaintiffs' favor.

Although the current protocol is a nullity, since the defendants will be modifying it before another execution occurs, the plaintiffs nevertheless dispute the State's depiction of that document as "judicially approved." Dkt. 21-1 at 6. The decision addressing that protocol concerned a request to stay an execution and administrative exhaustion—it was not an opinion on the merits of the underlying constitutional challenge. *See Creech v. Reinke*, D. Idaho, No. 1:12-cv-173, 2012 WL

1995085 (D. Idaho June 4, 2012) (*Creech I*).[4]  Of equal importance, the order was rendered under the extreme time constraints occasioned by the State's practice of waiting until the last minute to reveal its execution plans—the very practice under attack in the case at hand.  *See id.* at 2–3.  The plaintiffs here might well formulate other claims that were not asserted before if they are afforded the notice that IDOC failed to give Mr. Leavitt.  In fact, the health-based claims that the plaintiffs need to explore in the instant case, *see* Dkt. 18 at 41–47, were by definition unavailable to Mr. Leavitt, and the current protocol is irrelevant for that reason as well.

Taking a similar tack, the State maintains that this Court has already approved of IDOC's penchant for revealing its execution plans at the eleventh hour.  *See* Dkt. 21-1 at 6.  However, the cited decision did not involve a challenge to such revelations—it dealt with a substantive attack on the protocol itself.  *See Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1067 (D. Idaho), *aff'd*, 671 F.3d 856 (9th Cir. 2011).  And even then, the Court went out of its way to mention twice that it was "troubled" by the unnecessarily abridged timeline that IDOC had created, *id.* at 1058-59, 1067, a concern that is now—for the first time—the focus of the litigation.

The State posits that the plaintiffs' request to enjoin their execution is unavailable, because no warrant has yet issued.  *See* Dkt. 21-1 at 6.  Preliminarily, the prayer for such an injunction is only one of the remedies sought by the plaintiffs.  The most rudimentary form of relief would be to simply order the defendants to disclose to the plaintiffs the information they desire.  *See* Dkt. 18 at 65.  That relief is obtainable now under any view, regardless of whether a warrant exists, so there is no basis to dismiss the Amended Complaint.  And in any event, the State has no authority

---

[4] In addition, a district court order does not enjoy the force of binding precedent, even in the tribunal that issued it.  *See Kessler v. Assocs. Fin. Servs. Co.*, 573 F.2d 577, 579 (9th Cir. 1977).  The plaintiffs also note that Mr. Pizzuto was not a party in *Creech I*.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 7

for the proposition that a court is powerless to enjoin an execution just because a warrant has not been filed.  The precedent is to the contrary.  *See, e.g.*, *United States v. Lee*, --- F.3d ----, 2020 WL 2832118, at *1 (8th Cir. 2020) (declining to dismiss an appeal as moot on the ground that the scheduled date has passed because the order staying the execution forbade the government from choosing a new date).  There is nothing prohibiting the Court from ordering the State to forego seeking a death warrant in the first place.

Finally, the State's view of standing would make execution litigation highly impractical. Take just one example.  As observed earlier, the State declared its intention to use pentobarbital in the Leavitt execution eighteen days before ending his life with the drug.  If the State's articulation of standing in its motion to dismiss is correct, IDOC would again be entitled to advise Mr. Pizzuto of the cocktail it has in mind for his execution within three weeks of the event.  Then, with eighteen days before Mr. Pizzuto's scheduled death, undersigned counsel would have to consult with several experts about whether the drug is appropriate for executions and about whether it might cause complications in particular for Mr. Pizzuto, who is on hospice with bladder cancer and diabetes and has taken more than forty-two medications over the last year.  *See* Dkt. 18 at 41–47; *see also McGehee*, 2020 WL 2841589, at *4–28 (describing the experts who testified at a lethal-injection bench trial, which included an anesthesiologist, a pharmacologist, a pathologist, a toxicologist, and experts on gunshot wounds and end-of-life care).  After that, IDOC expects Mr. Pizzuto to exhaust any claims within the prison system, and for his counsel to then draft and file an Amended Complaint and litigate it through three levels of the federal judiciary, with whatever proceedings and hearings that entails.  The prospect that all of that could happen in any case in eighteen days is fantastical, let alone in a death penalty matter.  Simply put, if embraced by the Court, IDOC's approach to ripeness means that the plaintiffs will be completely unable to

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 8

meaningfully contest any aspect of their executions.  The rights that they have in connection with their executions then become a dead letter.

Even the defendants do not truly disagree.  The message of their motion is rather that such litigation can be skipped, because IDOC promises to "provide for the safeguards" required by law. Dkt. 21-1 at 7.  Needless to say, this "just-trust-us" model is not how litigation works.  The plaintiffs are not required to defer to the judgment of the agents who are actively attempting to end their lives.  They have a constitutional right to independently ensure that their executions are lawfully carried out.  Accepting the allegations in the Amended Complaint as true, as the Court must, IDOC tried to obtain lethal chemicals from an unqualified salesman in India and later purchased drugs for an execution with a suitcase full of cash in a Walmart parking lot.  *See* Dkt. 18 at 11–12, 24–25.  It must also be accepted as true that executions around the country have been botched, leading to torturous deaths.  *See, e.g.*, *id.* at 37–38.  Under such circumstances, it would be especially inappropriate to follow the State's advice and allow IDOC unfettered discretion in this most sensitive area, thereby increasing the likelihood of an inhumane execution.

## III.    Dismissal On Exhaustion Grounds Is Inappropriate

The State attempts to have most of the claims dismissed on exhaustion grounds, *see* Dkt. 21-1 at 7–10, but doing so is entirely unnecessary because there is no dispute that IDOC is unwilling to provide a remedy for the plaintiffs' complaints.

### A.    Exhaustion Arguments Pertaining To Both Plaintiffs

The plaintiffs begin with the exhaustion arguments that apply to both plaintiffs.

#### 1.    Exhaustion Does Not Apply To This Lethal Injection Claim

The State cites to *Creech I* for the proposition that prisoner lethal injection challenges are subject to the exhaustion requirements of the Prison Litigation Reform Act of 1995 ("PLRA"), 42

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 9

U.S.C. § 1997 *et seq.*, but that case is not binding.  *See* Dkt. 21-1 at 7.  *Creech I* and other cases

subjecting lethal injection challenges to the PLRA are also fundamentally at odds with the statute's

plain language limiting the administrative exhaustion mandate to actions concerning "prison

conditions," which is clearly different from actions concerning executions.  *See* 42 U.S.C.

§ 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted.").  Further, even if the

PLRA reached such challenges, courts have found exhaustion unnecessary where there is no

indication in the record that grievance procedures would be productive in addressing issues related

to execution protocol.  *See Murphy v. Collier*, 423 F. Supp. 3d 355, 359 n.1 (S.D. Tex. 2019),

*motion to vacate order denied*, 942 F.3d 704 (5th Cir. 2019).  In *Murphy*, similar to this case,

counsel for the prisoner had previously communicated concerns about the execution protocol to

counsel for the relevant state correctional agency to no avail.  *Id.*  The court rejected the state's

PLRA-based arguments, finding "[t]here is no indication in the record that filing a prison grievance

for review by a warden and then administrative staff would be productive when they have no

ability to change TDCJ execution protocol."  *Id.*  Similarly, there is no indication here that IDOC's

grievance process could effectively address the plaintiffs' concerns about execution protocols.  The

State bears the burden of establishing lack of exhaustion as an affirmative defense, *see Jones v.*

*Bock*, 549 U.S. 199, 206 (2007), and that burden has not been met.[5]

---

[5] Likewise, although the plaintiffs have pled some of their efforts to exhaust IDOC procedures in
the Amended Complaint, demonstrating exhaustion in that pleading is not required.  *See Jones*,
549 U.S. at 206.  Accordingly, the State's argument that the plaintiffs' allegations concerning
exhaustion are unsupported and/or insufficient, Dkt. 21-1 at 8, incorrectly shifts the burden to the
plaintiffs on this issue.

### 2. Exhaustion Is Not Required Because Administrative Remedies Are Unavailable To The Plaintiffs Given The Specific Circumstances Of The Case

A plaintiff is compelled to exhaust only those administrative remedies that are "available." *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The exception is satisfied when an inmate has "been reliably informed by an administrator that no remedies are available," *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005), even when one exists as a technical matter "on the books," *Fuqua v. Ryan*, 890 F.3d 838, 849 (9th Cir. 2018). Taking the Amended Complaint's allegations as true, as the Court must, IDOC officials were approached directly by undersigned counsel, engaged with them on their requests, and ultimately refused to provide them with the information the plaintiffs are seeking about their executions. *See* Dkt. 18 at 10–11. Effectively, then, IDOC has informed the plaintiffs that no remedy is available, and exhaustion is excused.

### 3. The Language In The Administrative Grievance Forms Sufficiently Addressed All Claims It Was Required To Address

Applying a hypertechnical understanding of exhaustion that is inconsistent with the governing law, the State submits that the language used by the plaintiffs in their grievance forms encompassed only Claim One. *See* Dkt. 21-1 at 8–9. The only reasoning provided by the State is that the forms did not refer to Idaho's execution protocol. *See id.* What the State misunderstands is the *legal significance* of the protocol to the plaintiffs' claims, which is that it provides them the information they are seeking and have been unconstitutionally denied. It is that denial of information that underlies all of the claims except the separation-of-powers issue, which is addressed below. *See* Dkt. 18 at 50–65. The protocol is simply the vehicle for delivering the information. And the grievance forms undeniably complained about the lack of information. *See* Dkt. 17-5. In so doing, the plaintiffs presented to the prison their "core concerns or problems," such that IDOC could "understand the nature of the complaint and have an opportunity to fix it,"

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 11

and that is all the exhaustion rule demands.  *Spaude v. Corr. Corp. of Am.*, No. 1:10-cv-551, 2011 WL 5038922, at \*3–5 (D. Idaho Oct. 21, 2011) (relying on *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009)).

Given the tight restrictions placed by IDOC on grievances, it would be especially inequitable to find that the plaintiffs did not lay out their issues in enough detail.  State inmates in Idaho must handwrite their complaint on seven lines—they are forbidden from attaching a document, having an attorney type out their concern, or even writing on the opposite side of the sheet.  *See* Dkt. 17-3 at 7, 20.  The plaintiffs complied with all of those strict requirements, and their concern forms were filled out with necessarily concise language as a result.  *See* Dkt. 17-5.  There was no room left to elaborate on the point the defendants now emphasize.  Consider how much space it takes to even identify the full protocol: "Standard Operating Procedure 135.01.001.001, v.36, adopted May 18, 1998, reviewed January 6, 2012."  That is a full line in this typewritten document, and would consume far more space in ink on IDOC's highly constricted forms.

IDOC needlessly chose to rigidly circumscribe the grievance process.  *See Freeman v. Julious*, No. 1:09-cv-2245, 2011 WL 1748580, at \*2 (E.D. Cal. May 6, 2011) (describing a prison system which permits inmates to attach a page to their grievance).  To fault the plaintiffs for not including additional explanation of *how* IDOC should provide them with the information they seek (i.e., through a protocol) would be to punish them for obeying unnecessarily strict rules the defendants themselves have imposed on the process, which is impermissible.  *See Nunez v. Duncan*, 591 F.3d 1217, 1225–26 (9th Cir. 2010) (excusing exhaustion because the inmate's efforts to grieve the issue were "stymied" by the prison's conduct).

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 12

### 4.   Exhaustion Was Unnecessary For The Separation-Of-Powers Claim

The State contends that the separation-of-powers issue (Claim Seven) is barred as unexhausted, *see* Dkt. 21-1 at 9–10, overlooking the fact that the defendants are powerless to redress the problem.

As set forth earlier, the plaintiffs need only exhaust those claims that are "available."  *See supra* at Part III.A.2.  In other words, for the exhaustion requirement to apply, there must be "the possibility of some relief" within the prison system "for the action complained of."  *Booth v. Churner*, 532 U.S. 532 U.S. 731, 738–39 (2001).  The violation identified by Claim Seven is an inadequate amount of legislative guidance for IDOC in connection with executions.  *See* Dkt. 18 at 61–64.  As such, the remedy is for the legislature to provide that oversight.  *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (describing how a claim of this sort is based on the *legislature's* failure to provide sufficient standards to an agency for the discharge of its duties).  The prison administrators tasked with responding to inmate grievances could not provide that remedy, as they are not lawmakers.  It follows that the plaintiffs had no obligation to pursue the separation-of-powers claim through the grievance process.  *See White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015) (Posner, J.) ("[H]ow could a prisoner be expected to file a grievance that would be academic because no response would benefit him or her in the slightest?"); *Williams v. City of Phila.*, 270 F.R.D. 208, 222 (E.D. Pa. 2010) (excusing the exhaustion requirement for an overcrowding complaint because the problem could not be solved by the defendants).

### B.  Exhaustion Arguments Pertaining To Mr. Creech

The plaintiffs now turn to the exhaustion arguments involving Mr. Creech in particular.

### 1.  Administrative Remedies Are Unavailable To Mr. Creech

To begin, it would not make sense to dismiss any of Mr. Creech's claims for lack of exhaustion when his co-plaintiff took the exact same issues all the way through the grievance process and was granted no relief.  An administrative remedy is deemed unavailable, thereby excusing exhaustion, when a grievance would be a "dead end" because prison authorities are unable or unwilling to provide the type of relief at issue.  *Ross*, 136 S. Ct. at 1859.  Since Mr. Pizzuto's identical complaint was rejected, it would have been a "dead end" for Mr. Creech to go through the academic exercise of eliciting the same denial, and the exhaustion requirement does not apply.  *Brant v. Reddish*, No. 3:13-cv-412, 2019 WL 4600366, at *14–15 (M.D. Fla. Sept. 23, 2019) (excusing exhaustion because the prison consistently refused to provide relief on inmates' execution-related claims in the grievance process).  The purpose of the exhaustion requirement is to give prison authorities the chance to resolve the issue before the inmate heads to court.  *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  IDOC had that opportunity here, with Mr. Pizzuto's submissions, and it elected not to provide the information he desired.  No reasonable goal would be served by preventing Mr. Creech from litigating these important issues just because he did not elicit the same final denial that everyone involved knows he would have received.  Any lack of exhaustion should be forgiven.

### 2.  Mr. Creech Adequately Pursued Exhaustion

If the Court nonetheless applies the exhaustion requirements to Mr. Creech, his claims still should not be dismissed.  Although the State challenges Mr. Creech's claims on the ground that he did not complete the grievance process, *see* Dkt. 21-1 at 8, there is a dispute of material fact on the question that precludes summary dismissal.

As an initial matter, the State has used the wrong procedural vehicle for its attack. When prison officials resort to material beyond the pleadings and public records, their exhaustion theory is properly lodged in a motion for summary judgment, not in a motion to dismiss. *See, e.g.*, *Cherry v. Shedd*, No. 3:10-cv-271, 2015 WL 77402, at *1 (D. Idaho Jan. 6, 2015) (citing *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc)). The defendants here rely on a declaration by a grievance coordinator. *See* Dkt. 21-1 at 8. Therefore, they should have filed a motion for summary judgment, rather than a motion to dismiss, as IDOC officials routinely do in similar situations. *See, e.g.*, *Cherry*, 2015 WL 77402, at *1. As a result, the Court should reject the State's argument on that basis alone, and order the defendants to file a motion for summary judgment if they wish to pursue one. *See Jonas v. Reinke*, No. 4:12-cv-251, 2013 WL 3965312, at *3 (D. Idaho Aug. 1, 2013).

However, even if the substance of the State's point is considered at this stage, dismissal is still unwarranted. As noted, when an exhaustion argument brings in material from outside the pleadings and the public records, it is appropriately taken up as a matter of summary judgment. *See Cherry*, 2015 WL 77402, at *1. Summary judgment cannot be granted when there is a disputed issue of material fact, reviewing the record in the light most favorable to the non-moving party. *See Goodrick v. Roane*, No. 3:05-cv-094, 2007 WL 853980, at *2 (D. Idaho Mar. 19, 2007). Attached to this response is a declaration from Mr. Creech, in which he attests under oath that he did in fact submit a grievance after the prison denied his concern form, *see* Ex. 1, contrary to the defendants' assertion, *see* Dkt. 17-2 at 4. Mr. Creech further avers that the prison never responded to his grievance. *See* Ex. 1. The prison's complaint process lacks any provision allowing an inmate to file an appeal when the institution has not addressed the grievance. *See generally* Dkt. 17-3. Under those circumstances, an inmate who puts in a grievance and gets no response has

exhausted his claim, *Hoak v. Smith*, No. 1:08-cv-402, 2009 WL 3806336, at *9 (D. Idaho Nov. 9, 2009), or need not do so because remedies are unavailable, *see Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001).  Because there is a dispute over what Mr. Creech did to exhaust his claims, his claims cannot be summarily dismissed.  If the Court does not rebuff the State's exhaustion defense for other reasons, an evidentiary hearing is called for.  *See Goodrick v. Field*, No. 1:17-cv-265, 2020 WL 1948840, at *6 (D. Idaho Apr. 22, 2020) (ordering an evidentiary hearing on exhaustion where the inmate maintained that he had submitted a grievance and the defendants' records reflected otherwise).

**IV.    The Plaintiffs Have Sufficiently Pled Their Claims**

Turning to the sufficiency of the Amended Complaint's allegations, the plaintiffs adequately pled their claims under Rules 8 and 12(b)(6), notwithstanding the State's conclusory arguments to the contrary.

**A.  The Claims Based On A Right To Information (Claims 1, 2, 4)**

The plaintiffs have alleged sufficient facts to support their claims based on a right to information.  *First Amendment Coalition of Ariz., Inc. v. Ryan*, the only authority on which the defendants rely in attempting to defeat Claims One, Two, and Four, does not prevent the plaintiffs from seeking the information enumerated in paragraphs 498, 519, and 529 of the Amended Complaint.  *See* Dkt. 18 at 50–51, 54, 55.   In *First Amendment Coalition*, the Ninth Circuit expressed concern with the lack of detailed information provided to the plaintiffs regarding execution drugs and personnel given Arizona's checkered past with executions.  *First Am. Coal. of Ariz., Inc. v. Ryan*, 938 F.3d 1069, 1080 (9th Cir. 2019).  The court stated that such information would undoubtedly aid the public and death-row inmates in monitoring the constitutionality of Arizona's execution proceedings.  *Id*.  Similar to Arizona, Idaho has a troubling execution history,

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 16

which, as set forth in the Amended Complaint, includes pursuing lethal injection drugs in an irresponsible manner and obfuscating its plans in order to frustrate legitimate litigation and public scrutiny.  *See* Dkt. 18 at 11–31.

Immediately after voicing concerns with Arizona's execution history and obfuscation of information, the Ninth Circuit made clear that inmates are not precluded from asserting a procedural due process right to obtain information regarding execution drugs and execution team members.  *First Am. Coal. of Ariz., Inc.*, 938 F.3d, at 1080.  Consistent with *First Amendment Coalition*, the plaintiffs' fourth cause of action seeks execution-related information on due process grounds.  Such a claim is in no way precluded by *First Amendment Coalition* and should not be dismissed.[6]

### B.  Absence Of Protocol As Eighth Amendment Violation (Claim 3)

The plaintiffs have also adequately pled an Eighth Amendment claim.  Claim Three alleges that the defendants have subjected the plaintiffs to cruel and unusual punishment by deliberately keeping them in the dark about how their executions will be carried out until shortly before they occur, thereby increasing their mental anguish.  *See* Dkt. 18 at 54–56.  The State's first response is that the claim cannot survive in the event the others are dismissed, because—on the defendants' reasoning—if there is no absolute right to access the information, there can be no right to avoid suffering from its concealment.  *See* Dkt. 21-1 at 15.  But different clauses in the Constitution are not interchangeable.  *See First Am. Coal.*, 938 F.3d at 1084–85 (Berzon, J., concurring in part, dissenting in part) (explaining that a procedural due process challenge to execution secrecy would

---

[6] To the extent *First Amendment Coalition* bars any claims, the plaintiffs assert them for preservation purposes so that they can challenge the precedent on appeal, including before the en banc Ninth Circuit and the Supreme Court.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 17

have been more compelling than the First Amendment claim that was made); *see also Pavatt v. Jones*, No. 5:10-cv-141, 2010 WL 7609469, at *3 (W.D. Okla. May 6, 2010) (rebuffing an argument in a Rule 12(b)(6) motion in an execution case that a substantive due process claim should be dismissed because the issue was covered by the Eighth Amendment).  The State's argument is therefore specious.

Painting with an equally overbroad brush, the State insists that because there is always some distress occasioned by a death sentence, the amount of suffering inflicted on the plaintiffs by IDOC's obfuscation must be constitutionally acceptable.  *See* Dkt. 21-1 at 15–16.  That would of course give the defendants cart blanche to visit upon the defendants as much pain as they wish, which is not the law.  The Eighth Amendment prohibits excessively "cruel" punishment, and that is always in part a matter of degree.  *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (describing how "the extent of injury" is relevant when a prisoner asserts an Eighth Amendment violation).  Just because the death penalty implies some suffering does not mean it allows for unbounded suffering, and there is no basis to dismiss this claim at the pleading stage.

Invoking an inapposite body of law, the State faults the plaintiffs for not proposing "an alternative method of execution."  Dkt. 21-1 at 16.  Such an obligation only exists, naturally, when inmates are *challenging* a method of execution, as in the defendants' cited case.  *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019).  The plaintiffs here are not attacking the State's plans for how it will execute them, because the defendants refuse to tell them those plans, which is the very violation at issue.  For the plaintiffs' claim, the "alternative" they are offering is one that actually addresses the problem: for IDOC to give them the information they need to ensure the constitutionality of their executions.  Nothing more is required for them to state a claim.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 18

## C. Equal Protection (Claim 5)

The Amended Complaint also states an equal protection claim. In Claim Five, the plaintiffs assert that each of them has been singled out arbitrarily and irrationally as a class of one and will therefore not be afforded equal protection due to the lack of procedural safeguards stemming from the defendants' effectively non-existent written execution protocol. *See* Dkt. 18 at 58–59. While the State points to the Ninth Circuit's opinion in *Towery v. Brewer* to support its argument that this claim should be dismissed, the *Towery* court recognized that equal protection challenges to execution protocols could be viable if a pattern of treating individual prisoners differently *and* detrimentally could be demonstrated. 672 F.3d 650, 660–61 (9th Cir. 2012) (recognizing that equal protection claims have successfully gone forward where "plaintiffs were able to show an actual pattern of treating prisoners differently in ways that did affect the *risk* of pain to which they would be subjected, and therefore the *risk* of being subjected to cruel and unusual punishment") (citing *In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044 (S.D. Ohio 2012) (emphasis in original)). Past evidence of deviation with respect to a single execution, coupled with uncertain protocols, is enough to allow an equal protection claim to go forward. *See Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012) (recognizing that in light of plaintiff's allegation of a failure to perform a consciousness check in a recent execution, coupled with "other allegations regarding the veil of secrecy that surrounds [the State's] execution protocol, it is certainly not speculative and indeed plausible that [the State] will disparately treat [the plaintiff] because the protocol is not certain and could be unexpectedly changed for his execution").

Here, the plaintiffs have alleged significant misconduct with respect to IDOC's prior executions of Paul Rhoades and Richard Leavitt, including obtaining execution drugs from illegal and/or high risk sources, improper storage of execution drugs, maintaining separate books for

execution-related expenses, failure to conduct autopsies, and last-minute changes to execution protocols rendering prior challenges to IDOC's protocols nearly impossible.  Dkt. 18 at 11–29. The Amended Complaint also alleges that IDOC engaged in an overall pattern of mishandling record requests and health-related issues.  *Id.* at 29–31.  In short, the Amended Complaint contains ample factual support for the claim that IDOC will treat the plaintiffs disparately *and* that this disparate treatment will place them at risk of being subjected to cruel and unusual punishment. Accordingly, the plaintiffs have adequately stated a claim for a violation of their equal protection rights.

### D.  Assistance Of Counsel (Claim 6)

In Claim Six, the plaintiffs assert that their right to the assistance of counsel in their clemency proceedings under 18 U.S.C. § 3599 is being violated because the defendants will not supply them information about their executions that they would be able to use in seeking relief from the state's executive branch.  *See* Dkt. 18 at 59–61.  IDOC's only argument for dismissing the claim is to cite two cases, one distinguishable and the other non-precedential.  *See* Dkt. 21-1 at 17–18.  In the first, the Ninth Circuit addressed § 3599 in two sentences of a per curiam opinion issued four days before the appellant's execution.  *See Leavitt v. Arave*, 682 F.3d 1138, 1141 (9th Cir. 2012) (per curiam).  The court declined to direct a police department to provide blood samples for testing because, in its judgment, § 3599 did not authorize the court to order "third-party compliance" with a clemency investigation.  *See id.*  But unlike *Leavitt*, the case at bar does not involve a third party.  The defendants in this action are the officials capable of supplying the plaintiffs with the information they seek.  In addition, the type of material at issue in *Leavitt*— blood samples at a police department—is of the sort that inmates can and do pursue in habeas discovery.  *See, e.g.*, *McGiboney v. Yordy*, No. 1:16-cv-150, 2017 WL 4159361, at *10 (D. Idaho

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 20

Sept. 19, 2017).  In contrast, there are typically no cognizable claims in habeas relating to how a state intends to carry out an execution.  *See Floyd v. Filson*, 949 F.3d 1128, 1152 (9th Cir. 2020). Mr. Leavitt accordingly had an alternative available to him that the plaintiffs in the present action do not.  Whatever reasons there were to limit § 3599 in *Leavitt*, they do not apply here, and the case does not foreclose this claim at the Rule 12(b)(6) stage.

The defendants' other citation, *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011), is more on point.  However, the Ninth and Sixth Circuits expressly disagree with one another on their interpretation of the proper scope of § 3599, *see Samayoa v. Davis*, 928 F.3d 1127, 1130-31 (9th Cir. 2019), so it would be inappropriate to rely on *Baze* to bar the plaintiffs' assistance-of-counsel claim so early in the case and without any factual development.

### E.  Separation Of Powers (Claim 7)

Idaho is violating the separation-of-powers doctrine, according to Claim Seven, by failing to provide IDOC sufficient legislative guidelines on the carrying out of executions.  *See* Dkt. 18 at 61–64.  The defendants observe that 42 U.S.C. § 1983 does not codify state-law claims, *see* Dkt. 21-1 at 19, but Claim Seven was not brought under § 1983.  As the Amended Complaint shows, *see* Dkt. 18 at 61, it was brought under the state constitution.  It is well established under 28 U.S.C. § 1367(a) that this Court can exercise supplemental jurisdiction over state-law claims in an action raising federal violations if the former are "part of the same case or controversy" as the latter. *Lejardi v. Homedale Joint Sch. Dist.*, No. 1:14-cv-539, 2016 WL 2910269, at *1 (D. Idaho May 18, 2016).  Here, the state and federal claims all go to problems with how the defendants carry out executions, and in particular their secrecy and eleventh-hour maneuvering.  The issues are plainly all connected to the same case or controversy, and nothing prohibits the Court from considering the claim.  Furthermore, though discretionary, the exercise of supplemental jurisdiction is

appropriate when a contrary ruling would likely lead to additional litigation in state court, generating more of a burden on the parties and the judicial system and delaying a resolution to the dispute. *See Miesen v. AIA Ins., Inc.*, 1:10-cv-404, 2017 WL 4413806, at \*4 (D. Idaho Oct. 3, 2017). Postponing finality would be particularly problematic here, because the defendants are threatening to execute Mr. Pizzuto only four months from now, *see* Dkt. 21-1 at 6–7, making it even more prudent for this Court to settle the issue rather than triggering a brand-new state action.

The State's only other basis for dismissing the claim is to identify an Idaho Supreme Court ruling addressing a similar issue on the merits nearly forty years ago with a completely different factual record before it. *See* Dkt. 21-1 at 19. For one thing, the State's point is procedurally premature. When a federal court is exercising supplemental jurisdiction, the usual rules of federal procedure apply. *See, e.g.*, *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122–23 (9th Cir. 2009) (reversing a district court for granting summary judgment against a state-law claim on supplemental jurisdiction because there were disputed issues of material fact). The State has moved to dismiss Claim Seven under Rule 12(b)(6) for failure to state a claim. *See* Dkt. 21-1 at 10. In the opinion referenced by the defendants, the Idaho Supreme Court rejected a separation-of-powers claim on the merits. *See State v. Osborn*, 631 P.2d 187, 201 (Idaho 1981). But the question for Rule 12(b)(6) purposes is not whether the plaintiffs "will ultimately prevail" on their claims, which is the only thing *Osborn* could arguably speak to as a merits decision. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). If anything, the fact that *Osborn* reached the merits of the claim suggests that it has been adequately pled in this case. That is, if the Idaho Supreme Court considered the claim a cognizable one, as it evidently did, then it is not facially deficient for Rule 12(b)(6) purposes. *See Hoffman v. Jindal*, No. 3:12-cv-796, 2014 WL 130981, at \*5 (M.D. La.

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 22

Jan. 10, 2014) (refraining from dismissing an execution issue for failure to state a claim because "courts are not charged with picking winners and losers at the genesis of litigation").

It would be especially inappropriate to rely on *Osborn* to dismiss the claim at this early stage of the case because the Idaho Supreme Court did not have before it the same facts that the plaintiffs intend to introduce here if they are permitted to do so. As it happens, there was *no* record on the separation-of-powers claim in front of the *Osborn* court. *See* Ex. 2.[7] Taking a much different path, the plaintiffs here have already made extensive allegations about why IDOC needs greater legislative oversight in this area, including that state officials have pursued execution drugs in a questionable manner from dubious sources; that they have deliberately delayed the announcement of execution plans until the eleventh hour so as to make it impossible for inmates to vindicate their rights to judicial review; and that they have engaged in deceptive practices to hide their handling of executions from the public. *See generally* Dkt. 18 at 11–31. None of those facts were offered to the *Osborn* court. Many did not even exist at the time of *Osborn*. To dismiss this claim as inadequately pled under *Osborn*, as the State recommends, would improperly prevent the plaintiffs from developing the very facts that distinguish their case from *Osborn*. *See Pavatt*, 2010 WL 7609469, at *3 (reserving judgment at the 12(b)(6) stage on a state-law claim in an execution challenge until "a later stage when evidence" illuminating the issue would be available); *see also Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008) (remanding because "factual questions" are not amenable to resolution under Rule 12(b)(6)).

---

[7] To the extent it is necessary, the plaintiffs respectfully request that judicial notice be taken of the attached briefs from *Osborn*. *See Manufactured Home Cmtys. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (taking judicial notice of state-court pleadings).

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 23

**F.  Violation Of Statutory Obligation To Issue Protocol (Claim 8)**

Even if the Court determines that Claim Eight does not relate to a federally secured right, as the State maintains, *see* Dkt. 21-1 at 19, the doctrine of pendent jurisdiction permits this Court to consider the cause of action.  The doctrine allows a federal court to accept jurisdiction over nonfederal claims that are intertwined with federal claims where all such claims share a common nucleus of operative facts.  *See Hymer v. Chai*, 407 F.2d 136, 137 (9th Cir. 1969).  Pendent jurisdiction exists to avoid the waste and inefficiency that would result from fragmenting related state and federal claims.  The plaintiffs' eighth cause of action regarding violation of a statutory obligation is inextricably intertwined with all of the plaintiffs' federal claims, as they all relate to IDOC's execution protocol and attendant issues with the same.  Thus, this Court has jurisdiction over the claim.

**G.  Risk Of Botched Execution (Claim 9)**

Claim 9 is rooted in the fact that IDOC's lack of transparency and last-minute gamesmanship heighten the likelihood of a botched execution involving torturous pain.  *See* Dkt. 18 at 65.  Most of the State's grounds for dismissing the claim are detailed above with respect to Claim Three and are incorporated by reference here.  *See supra* at Part IV.B.  That leaves only the State's reliance on *Creech I*, *see* Dkt. 21-1 at 16, which is not on point.  In the referenced passage from *Creech I*, the Court was dealing with claims alleging that the announced protocol carried with it an unacceptable danger of mistakes occurring at the execution.  *See* 2012 WL 1995085, at *16–20.  The claims revolved around perceived deficiencies in the protocol.  That is not Claim Nine.  It is based not on flaws in the protocol but on its non-existence.  No matter what ends up in the protocol, the fact that IDOC insists on introducing it shortly before the execution, with no time for its contents to be meaningfully litigated and limited time for prison personnel to train and

practice under its provisions, inevitably increases the risk of problems arising at the event.  *See*

*Hoffman*, 2014 WL 130981, at \*5 (rejecting a motion to dismiss a similar Eighth Amendment

claim on 12(b)(6) grounds, in part because of allegations that the State altered its protocol shortly

before executions in the past).  The State's bare citation to an irrelevant order does not support

dismissal of the claim.

## V.    Conclusion

For the reasons stated, the defendants' motion to dismiss, Dkt. 21, should be denied.[8]

DATED this 25th day of June 2020.

/s/ Jonah J. Horwitz
Jonah J. Horwitz
Christopher M. Sanchez
Federal Defender Services of Idaho


/s/ Stanley J. Panikowski
Stanley J. Panikowski
DLA PIPER LLP (US)

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of June 2020, I electronically filed the foregoing document
with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of
Electronic Filing to persons including the following:

Mark Kubinski                            Oscar Klaas
mkubinsk@idoc.idaho.gov                  oklaas@idoc.idaho.gov

/s/ Julie Hill
Julie Hill

---

[8] To the extent any claims are nonetheless dismissed on exhaustion or ripeness grounds, the
dismissal should be without prejudice.  *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059
(9th Cir. 2007) (exhaustion); *Assoc. of Am. Med'l Colls. v. United States*, 217 F.3d 770, 785 (9th
Cir. 2000) (ripeness).

RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT – Page 25