*Gerald Ross Pizzuto, Jr., et al. v. Josh Tewalt, et al.,* Case No. 1:20-cv-114-DCN
Filed in Support of Response to Motion to Dismiss Amended Complaint [Dkt. 21]

# Exhibit 2

**(Appellant's Brief, filed December 19, 1979;
Brief of Respondent, filed April 4, 1980; and
Appellant's Reply Brief, filed August 25, 1980,
*State v. Osborne*, ISC No. 13400)**

ORIGINAL

IN THE SUPREME COURT OF THE STATE OF IDAHO

\* \* \* \* \* \* \* \*

STATE OF IDAHO, )
)
    Plaintiff-Respondent, )     Supreme Court No. 13400
)
vs. )
)
DAVID ALLEN OSBORN, )
)
    Defendant-Appellant. )
)
———————————————————————— )



\* \* \* \* \* \* \* \*

APPELLANT'S BRIEF

\* \* \* \* \* \* \* \*

Appealed from the District Court of the
Sixth Judicial District of the State of Idaho
in and for the County of Bannock

\* \* \* \* \* \* \* \* \* \*

HONORABLE ARTHUR P. OLIVER, DISTRICT JUDGE

\* \* \* \* \* \* \* \* \* \*

Hartwell H. K. Blake
McDermott & McDermott
P. O. Box 3
Pocatello, Idaho 83201
Telephone: 232-3162    for Appellant

Lynn E. Thomas
Deputy Attorney General
Office of the Idaho Attorney General
Statehouse
Boise, Idaho 83701    for Respondent

TABLE OF CONTENTS

Page

STATUTORY APPENDIX                                        1


STATEMENT OF THE CASE

    —    Nature of Case                             5

    —    Course of Proceedings                      5

    —    Statement of Facts                         9


ISSUES PRESENTED ON APPEAL                              16


POINTS AND AUTHORITIES                                  18


ARGUMENT                                                21


CONCLUSION                                              46

STATUTORY APPENDIX

(The relevant statutes have been placed at the beginning of this brief to facilitate familiarity and ease of reference.)

AMENDMENT 14

§1.   [CITIZENSHIP--DUE PROCESS OF LAW--EQUAL PROTECTION.]-- All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws.  Constitution of the United States of America.

ARTICLE 1

§13.   GUARANTEES IN CRIMINAL ACTIONS AND DUE PROCESS OF LAW.--In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel.

No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law.  Constitution of the State of Idaho.

IDAHO STATUTES

18-4001.   MURDER DEFINED.--Murder is the unlawful killing of a human being with malice aforethought or the intentional appli- cation of torture to a human being, which results in the death of a human being.  Torture is the intentional infliction of extreme and prolonged pain with the intent to cause suffering.  It shall also be torture to inflict on a human being extreme and prolonged acts of brutality irrespective of proof of intent to cause suffering. The death of a human being caused by such torture is

-1-

murder irrespective of proof of specific intent to kill; torture causing death shall be deemed the equivalent of intent to kill.


18-4003.  DEGREES OF MURDER.--(a) All murder which is perpetrated by means of poison, or lying in wait, or torture, when torture is inflicted with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy some sadistic inclination, or which is perpetrated by any kind of willful, deliberate and premeditated killing is murder of the first degree.


19-2515.  INQUIRY INTO MITIGATING OR AGGRAVATING CIRCUM-STANCES --SENTENCE IN CAPITAL CASES --STATUTORY AGGRAVATING CIRCUMSTANCES --JUDICIAL FINDINGS.-- (a) After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral or written suggestion of either party that there are circumstances which may be properly taken into view either in aggravation  or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct.
(b)  Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust.
(c)  In all cases in which the death penalty may be imposed, the court shall, after conviction, order a pre-sentence investi-gation to be conducted according to such procedures as are pre-scribed by law and shall thereafter convene a sentencing hearing for the purpose of hearing all relevant evidence and arguments of counsel in aggravation and mitigation of the offense.  At such hearing, the state and the defendant shall be entitled to present all relevant evidence in aggravation and mitigation.  Should any party present aggravating or mitigating evidence which has not previously been disclosed to the opposing party or parties, the court shall, upon request, adjourn the hearing until the party desiring to do so has had a reasonable opportunity to respond to such evidence. Evidence admitted at trial shall be considered and need not be repeated at the sentencing hearing.  Evidence offered

-2-

at trial but not admitted may be repeated or amplified if neces-
sary to complete the record.

(d)  Upon the conclusion of the evidence and arguments in
mitigation and aggravation the court shall make written findings
setting forth any statutory aggravating circumstances found.
Further, the court shall set forth in writing any mitigating
factors considered and, if the court finds that mitigating
circumstances outweigh the gravity of any aggravating circum-
stances found so as to make unjust the imposition of the death
penalty, the court shall detail in writing its reasons for so
finding.

(e)  Upon making the prescribed findings, the court shall
impose sentence within the limits fixed by law.

(f)  The following are statutory aggravating circumstances,
**at least** one (1) of which must be found to exist beyond a reason-
able doubt before a sentence of death can be imposed:

(1)  The defendant was previously convicted of another
murder.

(2)  At the time the murder was committed the defendant also
committed another murder.

(3)  The defendant knowingly created a great risk of death
to many persons.

(4)  The murder was committed for remuneration or the promise
of remuneration or the defendant employed another to commit the
murder for remuneration or the promise of remuneration.

(5)  The murder was especially heinous, atrocious or cruel,
manifesting exceptional depravity.

(6)  By the murder, or circumstances surrounding its com-
mission, the defendant exhibited utter disregard for human life.

(7)  The murder was one defined as murder of the first
degree by section 18-4003, Idaho Code, subsectons (b), (c), (d),
(e) or (f), and it was accompanied with the specific intent to
cause the death of a human being.

(8)  The defendant, by prior conduct or conduct in the
commission of the murder at hand, has exhibited a propensity to
commit murder which will probably constitute a continuing threat
to society.

(9)  The murder was committed against a former or present
peace office, executive officer, officer of the court, judicial
officer or prosecuting attorney because of the exercise of
official duty.

(10) The murder was committed against a witness or potential
witness in a criminal or civil legal proceeding because of such
proceeding.


19-2516.  INQUIRY INTO CIRCUMSTANCES --EXAMINATION OF

WITNESSES.  --  The circumstances must be presented by the
testimony of witnesses examined in open court, except that when a
witness is so sick or infirm as to be unable to attend, his
deposition may be taken by a magistrate of the county, out of
court, upon such notice to the adverse party as the court may
direct.  No affidavit or testimony, or representation of any
kind, verbal or written, can be offered to or received by the
court, or a judge thereof, in aggravation or mitigation of the
punishment, except as provided in this and the preceding section.


   19-2716.  INFLICTION OF DEATH PENALTY. -- The punishment of
death must be inflicted by intravenous injection of a substance
or substances in a lethal quantity sufficient to cause death
until the defendant is dead.  The director of the department of
corrections shall determine the substance or substances to be
used and the procedures to be used in any execution.

STATEMENT OF THE CASE

Nature of the Case

David Allen Osborn was charged with the First Degree Murder of Charlotte Christine Carl.  He pled guilty to the charge and was sentenced to death by lethal injection. The imposition of the death penalty is being appealed.

Course of Proceedings

The course of proceedings leading to this appeal is set forth below:

2 November 1978

- Complaint and arrest Warrant issued in the District Court of the Sixth Judicial District, Bannock County, Idaho, charging the defendant with murdering Charlotte Christine Carl on 31 October 1978.

29 November 1978

- Defendant appeared in the Magistrate's Division of the District Court of the Sixth Judicial District, Bannock County, Idaho, and was arraigned on a charge of murder in the first degree, a violation of Idaho Code 18-4001 and 18-4003(a).

- The Public Defender's Office was appointed to

-5-

represent Mr. Osborn.

- A Motion for Discovery and Inspection and Order was filed pursuant to Rule 16 of the Idaho Rules of Criminal Practice and Procedure to enable the Public Defender to obtain information necessary to properly defend Mr. Osborn at the Preliminary Hearing.

30 November 1978

- The Magistrate scheduled to preside at the preliminary hearing granted defendant's Motion for Discovery.

1 December 1978

- A Motion to Rescind the Order for Discovery was filed by the Prosecutor, which was denied.

7 December 1978

- The Preliminary Hearing was held, and the defendant was bound over to the District Court to stand trial for murder in the first degree.

11 December 1978

- The defendant was arraigned before the Honorable Arthur P. Oliver, on the charge of murder in the first degree. He entered a plea of Not Guilty.

- A Motion for Preparation of Transcript of the Preliminary Hearing, Notice of Intent to Rely upon Mental Disease as an Affirmative Defense, and a

-6-

Petition for Appointment of Psychiatrist were also presented to the Court.  The Court granted all of the defendant's motions.

19 March 1979

-    The defense filed a Motion to Continue the trial scheduled in this matter to be held on 10 April 1979, on the grounds that more time was required for investigation and preparation of a legal defense, which was granted by the Court.

9 May 1979

-    Defendant filed a Motion for Discovery and Inspection, which was granted by the Court.

-    Defendant filed a motion and supporting brief to amend the charge of murder in the first degree to voluntary manslaughter.

-    Defendant filed a Motion in Limine to prohibit the State of Idaho from attempting to introduce certain evidence at the time of trial.  Both Motions were opposed by the Prosecuting Attorney during arguments had on 14 May 1979.

15 May 1979

-    The Court denied the defendant's motion to amend the charge.

-7-

21 May 1979

    -  The defendant withdrew his plea of Not Guilty previously entered on 11 December 1978, and entered a plea of Guilty to the charge of murder in the first degree.  The Court ordered that a pre-sentence investigation report be submitted prior to sentencing.

13 June 1979

    -  The Court ordered that an aggravation/mitigation hearing be held on 21 June 1979, and that respective counsel disclose each to the other, the nature of the aggravation or mitigation evidence which they intended to offer at the hearing, together with the names of the witnesses, if any.

21 June 1979

    -  An aggravation/mitigation hearing was held by the Court and the matter was taken under advisement to give the Court an opportunity to review the material presented, with formal findings and conclusions to be made pursuant to I.C. 19-2515.

    -  Sentencing was scheduled to take place on 29 June 1979.

29 June 1979

    -  The Memorandum, Findings of Fact and Conclusions of Law were issued by the Court.

- Mr. Osborn was sentenced to death, execution of said penalty to take place on 20 August 1979.

<u>2 July 1979</u>

- Defendant filed Petition for Review of Death Sentence, Motion for Suspension of Judgment of Death, and Notice of Appeal.

<u>6 July 1979</u>

- Defendant filed Motion for Correction or Reduction of Sentence.

<u>18 September 1979</u>

- Defendant argued Motion for Correction or Reduction of Sentence.  The Court took the matter under advisement.

<u>27 September 1979</u>

- The court denied the defendant's Motion for Correction or Reduction of Sentence.

<u>Facts</u>

David Allen Osborn and Charlotte Christine Carl were both employed by the Fifth Avenue Cafe, in Pocatello, during October 1978.  Mr. Osborn was hired in mid-October as a cook.  Ms. Carl had been hired in August, as a waitress.  Mr. Osborn and Ms. Carl worked on the same shift and appeared to get along quite well.

-9-

On 30 October 1978, around noon, Mr. Osborn checked into the Holiday Inn in Pocatello. He was given a room and paid for it in advance. The desk clerk at the Holiday Inn stated that Mr. Osborn paid the double occupancy rate. However, she did not see anyone accompany him to the registration desk or to his room.

Later that afternoon, another Holiday Inn employee delivered a room service order to Mr. Osborn's room. The order was accepted by a woman, who the waiter identified from a driver's license photo as the deceased. The waiter saw a male person in the room who he identified as Mr. Osborn. The waiter also stated that the man instructed the woman to sign his name to the tab. The woman asked the man how to spell his name and he replied, "O-S-B-O-R-N."

Mr. Osborn was next encountered in the company of Ms. Carl on the evening of 31 October 1978, around 8:00 P.M., by Officer Paul Byers of the Pocatello Police Department. Officer Byers stated that Mr. Osborn was driving a green Chevrolet, accompanied by a female passenger named Chris.

Officer Byers had stopped the car because he felt it was being operated in an inattentive manner. Mr. Osborn was asked where he was living. He replied that he couldn't remember. Mr. Osborn was asked to perform the alcohol dexterity tests, which he completed in a reasonably coordinated manner. The officer did not feel that Mr. Osborn was sufficiently intoxicated to be

-10-

placed under arrest for driving while under the influence of intoxicants, but he did ask the female passenger to operate the car.

Later that evening, between 9:30 P.M. and 10:00 P.M., three different people observed a body lying along a country road north of Pocatello. The Bannock County Sheriff's Office was contacted and dispatched to the place where the body was sighted. Various deputies conducted a crime scene investigation. The body was determined to be that of Charlotte Christine Carl. She was discovered lying next to the side of the road, partially clothed, dead from gunshot wounds.

An autopsy conducted by a pathologist revealed that Ms. Carl had sustained five bullet wounds, three in the head, one in the shoulder, and one in the abdomen.

The pathologist also reported that the deceased's face was markedly bruised with tremendous contusions on the right side of the face, some bruising on the left side of the face, a bruise along the inner thigh, and a fractured nose. The doctor opined that the bullet wounds in the temple area of the head were probably distance wounds, but could have been incurred at less than 18 inches from the firearm. It was also his opinion that the wound behind the ear was a close contact wound. The pathologist stated that there was copious bleeding but he was unable to relate the sequence in which the individual bullet wounds or

-11-

bruises occurred.  He also stated that any of the three head wounds could have been the cause of death.

At about 10:30 on the evening of 31 October 1978, Mr. Osborn arrived at the home of Lucy Baker, several miles from the road where Ms. Carl's body was found.  The home was being occupied by Mrs. Baker, her daughter, Susan, and Susan's daughter.  Also residing at the home were Lennie Hoffman, Susan's common law husband, and Curtis Short, a friend of Mr. Hoffman. The other person present in the home that evening was Nina Osborn, David Osborn's wife.

Mr. Osborn arrived at the Baker residence in Ms. Carl's car. He was met at the door by Lennie Hoffman and Curtis Short. Hoffman and Short had been watching television and smoking mari-juana prior to Mr. Osborn's arrival.  Upon seeing Mr. Osborn, they observed a pistol in his possession and blood on his vest, chest, and boots.

Mr. Osborn had several conversations with Hoffman and Short. He told them that he had shot Chris.  He also appeared to be acting "wierd."  Hoffman stated that he had seen Mr. Osborn consume large amounts of alcohol in the past, and had observed that Mr. Osborn held his liquor well.  It is not clear whether or not Hoffman attributed Mr. Osborn's manner and affect to drugs or alcohol.

During the time that Mr. Osborn was at the home, he informed

-12-

Hoffman and Short that he had shot Chris.  At one time Mr. Osborn stated that he had buried Ms. Carl's body in the mountains.  An hour later, he said the body had been put on some railroad tracks.

Mr. Osborn asked Hoffman and Short to hide Ms. Carl's car, which they agreed to do.  Upon entering the vehicle, they observed blood on the front seat and passenger door of the car.

After the car was driven away from the home and hidden, Curtis Short stated that he overhead a conversation between Mr. Osborn and Susan Baker.  Mr. Osborn kept repeating, "I had to do it." Also, he stated that Ms. Carl had called the cops on him and gotten back into the car and told him about it, at which point he shot her.

The Bannock County Sheriff's Office was later informed of the fact that Mr. Osborn had been at the Baker residence on the evening of the homicide and that he had confessed to the killing. While conducting a search of the premises, a revolver was discovered in the yard of the Baker residence.  It was an H & R, .22 caliber, 9-shot revolver.  The gun was not entered into evidence at the Preliminary Hearing, (nor was it ever placed in evidence).

At the time the Preliminary Hearing was held, reference was made to the revolver via photographs, since the revolver had been sent to the FBI laboratory in Washington, D.C.  A Mr. Martin Sullinger testified that he had sold a revolver, of the type discovered, to Mr. Osborn, in October 1978.  Mr. Sullinger also

-13-

stated that the gun he sold to Mr. Osborn was defective and the
cylinder had to be revolved manually before a live round would
position itself under the hammer.

(Note:  It should be noted that the narrative set forth
above was taken from the transcript of the Preliminary
Hearing.  The Preliminary Hearing was the only time that
witnesses were called to testify in this case.)

At the termination of the Preliminary Hearing, defense
counsel moved to have the criminal charges amended to charge the
defendant with murder in the second degree.  The basis of the
argument was that the State had failed to present any evidence of
premeditation, which is required before a defendant may be bound
over on a charge of murder in the first degree.  The presiding
Magistrate denied the defense motion and Mr. Osborn was bound
over to the District Court as initially charged.  At the time
that Mr. Osborn was arraigned in the District Court, he entered a
plea of Not Guilty to the charge and filed a Notice of Intent to
Rely upon Mental Disease or Defect (Amnesia) due to extreme
intoxication and the ingestion of various hallucinogenic drugs.
A psychiatrist was appointed to examine Mr. Osborn.  The psychi-
atrist concluded that Mr. Osborn was not within the protection
afforded by Idaho Code 18-211.

-14-

The defense counsel then filed a Motion to Amend the Charge from murder in the first degree to Voluntary Manslaughter.   The matter was briefed and argued before the District Judge, who denied the motion.

On 21 May 1979, Mr. Osborn pled guilty to the murder of Ms. Carl.   The District Court ordered that a pre-sentence investigation be conducted and that a report be submitted to the Court prior to sentencing.   Mr. Osborn was sentenced on 21 June 1979, after an aggravation/mitigation hearing was held. The Court took the matter under advisement so that it could draft a memorandum decision, findings of fact, and conclusions of law. On 29 June 1979, the findings of fact and conclusions of law were issued and Mr. Osborn was sentenced to death.

On 2 July 1979, a Petition for Review of the Death Sentence, Motion for Suspension of Judgment of Death, and Notice of Appeal were filed.   Later that week, a Motion for Correction or Reduction of Sentence was also filed.

The Motion for Correction or Reduction of Sentence was argued on 18 September 1979.   The court took the matter under advisement, and on 27 September 1979, defendant's motion was denied.

-15-

## ISSUES PRESENTED ON APPEAL

The court failed to set forth the mitigating factors it considered in imposing the death penalty.

The "aggravating circumstances" set forth in Idaho Code 19-2515(f)(5 & 6) are unconstitutionally vague and permitted the exercise of arbitrary, unfettered discretion in the sentencing of David Allen Osborn.

The court's finding, as characterized by Idaho Code 19-2515(f)(8) is unsupported by the record.

The evidence upon which the court relied in imposing the death penalty was not proven beyond a reasonable doubt.

The procedure by which a court may find aggrava-
ting circumstances which are neither specified in
the Complaint and Information, nor admitted by the
defendant, nor proven beyond a reasonable doubt
denied the defendant fair and proper notice and
is a denial of due process of law.

The requirement that the death penalty be imposed
upon the finding of a statutory aggravating circum-
stance <u>unless</u> the court finds that mitigating
circumstances outweigh all aggravating circum-
stances makes the death penalty mandatory, serves
to shift the burden of proof to the defendant
and is a denial of due process of law.

The delegation of legislative power to the executive
branch of government, i.e., the implementation of
"death by lethal injection," is unconstitutional
because the legislature failed to set forth policies
and standards to guide those by whom the delegated
power is to be exercised.

-17-

POINTS AND AUTHORITIES

I.

The Sentencing Court Failed To Set Forth Any
Of The Mitigating Factors Which It Considered In
Arriving At Its Decision To Impose The Death
Penalty.

Idaho Code 19-2515(d)

Gardner v. Florida
430 U.S. 349 (1977)

Gregg v. Georgia
428 U.S. 153 (1976)

II.

The Sentencing Court's Reliance Upon Idaho
Code 19-2515(f)(5 & 6) In Imposing The Death
Penalty Denies The Defendant Due Process Of Law
Because The Items Set Forth As Sentencing Guidelines
Are Unconstitutionally Vague, Thereby Affording
The Court Unfettered Discretion With Which To
Arbitrarily Impose Sentence.

Furman v. Georgia
408 U.S. 238 (1972)

Gregg v. Georgia
supra

Idaho Code 19-2516

II(a).

The Sentencing Court's Finding That The
Defendant "exhibited a propensity to commit murder
which will probably constitute a continuing threat
to society" Is Unsupported By The Record.

Gardner v. Florida
supra

Idaho Code 19-2515(f)

Idaho Code 19-2516

-18-

III.

The Evidence Utilized By The Sentencing Court
Was Not Proven Beyond A Reasonable Doubt.

Furman v. Georgia
supra

Gardner v. Florida
supra

Idaho Code 19-2515(d)

Idaho Code 19-2516

State v. Lopez
98 Idaho 581 (1978)


IV.

The Defendant Pled Guilty To Murder In The
First Degree, But The Court Found That He Committed
Aggravated Murder In The First Degree, Although The
Additional Elements Of The Crime Were Neither Spec-
ified, Nor Admitted, Nor Proven Beyond A Reasonable
Doubt.

Constitution of the United States of America
Amendment 14

Constitution of State of Idaho
Article I, Section 13

Gardner v. Florida
supra

State v. Lopez
supra


V.

When A Statutory Aggravating Circumstance is
Present, Idaho Law Compels The Imposition Of The
Death Penalty Unless The Defendant Successfully
Introduces Mitigating Circumstances That Outweigh
The Aggravating Circumstances, Which Violates the
8th And 14th Amendments And Denies The Defendant
Due Process Of Law.

Woodson v. North Carolina
428 U.S. 280 (1976)

Mullaney v. Wilbur
421 U.S. 683 (1975)

-19-

VI.

The Idaho Legislature Cannot Delegate The
Power To Inflict The Death Penalty To The Director
Of Corrections Without Setting Forth A Policy And
Standards To Guide The Director In His Exercise
Of The Delegated Power.

Panama Refining Co. v. Ryan
293 U.S. 388 (1935)

Schecter Poultry Co. v. U.S.
295 U.S. 495 (1935)

ARGUMENT

I.

The Sentencing Court Failed To Set Forth Any
Of The Mitigating Factors Which It Considered In
Arriving At Its Decision To Impose The Death
Penalty.

Idaho Code 19-2515(d) states:

"(d) Upon the conclusion of the evidence and arguments
in mitigation and aggravation the court shall make written
findings setting forth any statutory aggravating circum-
stances found. Further, the court shall set forth in writing
any mitigating factors considered and, if the court finds
that mitigating circumstances outweigh the gravity of any
aggravating circumstances found so at to make unjust the
imposition of the death penalty, the court shall detail in
writing its reasons for so finding." (emphasis ours)

The mitigation/aggravation hearing, which was ordered by the

court prior to sentencing Mr. Osborn, was held on 21 June 1979.

At that time, defense counsel set forth the factors that he

deemed mitigating.  They were:

-- That the defendant had no adult conviction record

of criminal violence against other persons. (Tr. p. 56, l. 4)

-- That Mr. Osborn was the product of a home which

did not offer him the proper guidance, companionship, role

models, or assistance in becoming a productive member of society.

(Tr. p. 56, lns. 5-9)

-- That Mr. Osborn had witnessed his father being

killed by his brother while his father was beating his mother.

(Tr. p. 56, lns. 11-14)

-21-

   --  That Mr. Osborn suffered from a long history of polydrug abuse, and he stated that he had been ingesting large amounts of alcohol, herion, methaqualone and LSD on the night that Chris Carl died. (Tr. pp. 56-57, lns. 23-25 & 1; Report of Dr. John B. Reichman, p. 1)

   --  That there were indications that the defendant was under the influence of drugs and alcohol at the time of the homicide. (Tr. p. 57, lns. 16-18)

   --  That the psychological problems the defendant experienced as a child carried over into his adult life and caused him to react as he did on the night of the homicide. (Tr. p. 58, lns. 9-12; p. 75, lns. 12-25; p. 76 lns. 1-12)

   --  That the fact that the deceased was a victim of multiple gunshot wounds, any one of three which would have caused death instantaneously, makes the act arguably one of passion rather than cool and calculated action. (Tr. p. 78, lns. 9-19)

 The district judge's memorandum opinion set forth his reconstruction of the facts. The items which defense counsel contends are mitigating were generally mentioned by the Court. (Tr. pp. 94-99) However, the specific direction contained in Idaho Code 19-2515(d), that "the court shall set forth in writing any mitigating factors considered," was not followed.

 Idaho's statutes provide for automatic review of death penalty proceedings. Unless the mitigating circumstances are set

-22-

forth specifically, in accordance with the specific direction of
the above statute, a comprehensive record will <u>not</u> be provided
for the reviewing authority.  <u>Gardner v. Florida</u>, 430 U.S. 349
(1977).

The facts in <u>Gardner</u> closely parallel the facts in the
instant case.  Gardner assaulted his wife with a blunt instrument
which caused her death.  During the sentencing hearing, the State
merely introduced two photographs of the decedent, otherwise
relying on trial testimony.  That testimony, if credited, was
sufficient to support a finding of one of the statutory aggrava-
ting circumstances, i.e., that the homicide was "especially
heinous, atrocious or cruel."  At the sentencing hearing, the
petitioner testified in mitigation, that he had consumed a great
quanity of alcohol during the day that preceded the homicide.  He
also professed to have almost no recollection of the assault.
The U.S. Supreme Court stated that his testimony, if credited,
was sufficient to support a finding of at least one of the statu-
tory mitigating circumstances.  The jury, which is involved in
sentencing procedures in Florida, found that the statutory miti-
gating circumstances outweighed the statutory aggravating circum-
stances.  It advised the court to impose a life sentence.
However, the Court, referring to a confidential portion of the
pre-sentence investigation report, which was not provided the
defense counsel, overruled the jury finding and imposed the death

-23-

penalty.   In overturning the death penalty, the Supreme Court
stated:

> "Even if it were permissible to withhold a portion
> of the report from the defendant, and even from defense
> counsel, pursuant to an express finding of good cause
> for nondisclosure, it would nevertheless be necessary
> to make the full report a part of the record to be
> reviewed on appeal.   Since the state must administer
> its capital sentencing procedure with an even hand,
> it is important that the record on appeal disclose
> to the reviewing court the considerations which
> motivated the death sentence in every case in which
> it is imposed.   Without full disclosure of the basis
> for the death sentence, the Florida capital sentencing
> procedure would be subject to the defects which
> resulted in the holding of unconstitutionality in
> Furman v. Georgia.   In this particular case, the only
> explanation for the lack of disclosure is the failure
> of defense counsel to request access to the full report.
> That failure cannot justify the submission of a less
> complete record to the reviewing court than the record
> on which the trial judge based his decision to sentence
> the petitioner to death.

> "Nor, do we regard this ommision by counsel as
> an effective waiver of the constitutional error in the
> record.   There are five reasons for this conclusion.
> First, the state does not urge that the objection has
> been waived.   Second, the Florida Supreme Court has held
> that it has a duty to consider the total record when it
> reviews a death sentence.   Third, since two members of the
> Court expressly considered this point on appeal in this
> case we presume that the entire court passed on the question.
> Fourth, there is no basis for presuming that the defendant
> himself made a knowing and intelligent waiver or that counsel
> could have made a tactical decision not to examine the full
> report.   Fifth, since the judge found in disagreement with
> the jury, that the evidence did not establish any mitigating
> circumstances, and since the pre-sentence report was the
> only item considered by the judge but not by the jury, the
> full review of the factual basis for the judge's rejection
> of the advisory verdict is plainly required.   For if the
> jury, rather than the judge, correctly assessed the peti-
> tioner's veracity, the death sentence rests on an erroneous
> factual predicate. (emphasis ours)

-24-

"We conclude that petitioner was denied Due Process of Law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain."

Since the circumstances which the court considered to be mitigating were not set forth, the reviewing authority in this case cannot determine whether or not Mr. Osborn's death sentence rests on a proper factual predicate. The sentencing Court merely stated in its memorandum decision that:

"This Court, because of the extreme burden upon the sentencing Judge by the statute and the offense itself, has consciously searched all the information before it hoping sincerely to find circumstances in mitigation which would overcome the circumstances of aggravation--however, such mitigating circumstances do not exist." (Tr. p. 100) (emphasis ours)

It is critically important that the dictates of Idaho Code 19-2515(d) be followed explicitly.  Without a specification of the mitigating factors considered, not only is it impossible to determine whether or not the death sentence is based upon a proper factual predicate, but it is also impossible to determine whether or not the mitigating circumstances, if any, ameliorate the aggravating circumstances to the degree that they are no longer relevant or material for purposes of imposing the death penalty.

This argument was cogently set forth in Gregg v. Georgia, 428 US 153 (1976):

"It is certainly not a novel proposition that discretion in the area of sentencing be exercised in

-25-

an informed manner.  We have long recognized that
'for the determination of sentences, justice usually
requires . . . that there be taken into account the
circumstances of the offense together with the character
and propensities of the offender.'
. . .
     "When the drafters of the Model Penal Code faced
this problem [of sentencing standards], they concluded
that it is within the realm of possibility to point
to the main circumstances of aggravation and mitigation
that should be weighed, <u>and weighed against each other</u>,
when they are presented in a concrete case.  (emphasis
theirs)   While such standards are by necessity some-
what general, they do provide guidance for the sentencing
authority and thereby reduce the likelihood that it
will impose a sentence that fairly can be called
capricious and arbitrary.  Where the sentencing authority
is required to specify the fact it relied upon in reaching
its decision, the further safeguard of meaningful
appellate review is available to ensure that death
sentences are not imposed capriciously or in a freakish
manner."

Idaho's sentencing statute (19-2515) states that a statu-

torily aggravating circumstance must first be found before the

death penalty can be imposed, and that the death penalty will

automatically be imposed unless the defendant can go forward with

the burden of proof and present mitigating circumstances which

outweigh the aggravating circumstances.  However, it is possible

that mitigating circumstances proffered by the defendant, though

insufficient to outweigh aggravating circumstances, may reduce

the degree of aggravation such that what was initially felt to be

statutorily aggravating no longer rises to that status.

II.

The Sentencing Court's Reliance Upon Idaho
Code 19-2515(f)(5 & 6) In Imposing The Death Penalty

-26-

Denies The Defendant Due Process Of Law Because The
Items Set Forth As Sentencing Guidelines Are Unconsti-
tutionally Vague, Thereby Affording The Court Unfettered
Discretion With Which To Arbitrarily Impose Sentence.

Furman v. Georgia, 408 U.S. 238 (1972) sets forth the United
States' Supreme Court's reasoning for overturning death penalties
which could have been imposed on a purely discretionary basis,
unguided by any standards or statutory sentencing scheme.   The
statutory aggravating circumstances set forth in Idaho Code 19-
2515(f)(5 & 6), upon which the Court relied to impose the death
penalty have neither been defined by the legislature nor been
construed by Idaho's Supreme Court.   As such, the specific terms
are subject merely to the degree of definition deemed appropriate
by the sentencing court.

The American Heritage Dictionary, 1969 edition, defines the
statutory terms as follows:

  -Especially - to an extent or degree deserving special
                emphasis;

  -Heinous - grossly wicked; grossly reprehensible;

  -Atrocious - extremely evil; extremely monstrous;

  -Cruel - disposed to inflict pain or suffering;

  -Exceptional - extraordinary;

  -Depravity - moral corruption.   (Idaho Code 19-2515(f)(5)

  -Utter - absolute.   (Idaho Code 19-2515(f)(6)

The sentencing court found that item (5) was proven beyond a

-27-

reasonable doubt.  The court's finding in item (5) was set forth
and phrased in the exact wording of the statute.

The defendant takes issue with the court's finding because a
homicide may be especially heinous, and especially atrocious, and
especially cruel.  However, to find that the act was especially
heinous, or especially atrocious, or especially cruel, is to make
no finding at all.

In Profitt v. Florida, 438 U.S. 242 (1976), the United
States' Supreme Court noted with approval, Florida's definition
of "especially heinous, atrocious or cruel," which appears as a
statutory aggravating circumstance in the Florida death statute.
The Florida court had interpreted this statutory aggravating
circumstance in State v. Dixon, 289 So.2d 1 (1973):

> "It is our intrepretation that heinous means extremely
> wicked or shockingly evil; that atrocious means outrageously
> wicked and vile; and that cruel means designed to inflict
> a high degree of pain with utter indifference to,
> or even enjoyment of, the suffering of others.  What
> is intended to be included are those capital crimes
> where the actual commission of the capital felony was
> accompanied by such additional acts as to set the crime
> apart from the norm of capital felonies -- the conscience-
> less or pitiless crime which is unnecessarily torturous to
> the victim."  (emphasis ours)

The defendant contends that the record is devoid of any fact
or facts from which the court could conclude, beyond a reasonable
doubt, that this homicide fits the statutory circumstance.

The Idaho Supreme Court has stated, "before a man can be

-28-

punished, his case must be plainly and unmistakedly within a
statute.  A statute that either forbids or requires the doing of
an act in terms so vague that men of common intelligence must
guess as to its meaning and differ as to its application lacks
the first essential of Due Process of Law." State v. Pigge, 79
Idaho 529 (1957).  Reasoning by analogy, one might paraphrase the
Court's statement as "before Mr. Osborn can be punished in accord-
ance with the dictates of Idaho Code 19-2515, the statute must
apply plainly and unmistakably to his case.  Furthermore, if the
statute uses terms that are so vague that judges of common intel-
ligence must guess as to the meaning of the terms and differ as
to its application, then the statute lacks the first essential of
Due Process of Law."

The void-for-vagueness doctrine was clearly contemplated in
the Court's decision in Pigge.  The Court summarized the doctrine
in State v. Lopez, 98 Idaho 581 (1977):

> "The concept of void-for-vagueness arose from
> a common law practice of refusing to enforce legis-
> lation deemed to indefinite to be applied.  It has
> evolved in a protection generally regarded as
> embodied in a Due Process Clause and prohibits holding
> a person 'criminally responsible for conduct which he
> could not reasonably understand to be proscribed.'
> In addition to this notice of 'fair notice or warning'
> the doctrine is said to require reasonably clear guide-
> lines to prevent arbitrary and discriminating enforece-
> ment' and to prescribe a precise standard for the
> adjudication of guilt.  The principle consistently
> followed is that 'a statute which either forbids or
> requires the doing of an act in terms so vague that
> men of common intelligence must necessarily guess

at its meaning and differ as to its application violates the first essential of Due Process of Law."

As has been stated previously in arguments to the District Court, the legislature has not defined the statutory terms by which the sentencing court described Mr. Osborn's conduct.  The terms in the statute are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."  Mr. Osborn has therefore been denied Due Process of Law because he was sentenced in accordance with this statute.

Not only is it impossible to define the questioned terms but it is impossible to determine which specific facts the sentencing court relied upon in arriving at the ultimate facts set forth in item (5).  Furthermore, that fact was not proven beyond a reasonable doubt, in the manner required by Idaho Code 19-2516.

The statute says:

"INQUIRY INTO CIRCUMSTANCES -- EXAMINATION OF WITNESSES.  --  The circumstances must be presented by the testimony of witnesses examined in open court, . . .  No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section.  (emphasis ours)

The only time that witnesses testified in the course of the proceedings was at the preliminary hearing.  That hearing was conducted for purposes of establishing probable cause to believe (1) that a crime has been committed and (2) that the accused committed the crime.  Although the defendant availed himself of

-30-

the right to cross-examine witnesses during the hearing, it was not the type of hearing meant to establish facts beyond a reasonable doubt.  The facts upon which the sentencing court relied came solely from the preliminary hearing or by way of reports submitted to the court via arguments of counsel and the pre-sentence investigation.

The "facts" gleaned from the transcript of the preliminary hearing and the pre-sentence report do not rise to the status of facts proven beyond a reasonable doubt.  The requirements of the Due Process Clause of the United States and Idaho Constitutions, as explained in Gardner v. Florida, require that the information upon which a death sentence is based be totally reliable and tested by hearing and argument.  The simple examination of pre-sentence reports and the arguments of counsel are not reliable enough to meet this standard.  This is especially true if the evidence upon which the sentencing court bases its findings of aggravation are drawn from hearsay, once or twice removed.

The court also found that "the defendant exhibited utter disregard for human life."  Idaho Code 19-2515(f)(6)

After close examination of the court's memorandum decision it is impossible to determine exactly which primary facts were relied upon in the court's determination of the ultimate fact set forth in item (6).

The court did state that Dr. Garrison, a pathologist who was

-31-

present at the place where the deceased's body was found,

> "noted that the victim had suffered a savage
> physical beating <u>prior</u> to her death and was shot five
> times about the head and body."  (Tr. p. 96, lns. 19-23)
> (emphasis ours)

We would specifically disagree with the court's finding that the physical beating occurred <u>prior</u> to death. During the Preliminary Hearing, the State attempted to elicit the examining pathologist's opinion as to when the beating occurred. In both instances, the Magistrate sustained objections to the pathologist's conjecture. (Preliminary Hearing Transcript, pp. 112-113, 119-120)  As such, the time frame during which the beating of the deceased occurred, relative to the time that she died, was not established beyond a reasonable doubt, if at all.

It is again impossible to determine how the court arrived at this factual conclusion.  At the time of the sentencing hearing and the subsequent hearing on the Motion to Correct or Reduce the Sentence, defense counsel did reiterate the defendant's alcoholism, history of drug abuse, and long-standing psychological problems. Furthermore, the preliminary hearing testimony of Curtis Short set forth the only reason, of which we are aware, for Ms. Carl's death.  According to Mr. Short, he overheard Mr. Osborn state that Ms. Carl had turned him in to the cops for robbery.  However, there has never been a robbery investigation conducted with respect to Mr. Osborn.  It was therefore argued that the ingestion of alcohol and various drugs, the defendant's psychological

-32-

background, and the beating sustained by the victim, made it very possible that this crime was one of passion rather than cool and calculated action.  These facts do not indicate an utter disregard for human life.  Rather, they point to an understandable though unacceptable reaction on the part of Mr. Osborn to the threat of legal sanctions raised by Ms. Carl's report to the police.

Whatever facts underlay the court's conclusion as to the ultimate fact set forth item (6), said fact was not proven beyond a reasonable doubt as required by Idaho Code 19-2515(f).

                              II(a)

          The Sentencing Court's Finding That the Defendant
     "exhibited a propensity to commit murder which will probably
     costitute a continuing threat to society" is Unsupported
     By the Record.

In item III of the sentencing Court's Findings of Fact the court found:

          ". . . . by a preponderence of the evidence, but
     not beyond a reasonable doubt, that the defendant, by
     prior conduct and his conduct in the commission of the
     murder, has exhibited a propensity to commit murder and
     will probably constitute a continuing threat to society."

It is impossible to determine which primary facts the court relied upon in arriving at the above Finding.  The court did state that the pre-sentence investigation did not reflect a great number of convictions of the defendant while an adult, though it did reflect an antisocial personality dating back to childhood. (Tr. p. 98, lns. 22-25)  The court attributed the antisocial

                              -33-

condition possibly to the manner in which the defendant was raised and possibly to the fact that he witnessed his brother kill his father while the father was assaulting his mother. The court also noted that the pre-sentence report revealed a long history of intensive drug abuse. Specific mention was also made of the defendant's admission to physically abusing three of his wives. However, the pre-sentence report from which the judge drew these observations did not comprehensively report any of the circumstances surrounding the abuse, any of the circumstances which initated the abuse, whether the abuse was a reaction to physical force initiated by the wives, whether the physical abuse was undertaken in self defense, or whether the physical abuse was minor or extensive.

The court stated that the defendant "had effectively abandoned [his wife] and taken up residence with the victim," a finding which is not supported by the record. (Tr. p. 99, lns. 14-15)

It was also noted that a prior mental evaluation and the evaluation undertaken by Dr. Reichman indicated that the Mr. Osborn had an antisocial personality, that if cornered he could strike out in an uncontrolled maner, and that when frightened he acted impulsively. (Tr. p. 99, lns. 15-18)

These observations do not prove, by any preponderence of the evidence, that the defendant exhibits any propensity to commit

-34-

<u>murder</u>.  That Finding does not comport with the standards for
ascertaining facts set forth in <u>Gardner v. Florida</u> and Idaho Code
19-2516.

III.

The Evidence Utilized By The Sentencing Court Was
Not Proven Beyond A Reasonable Doubt.

Idaho Code 19-2515(f) states:

"(f)  The following are statutory aggravating
circumstances, at least one (1) of which must be found
to exist <u>beyond a reasonable doubt</u> before a sentence of
death can be imposed: . . ." (emphasis ours)

Idaho Code 19-2516 states:

"INQUIRY INTO CIRCUMSTANCES -- EXAMINATION OF
WITNESSES.  --  <u>The circumstances must be presented
by the testimony of witnesses examined in open court</u>,
except that when a witness is so sick or infirm as to
be unable to attend, his deposition may be taken by a
magistrate of the county, out of court, upon such notice
to the adverse party as the court may direct.  <u>No
affidavit or testimony, or representation of any kind,
verbal or written, can be offered to or received by the
court</u>, or a judge thereof, <u>in aggravation or mitigation
of the punishment</u>, except as provided in this and the
preceding section.  (emphasis ours)

Whenever a person is charged with a felony, the Consitution
of the State of Idaho mandates that a trial be by jury.  The
defendant cannot waive the jury and elect to be tried solely by
the court.  It goes without saying that if the defendant waives
his right to a trial and enters a plea of guilty, the court is
precluded from using a trial to determine that any facts have
been established beyond a reasonable doubt.  When a plea of

-35-

guilty is entered to a capital crime, statutorily aggravating circumstances must be determined in something other than a jury trial.

The defendant does not contend that his waiver of a jury trial and entry of a plea of guilty precludes the imposition of the death penalty. He does contend that Idaho Code 19-2516 mandates that a factual process as searching and as reliable as that engendered by a jury trial be undertaken by the court before it can make a determination that statutory aggravating circumstances exist beyond a reasonable doubt. There is a further statutory requirement that the factual determination be by the examination of witnesses. Witness testimony is the only type of evidence the Court can utilize to arrive at a determination that statutory aggravating circumstances exist.

The State called no witnesses in aggravation. It relied upon the testimony of witnesses at the Preliminary Hearing, a report submitted by the FBI, and the arguments of the prosecutor. (The Preliminary Hearing testimony and certain items taken from the pre-sentence investigation which were relied upon by the State and the Court have been addressed in the preceding sections.)

The testimony of Mr. Sullinger and the report of the FBI indicate that a weapon found at the Baker residence could very well have caused Ms. Carl's death. However, this supposition was taken from Preliminary Hearing testimony and hearsay evidence in

the form of an FBI report. This evidence was not the product of witness testimony nor did it meet the standards set forth in Gardner v. Florida, Idaho Code 19-2515(f), and Idaho Code 19-2516.

The Court specifically noted that the defendant had not at any time refuted or denied the allegation that the defective weapon sold to him by Mr. Sullinger and later discovered on the Baker premises was the murder weapon. However, if the defendant was suffering from amnesia, there is no way he could deny use of the weapon. The FBI report does not unequivocally state that the weapon that it tested was the same weapon which caused the death of Ms. Carl. Finally, the weapon itself was never admitted into evidence, either at the Preliminary Hearing or the Aggravation/Mitigation Hearing.

The court also noted that the examining psychiatrist stated that the defendant was not suffering from amnesia, and that he was capable of forming the required intent and of conforming his conduct to the requirements of the law. (Tr. pp. 97-98, lns. 22-28, 1-3)

The psychiatrist who examined Mr. Osborn pursuant to the Notice of Intent to Rely Upon Mental Disease or Defect, Dr. John B. Reichman, stated in his report:

> "It is impossible to determine whether or not
> the accused might have developed legitimate and genuine
> amnesia for the period in question at some point during

-37-

his stay in Ogden (days after the murder) either secondary
to drug use or secondary to a disassociative reaction
or a combination of these two; . . .

". . . .it is impossible to determine whether his
claimed amnesia represents a legitimate disassociative/
drug-induced phenomenon with onset at least several days
after the murder or, rather, an utter fake.  . . . . my
best guess would be that it is not genuine.  (emphasis
ours)

"In my opinion the defendant has the capacity to
fully understand proceedings against him and to assist
in his own defense.  In this regard it should be noted
that if the defendant's claim of amnesia is genuine, it
might well constitute some reduction in his ability to
assist in his own defense but not an elimination of that
ability.  Conversely, it might well be argued that such
amnesia (whether or not genuine serves to assist in the
defense.  Whether or not the amnesia is genuine is far
from a clear issue and it would be my best guess that it
is not. (emphasis ours)

"I very much hope that these opinions are of use to
the court."  (emphasis ours)

Dr. Reichman did not state that the amnesic condition claimed
by Mr. Osborn was not genuine.  He opined that this could have
been the case.  Throughout his report, he does not characterize
his findings as fact but rather as "guesses" and "opinions."
Again, the defendant would argue that the "facts" relied upon by
the State and the court do not rise to the standards of reliabil-
ity set forth in Gardner v. Florida and the governing Idaho
statutes.

Idaho's statutory requirements for determining facts upon
which to base a death penalty may be summarized by the following
quotation from Furman v. Georgia:

-38-

"While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the 8th Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

"This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long.  Death, in its finality, differs more from life imprisonment than a 100 year prison term differs from one of only a year or two.  Because of the qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." (emphasis ours)

IV.

The Defendant Pled Guilty To Murder In The First Degree, But The Court Found That He Committed Aggravated Murder In The First Degree, Although The Additional Elements Of The Crime Were Neither Specified, Nor Admitted, Nor Proven Beyond A Reasonable Doubt.

Mr. Osborn pled guilty to the crime of murder in the first degree, as defined by Idaho Code 18-4001, 4003(a).  Subsequently, he was found, beyond a reasonable doubt, to have committed the crime of aggravated murder.  Specifically, Mr. Osborn was found to have committed a murder that was "especially heinous, atrocious, or cruel, manifesting exceptional depravity," and "by the murder, or circumstances surrounding it commission, [he] exhibited utter disregard for human life."

-39-

The prosecuting attorney did not at any time, by way of the Complaint, Information, or formal notice served prior to sentencing, inform Mr. Osborn of the fact that the State would seek to prove aggravating circumstances under Idaho Code 19-2515(f)(5 & 6). In fact, the record is devoid of any request by the State that the death penalty be imposed. It is impossible to determine which of the prosecutor's statement triggered the court's extreme reaction.

The state legislature has defined murder and statutorily enacted a punishment for the normal capital crime and the aggravated capital crime.

Mr. Osborn pled guilty to murder in the first degree as defined by Idaho Code 18-4001 and 4003(a). However, the court found him guilty of "aggravated murder" under Idaho Code 19-2515 (f)(5 & 6).

The United States Constitution contains two Due Process Clauses. The Fifth Amendement restrains the Federal government from depriving any "person" of "life, liberty, or property, without due process of law." The Fourteenth Amendment similarly restrains state governments. The basic premise of the due process clause is that no person is to be deprived of life, liberty, or property unless said deprivation is undertaken via reasonable procedures previously established in the law.

-40-

One of the basic concepts of the due process principle is that of notice.

If the State of Idaho was going to seek to have the death penalty imposed upon Mr. Osborn, then he had the right to be formally notified of that fact and to be further notified of the specific aggravating circumstances which the state would seek to prove beyond a reasonable doubt in support of its attempt to secure a sentence of death. As has been stated previously, there was no notice rendered and, in fact, the state did not at any time request that the death penalty be imposed. However, the sentencing court imposed the death sentence anyway, in spite of the state's decision not to ask for the death penalty, in spite of the state's decision to call no witnesses, and in spite of the state's decision to rely solely upon the prior record, the pre-sentence investigation, an FBI report, and the arguments of counsel.

The circumstances offered in aggravation by the state can be used by the sentencing court in imposing whatever sentence it deemed proper in this case except for the death penalty.

V.

When A Statutory Aggravating Circumstance is Present, Idaho Law Compels The Imposition Of The Death Penalty Unless The Defendant Successfully Introduces Mitigating Circumstances That Outweigh The Aggravating Circumstances, Which Violates The 8th and 14th Amendments And Denies The Defendant Due Process of Law.

-41-

Idaho subscribes to a bifurcated statutory scheme for sentencing in capital crimes. First, the defendant must be found guilty of murder as defined by Idaho Code 18-4001 and 18-4003. Every element of the crime of murder in the first degree must be proven beyond a reasonable doubt

After guilt has been assessed, either by jury verdict or by the defendant's plea, the actors move to the second stage of the proceedings. At the second stage of proceedings, the defendant may be sentenced to life, fixed life, or death. Before he can be sentenced to death, one of ten statutory aggravating circumstances must be proven beyond a reasonable doubt. The aggravating circumstances may have already been proven at the time of trial, or may be proven at the time of sentencing. Once it is determined that an aggravating circumstance exists, death is mandatory unless the defendant shoulders the burden of proof and introduces mitigating circumstances that outweigh the aggravating circumstances. Historically, the burden of proving guilt beyond a reasonable doubt has always rested upon the State. Under Idaho's capital sentencing statute, a defendant may enter the courtroom, at the time of sentencing, not clothed with the presumption that he is innocent of any of the ten aggravating circumstances. In the case of aggravating circumstances (1), (2), (4), (7), (9) and (10), the defendant enters the sentencing courtroom clothed with the knowledge of impending death unless he is able to introduce

-42-

evidence of mitigating circumstances which outweigh any of the
above enumerated aggravating circumstances.

At the time of sentencing, the Idaho Code envisions a
second "guilt" hearing.  However, at the second "guilt" hearing
the burden of proof can shift to the defendant in contravention
of the historical requirement that the state prove beyond a
reasonable doubt the aggravating circumstance and also prove
beyond a reasonable doubt the lack of any mitigating circum-
stance, when such circumstance is raised.  Mullaney v. Wilbur,
421 U.S. 684 (1975)

Idaho Code 19-2515(b)(1, 2, 4, 7, 9, & 10) mandate the death
penalty under the above enumerated circumstances.  The U. S.
Supreme Court has acknowledged that death is a punishment different
from all other sanctions in kind rather than degree.  The Court
held, in Woodson v. North Carolina, 428 U.S. 280 (1976), that a
process that accords no significance to relevant facets of the
character and record of the individual offender or the circum-
stances of the particular offense excludes from consideration in
fixing the ultimate punishment, the possibility of compassion or
mitigating circumstances stemming from the diverse frailities of
humankind.  It treats all persons convicted of a designated
offense not as uniquely individual human beings, but as members
of a faceless, undifferentiated mass, to be subjected to the
blind infliction of the penalty of death.

-43-

When a statute mandates the death penalty unless the defendant successfully shoulders the burden of proof and introduces superior mitigating circumstances, the statute must be invalidated because it denies the defendant due process of law.  Mullaney v. Wilbur, supra; Woodson v. North Carolina, supra.

VI.

The Idaho Legislature Cannot Delegate The Power To Inflict The Death Penalty To The Director Of Corrections Without Setting Forth A Policy And Standards To Guide The Director In His Exercise Of The Delegated Power.

Idaho Code 19-2716 states:

"INFLICTION OF DEATH PENALTY. -- The punishment of death must be inflicted by intravenous injection of a substance or substances in a lethal quality sufficient to cause death until the defendant is dead.  The director of the department of corrections shall determine the substance or substances to be used and the procedures to be used in any execution."

Ever since the United State s Supreme Court's decision in Panama Refining Co. v. Ryan, 293 U.S. 388 (1935) and Schecter Poultry Co. v. U.S., 295 U.S. 495 (1935) it has become an accepted principle of constitutional law that a legislature's delegation of its power to another branch of government is valid only if the legislature sets a policy and standards to guide those by whom the delegated power shall be exercised.  In this instance, the Idaho legislature has neither set a policy nor set standards to guide the director of corrections in the exercise of the power delegated to him.  He is given the unfettered discretion to

-44-

arbitrarily determine the substance or substances to be used in the lethal injection and he is also given the unfettered discrection to arbitrarily determine the procedures to be used in any execution.  The actions of the director are purely discretionary.  His actions in responding to the delegation are not subject to any legislative guidelines.

At this point in time, neither the legislature, nor the sentencing court, nor the defendant has any idea whether the substance is to be such as would be lethal in a minute quantity or very large quantity, whether death would be instantaneous or lingering, whether death would be painless or painful, whether death would be cheap or expensive; the questions that can be raised are limited only by one's imagination.

The procedures which will govern the effecting of the death penalty have not yet been determined.  Again, any action taken by the director of corrections would be arbitrary and not subject to any legislative guidelines.  This failure of the state legislature to set forth a policy and standards to guide the director of corrections in exercising this delegation of legislative power also serves to deny the defendant due process of law under the 14th Amendment of the United States Constitution and Article 1, Section 13 of the Idaho Constitution.

## CONCLUSION

David Osborn pled guilty to murder in the first degree, as defined by Idaho Code 18-4001 and 18-4003(a). The State of Idaho did not serve him with formal notice of the fact that it would seek the death penalty nor did it serve him with formal notice of the aggravating circumstances which it would seek to prove beyond a reasonable doubt. In fact, the State of Idaho did not ask that the death penalty be imposed. The sentencing hearing did not comport with the guidelines set forth in Idaho Code 19-2515(b) and 19-2516 and aggravating circumstances sufficient to support the imposition of the death penalty were not proven beyond a reasonable doubt. The sentencing court cannot find any aggravating circumstance beyond a reasonable doubt because evidence of aggravating circumstances was not offered in accordance with the requirements of the law. Therefore, the death penalty should be vacated and Mr. Osborn returned to the District Court of the Sixth Judicial District, in Bannock County, for sentencing in accordance with the material contained in the record.

DATED This 19th day of December, 1979.

Respectfully submitted,

Hartwell H. K. Blake
Deputy Public Defender
Attorney for Defendant.

-46-

CERTIFICATE OF MAILING

I, Hartwell H. K. Blake, of the firm of McDermott & McDermott, Office of the Public Defender for the Sixth Judicial District, hereby certify that on the 20ᵗʰ day of December, 1979, I served a copy of the foregoing Appellant's Brief by mailing a true and correct copy, postage prepaid, to Mr. Lynn E. Thomas, Deputy Attorney General, Office of the Attorney General, State of Idaho, Statehouse, Boise, Idaho 83701.

Hartwell H. K. Blake

IN THE SUPREME COURT OF THE STATE OF IDAHO

STATE OF IDAHO,                    )
                                   )
      Plaintiff-Respondent,      )
                                   )
vs.                                )     Supreme Court No. 13400
                                   )
DAVID ALLEN OSBORN,                )
                                   )
      Defendant-Appellant.       )
———————————————————————————————————)

FILED

APR - 4 1980

SUPREME COURT OF IDAHO
R. H. YOUNG, CLERK

---

### BRIEF OF RESPONDENT

---

Appeal from the District Court of the Sixth Judicial District

of the State of Idaho, in and for the County of Bannock

---

Honorable Arthur P. Oliver
District Judge

---

DAVID H. LEROY
ATTORNEY GENERAL
State of Idaho

LYNN E. THOMAS
Deputy Attorney General
State of Idaho
Statehouse, Boise, Idaho 83720
Telephone:  (208) 334-2400

ATTORNEY FOR PLAINTIFF-RESPONDENT

HARTWELL H. K. BLAKE
McDERMOTT & McDERMOTT
P.O. Box 3
Pocatello, Idaho 83201

ATTORNEY FOR DEFENDANT-APPELLANT

AUG 27 1980



## STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL
**BOISE 83720**

August 27, 1980

DAVID H. LEROY
ATTORNEY GENERAL

TELEPHONE
(208) 384-2400

R. H. Young, Clerk
Idaho Supreme Court
STATEHOUSE MAIL

Re: <u>State v. Osborn</u>
<u>S. Ct. #13400</u>

Dear Mr. Young:

We wish to call the attention of the Court to a case decided by the Supreme Court of the United States subsequent to the filing of our brief in the above-referenced case. <u>Godfrey</u> v. <u>Georgia</u>, #78-6899, decided May 19, 1980, may be relevant to the issues presented.

In addition, we wish to note a typographical error on page 28 of the Respondent's Brief. The last full sentence appearing on that page reads: "The Texas court held that the statute did improperly delegate legislative authority." That sentence should read as follows: "The Texas court held that the statute did <u>not</u> improperly delegate legislative authority."

We would appreciate it if you would circulate this letter to the Court.

Very truly yours,

*Lynn E. Thomas, Jr.*

Lynn E. Thomas
Deputy Attorney General
Chief, Appellate Division

LET:lb

cc: Gaylen Box
    Attorney for Appellant



FILED
AUG 27 1980
SUPREME COURT OF IDAHO
R. H. YOUNG, CLERK

ORIGINAL

1
2
3

**DAVID H. LEROY**
Attorney General
State of Idaho
Statehouse, Room 210
Boise, Idaho 83720
Telephone: (208) 384-2400

4  LYNN E. THOMAS
5  Deputy Attorney General
   Chief, Appellate Division

6
7
8              IN THE SUPREME COURT OF THE STATE OF IDAHO
9

10  STATE OF IDAHO,                    )
                                       )
11       Plaintiff-Respondent,         )    Supreme Court No. 13400
                                       )
12  vs.                                )         ERRATUM
                                       )
13  DAVID ALLEN OSBORN,                )
                                       )
14       Defendant-Appellant.          )
    _____)
15

16       Item No. 7 on page 23 of the Respondent's Brief, which

17  now reads "The victim was shot at least twice, once in the

18  head and once in the abdomen," should read as follows:  "The

19  victim was shot at least five times, and shots were inflicted

20  in the head and abdomen."

21       DATED this  9ᵗʰ  day of April, 1980.

22                          Respectfully submitted,

23
24          FILED
25        APR 1 0 1980

26    SUPREME COURT OF IDAHO        LYNN E. THOMAS
        R. H. YOUNG, CLERK         Deputy Attorney General
27                                 State of Idaho

28
29
30
31
32

ERRATUM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

DAVID H. LEROY
Attorney General
State of Idaho
Statehouse, Room 210
Boise, Idaho 83720
Telephone: (208) 384-2400

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this _/O_ day of April, 1980, served a true and correct copy of the foregoing ERRATUM, by placing same in the United States mail, postage prepaid, and addressed to Mr. Hartwell H. K. Blake, McDERMOTT & McDERMOTT, P.O. Box 3, Pocatello, Idaho 83201, counsel for appellant.

LYNN E. THOMAS
Deputy Attorney General
State of Idaho

IN THE SUPREME COURT OF THE STATE OF IDAHO

STATE OF IDAHO,                    )
                                   )
        Plaintiff-Respondent,      )
                                   )
vs.                                )      Supreme Court No. 13400
                                   )
DAVID ALLEN OSBORN,                )
                                   )
        Defendant-Appellant.       )
_____    )

---

BRIEF OF RESPONDENT

---

Appeal from the District Court of the Sixth Judicial District

of the State of Idaho, in and for the County of Bannock

---

Honorable Arthur P. Oliver
District Judge

---

DAVID H. LEROY                    HARTWELL H. K. BLAKE
ATTORNEY GENERAL                  McDERMOTT & McDERMOTT
State of Idaho                    P.O. Box 3
                                  Pocatello, Idaho 83201
LYNN E. THOMAS
Deputy Attorney General           ATTORNEY FOR DEFENDANT-APPELLANT
State of Idaho
Statehouse, Boise, Idaho 83720
Telephone:  (208) 334-2400

ATTORNEY FOR PLAINTIFF-RESPONDENT

TABLE OF CONTENTS

Page

STATEMENT OF THE CASE . . . . . . . . . . . . . .  1

POINTS AND AUTHORITIES. . . . . . . . . . . . . .  1

ARGUMENT

      I.   Written Report Of Mitigating Factors. .  6

      II.  Proof Of Aggravating Factors Beyond A
           Reasonable Doubt. . . . . . . . . . .  25

      III. Burden Of Proving Mitigating Circum-
           stances . . . . . . . . . . . . . . .  26

      IV.  Delegation Of The Power To Select The
           Method Of Carrying Out The Death
           Penalty . . . . . . . . . . . . . . .  28

CONCLUSION. . . . . . . . . . . . . . . . . . . .  28

CERTIFICATE OF SERVICE. . . . . . . . . . . . . .  29

## STATEMENT OF THE CASE

David Allen Osborn was convicted of murder in the first degree, upon a plea of guilty.  The trial court, at sentencing, considered evidence from the preliminary hearing, a psychiatrist's report and the pre-sentence examination.  After considering the circumstances surrounding the commission of the crime, the court found the existence of two statutory aggravating circumstances and imposed the penalty of death upon the appellant.  (R., pp.92-102).

The appellant has reviewed the procedural history of the case in his statement of facts.  Additional factual materials relating to the commission of the crime will be discussed in the State's argument.

## POINTS AND AUTHORITIES

### I.

IDAHO LAW REQUIRES THE TRIAL COURT, IN A CAPITAL CASE, TO REPORT ON MITIGATING OR AGGRAVATING FACTORS.

Idaho Code, §19-2515(d)

Gardner v. Florida, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (distinguished)

### II.

THE TRIAL COURT MUST FIND AT LEAST ONE STATUTORY AGGRAVATING CIRCUMSTANCE IN ORDER TO IMPOSE THE PENALTY OF DEATH.

Idaho Code, §19-2515

### III.

THE DEATH PENALTY IS NOT CRUEL AND UNUSUAL PUNISHMENT PER SE.

Gregg v. Georgia, 428 U.S. 153, 49
L. Ed. 2d 859, 96 S. Ct. 2909 (1976)

### IV.

IN ORDER TO JUSTIFY INFLICTION OF THE DEATH PENALTY, THE POWER TO PUNISH MUST BE EXERCISED WITHIN THE LIMITS OF CIVILIZED STANDARDS AND MUST INVOLVE SOME DEGREE OF DISCRETION; DISCRETION TO IMPOSE THE DEATH PENALTY MUST BE NARROWED AND GUIDED IN ORDER TO AVOID CAPRICIOUS AND ARBITRARY RESULTS; MITIGATING FACTORS MUST BE CONSIDERED; MEANINGFUL APPELLATE REVIEW MUST BE PROVIDED.

Woodson v. North Carolina, 428 U.S. 280,
49 L. Ed. 2d 944, 96 S. Ct. 2978 (1976)

State v. Lindquist, 99 Idaho 766, 589
P.2d 101 (1979)

### V.

THE LANGUAGE OF THE IDAHO STATUTE SPECIFYING STATUTORY AGGRAVATING CIRCUMSTANCES IS NOT OVER-BROAD AND VAGUE.

Proffitt v. Florida, 428 U.S. 242, 96
S. Ct. 2960, 49 L. Ed. 2d 913 (1976)

Gregg v. Georgia, supra

### VI.

CAPITAL CASES MUST INVOLVE CONSTRUCTION OF CAPITAL SENTENCING STATUTES ON A CASE BY CASE BASIS; THE HIGHEST COURTS OF THE VARIOUS STATES ARE OBLIGED TO CONSTRUE THEIR STATUTES TO LIMIT THE SWEEP OF LANGUAGE WHICH MIGHT OTHERWISE BE TOO BROADLY APPLIED.

<u>Jurek</u> v. <u>Texas</u>, 428 U.S. 262, 96 S. Ct.
2950, 49 <u>L. Ed.</u> 2d 929 (1977)

## VII.

REVIEWING COURTS MUST SEEK AN INTERPRETATION OF
A LEGISLATIVE ENACTMENT WHICH SUPPORTS ITS CON-
STITUTIONALITY; EVERY PRESUMPTION FAVORS THE VALIDITY
OF LEGISLATIVE ACTS; STATUTES SHOULD BE LIMITED BY
THE PARTICULAR CONDUCT AT ISSUE IN THE CASE.

<u>Leonardson</u> v. <u>Moon</u>, 92 Idaho 796, 451
P.2d 542 (1969)

<u>United States</u> v. <u>Nat'l Dairy Products
Corp., et. al.</u>, 372 U.S. 29, 9 L. Ed.
2d 561 (1963)

<u>State</u> v. <u>Carringer</u>, 95 Idaho 929, 523
P.2d 532 (1974)

## VIII.

LEGISLATIVE INTENT IS THE KEY TO STATUTORY CONSTRUCTION;
IN CONSTRUING STATUTES THE CONDITIONS WHICH GAVE RISE
TO THE LEGISLATION AND THE PURPOSES FOR THE ENACTMENT
ARE IMPORTANT CONSIDERATIONS.

<u>Willard</u> v. <u>First Security Bank of Idaho</u>,
69 Idaho 265, 206 P.2d 770 (1949)

<u>Noble</u> v. <u>Glenns Ferry Bank, Ltd.</u>, 91
Idaho 364, 421 P.2d 444 (1966)

<u>Messenger</u> v. <u>Burns</u>, 86 Idaho 26, 382
P.2d 913 (1963)

## IX.

BY ENACTING <u>IDAHO CODE</u>, §19-2515, THE IDAHO LEGISLATURE
INTENDED TO EFFECTUATE THE CONSTITUTIONAL PRINCIPLES
ANNOUNCED BY THE UNITED STATES SUPREME COURT.

<u>Idaho Code</u>, §19-2515

<u>Gregg</u> v. <u>Georgia</u>, <u>supra</u>

Woodson v. North Carolina, supra

Proffitt v. Florida, supra

Jurek v. Texas, supra

X.

THE "ESPECIALLY HEINOUS OR CRUEL" PROVISION OF THE
IDAHO STATUTE HAS THE PURPOSE OF MAKING SADISTIC
AND TORTUROUS FIRST DEGREE MURDERS CAPITAL FELONIES.

State v. Dixon, 281 So.2d 1 (1973)

XI.

THE "UTTER DISREGARD" PROVISION OF THE IDAHO STATUTE
IS APPLICABLE TO THE COLD-BLOODED KILLER WHO DOES NOT
POSSESS THE NORMAL RESTRAINTS AGAINST THE COMMISSION
OF FIRST DEGREE MURDER.

Gregg v. Georgia, supra

Jurek v. Texas, supra

XII.

IN MAKING THE CAPITAL SENTENCING DECISION, THE TRIAL
COURT IS ENTITLED TO CONSIDER ALL RELEVANT EVIDENCE
IN AGGRAVATION AND MITIGATION AND ALL OTHER RELEVANT
FACTORS WHICH MAY BEAR ON THE SENTENCING DECISION.

Idaho Code, §19-2515(c)

Williams v. New York, 377 U.S. 241, 93
L. Ed. 1337 (1949)

State v. Wolfe, 99 Idaho 382, 582 P.2d
728 (1978)

XIII.

THE STATE HAS CARRIED THE BURDEN OF SHOWING AGGRAVATING
FACTORS BEYOND A REASONABLE DOUBT.

Gregg v. Georgia, supra

XIV.

IT IS NOT AN UNCONSTITUTIONAL DELEGATION OF
LEGISLATIVE AUTHORITY TO DELEGATE TO THE DIRECTOR
OF CORRECTIONS THE RESPONSIBILITY FOR SELECTING
THE DRUGS TO BE USED IN CARRYING OUT THE PENALTY
OF DEATH BY LETHAL INJECTION.

Ex parte Granviel, 561 S.W.2d 503
(Tex.Cr.App. 1978)

Earvin v. State, 582 S.W.2d 794
(Tex.Cr.App. 1979)

State v. Gee Jon, 46 Nev. 418, 211
P.2d 676 (Nev. 1923)

Cf. State v. Kellogg, 98 Idaho 541,
568 P.2d 514 (1977)

<u>ARGUMENT</u>

I.

<u>Written Report Of Mitigating Factors</u>

The appellant first attacks the trial court's failure to set forth in writing mitigating factors considered in imposing the penalty of death.

<u>Idaho</u> <u>Code</u>, §19-2515(d), contains a provision that ". . . the court shall set forth in writing any mitigating factors considered and, if the court finds the mitigating circumstances outweigh the gravity of any aggravating circumstances found so as to make unjust the imposition of the death penalty, the court shall detail in writing its reasons for so finding."

It appears to be appellant's belief that the trial court failed to comply with §19-2515(d) and that the omission would require this court to set aside the death penalty.

In fact, however, the trial court made a written finding with respect to mitigating factors considered.  In his "Memorandum, Findings of Fact and Conclusions of Law," dated June 29, 1979, the trial judge made the following statement:

> This court, because of the extreme burden imposed upon the sentencing judge by the statute and the offense itself, has consciously searched all the information before it hoping sincerely to find circumstances in mitigation which would overcome the circumstances of aggravation--however, such mitigating circumstances do not exist.  (R., p.100).

In short, the trial judge considered none of the circumstances disclosed by the record to be mitigating. The important issue, then, is not whether the trial judge observed the statutory procedures, but whether his conclusion that there were no mitigating circumstances, and the interpretation of the statute which led him to that result, were correct.[1]

Appellant cites Gardner v. Florida, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) in support of the theory that the court's failure to enumerate in writing the mitigating factors considered makes it impossible to determine whether the death sentence imposed rests upon adequate facts. Gardner, however, does not stand for that proposition. The case was one in which the sentencing court had considered, in sentencing, confidential material which was not disclosed to the defendant's counsel. In the opinion vacating the sentence and remanding the case for further proceedings, the court said:

---

[1]   The trial court's memorandum leaves some uncertainty about whether the trial judge correctly read the statute. Idaho Code, §19-2515(d) clearly, by its language, requires the court to set out any mitigating factors which were considered in reaching a conclusion and, also, to go further if the court finds that mitigating factors outweigh aggravating factors. In the latter circumstance, the court is required to explain why such a conclusion was reached. There is, however, in light of the court's order, no way to interpret the memorandum except as described above, that is, that the court found no mitigating factors to be enumerated.

-7-

> . . . it is important that the record
> on appeal disclose to the reviewing
> court the considerations which moti-
> vated the death sentence in every
> case in which it is imposed.  Without
> full disclosure of the basis for the
> death sentence, the Florida capital-
> sentencing procedure would be subject
> to the defects which resulted in the
> holding of unconstitutionality in
> Furman v. Georgia. . . .
> 51 L. Ed. 2d at 404.

No problem of information considered in sentencing, but not disclosed, affects the instant case.  All that the court considered is on the record and is available to this court for review.  In any event, although it is clear that the intent of the statute was certainly to have the factors considered in mitigation spelled out in writing, non-compliance with a procedural directive does not compel vacation of the sentence imposed.  The authorities to be further considered herein demonstrate that what is important in capital sentences is that the constitutional requirements designed to insure due process in the sentencing procedure be observed.

II.

Constitutionality Of The Capital Sentencing Law

Appellant argues that the sentencing guidelines of Idaho Code, §19-2515 are unconstitutionally vague, "thereby affording the court unfettered discretion with which to arbitrarily impose sentence," a circumstance which, if true,

would violate the cruel and unusual punishment clause.

<u>Furman</u> v. <u>Georgia</u>, <u>su</u>pra.

In pertinent part, I.C. §19-2515 provides

> (f)   The following are statutory
> aggravating circumstances, at least
> one of which must be found to exist
> beyond a reasonable doubt before a
> sentence of death can be imposed:
> * * *
> (5)   The murder was especially
> heinous, atrocious or cruel, mani-
> festing exceptional depravity.
>
> (6)   By the murder, or circumstances
> surrounding its commission, the
> defendant exhibited utter disregard
> for human life.
> * * *
> (8)   The defendant, by prior conduct
> or conduct in the commission of the
> murder at hand, has exhibited a pro-
> pensity to commit murder which will
> probably constitute a continuing threat
> to society.

The trial court found the existence of aggravating

circumstances numbered (5) and (6) above beyond a reasonable

doubt.  (R., p.101).  The court found "by a preponderance of

the evidence, but not beyond a reasonable doubt, that the

defendant, by prior conduct and his conduct in the commission

of the murder, has exhibited a propensity to commit murder

and will probably constitute a continuing threat to society."

(Aggravating Factor (8)).  <u>Id.</u>

Although the defendant makes an argument about the

validity of the court's finding "by a preponderance of the

evidence, that the defendant-appellant has exhibited a

propensity to commit murder," (App. Br., pp.33 et. seq.),
it is not necessary for the court to consider this question.
It is clear that the trial court did not intend to predicate
the death penalty upon that finding, nor was it necessary
for the court to do so in order to achieve a valid death
sentence.  The statute (I.C. 19-2515) provides that a death
sentence may be validly imposed upon a finding of only one
of the enumerated aggravating factors, beyond a reasonable
doubt.  The trial judge was well aware of the statute, as is
reflected in his written opinion, and he found the existence
of two statutory aggravating factors beyond a reasonable
doubt.  (R., pp.100-101).

The statute upon which the court relied meets the
federal constitutional requirements for valid capital sentencing
statutes.

The United States Supreme Court has never found that
the death penalty was prohibited by the cruel and unusual
punishment clause.

> . . . we cannot say that the judgment
> of the Georgia's legislature that
> capital punishment may be necessary
> in some cases is clearly wrong.  Con-
> siderations of federalism, as well as
> respect for the ability of a legis-
> lature to evaluate, in terms of its
> particular state the moral concensus
> concerning the death penalty and its
> social utility as a sanction require
> us to conclude, in the absence of more

convincing evidence, that the inflic-
tion of death as a punishment for
murder is not without justification
and thus is not unconstitutionally
severe.

          \* \* \*

We hold that the death penalty is not
a form of punishment that may never
be imposed, regardless of the circum-
stances of the offense, regardless of
the character of the offender, and
regardless of the procedure followed
in reaching the decision to impose it.
Gregg v. Georgia, 428 U.S. 153, 49 L.
Ed. 2d 859, 882-883, 92 S. Ct. 2409
(1976).

In Gregg v. Georgia, supra, and the series of cases
decided with it, the court set out four major conditions
which must be satisfied before a state may inflict the death
penalty.

1.  A mandatory death penalty for first degree murder,
applied without regard for the crime or the offender, does
not satisfy the constitutional requirement that

. . . the states power to punish "be
exercised within the limits of
civilized standards." Woodson v.
North Carolina, 428 U.S. 280, 49 L.
Ed. 2d 944, 959 (1976).

It is clear, therefore, that sentencing in capital cases
must involve some degree of discretion.

The history of mandatory death penalty
statutes in the United States. . .
reveals that the practice of sentencing
to death all persons convicted of a
particular offense has been rejected as
unduly harsh and rigid.  The two crucial
indicators of evolving standards of

> decency respecting the imposition of
> punishment in our society--jury deter-
> minations and legislative enactments--
> both point conclusively to the repudia-
> tion of automatic death sentences.  At
> least since the revolution, American
> jurors have, with some regularity, dis-
> regarded their oaths and refused to con-
> vict defendants where a death sentence
> was the automatic  consequence of a
> guilty verdict. . . .
> Woodson v. North Carolina, 49 L. Ed. 2d
> at 954.

See also:  State v. Lindquist, 99 Idaho 766, 589 P.2d 101

(1979).

2.  Discretion to impose the death penalty must be

narrowed and guided by the identification of significant

aggravating factors, especially if sentencing is left to a

jury.  In reaching this conclusion, the court was motivated

by concern that the death penalty be imposed only where it

was especially warranted and not in an arbitrary and capricious

manner.  Gregg v. Georgia, supra; Woodson v. North Carolina,

supra.

3.  Mitigating factors and the relevant facets of the

character and record of the offender and the circumstances

of the crime must be taken into consideration.

> A process that accords no significance
> to relevant facets of the character
> and record of the individual offender
> or the circumstances of the particular
> offense excludes from consideration
> in fixing the ultimate punishment of death
> the possibility of compassionate or
> mitigating factors stemming from the

diverse frailties of mankind. . . .
<u>Woodson</u> v. <u>North</u> <u>Carolina</u>, 49 L. Ed.
<u>2d at 961</u>.

4.   Meaningful appellate review must be provided as a further safeguard against the imposition of sentences of death under the influence of passion, prejudice or any other arbitrary factor.   <u>Gregg</u> v. <u>Georgia</u>, 49 L. Ed. 2d at 808.

The definitive capital cases decided by the United States Supreme Court in 1976 dispose of appellant's contention that aggravating factor (5) (the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity), is so overbroad and vague that it does not provide the guided discretion required by the Constitution of the United States.   In <u>Proffitt</u> v. <u>Florida</u>, 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976), the court upheld a death penalty statute in which one of the statutory aggravating circumstances was stated thusly:   "The capital felony was especially henious, atrocious, or cruel."   49 L. Ed. 2d at 921, n.6.   In <u>Gregg</u> v. <u>Georgia</u>, <u>supra</u>, the court expressed its approval of a statute containing the following language describing a statutory aggravating circumstance:

> . . . the offense of murder was out-
> rageously and wantonly vile, horrible
> and inhuman, in that it involved
> torture, depravity of mind, or an
> aggravated battery to the victim.
> <u>Gregg</u> v. <u>Georgia</u>, 49 L. Ed. 2d 868,
> <u>870</u>.

Although the statutory aggravating circumstances described is not one found to exist in Gregg, the opinion of Mr. Justice Stewart for three members of the court and the concurring opinions of other members are consistent with the notion that such language would be approved.  Moreover, attention was called to the standards proposed for capital sentencing by the Model Penal Code.  One of the statutory aggravating circumstances described in the Model Penal Code is exactly the same as that appearing in the Idaho statute, to-wit, "the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity."  49 L. Ed. 2d at 886, n.44.  Of this standard, the court said, "While such standards are by necessity somewhat general, they do provide guidance to the sentencing authority and thereby reduce the likelihood that it will impose a sentence that fairly can be called capricious or arbitrary. . . ."  Gregg v. Georgia, 49 L. Ed. 2d at 886.[2]

---

[2]    The discussion of the statutory aggravating circumstances appearing in the Model Penal Code and in the Georgia statute was in the plurality opinion of Mr. Justice Stewart, in which Mr. Justice Powell and Mr. Justice Stevens joined. Mr. Chief Justice Berger, Mr. Justice Renquist, Mr. Justice Blackman, and Mr. Justice White concurred in the judgment, expressing no disagreement with the plurality view of the validity of the language respecting statutory aggravating circumstances.  The same may be said of Proffit v. Florida.

Mr. Justice Stewart, explaining the reasons for statutory aggravating circumstances, focused on the effect of the circumstances specified in the statute and the effect that such specifications might have in directing the attention of the jury to the nature of the crime and the criminal:

> These procedures require the jury to consider the circumstances of the crime and the criminal before it recommends sentence.  No longer can a Georgia jury do as Furman's jury did:  reach a finding of the defendant's guilt and then, without guidance or direction, decide whether he should live or die.  Instead, the jury's attention is directed to the specific circumstances of the crime:  was it committed in the course of another capital felony?  Was it committed for money?  Was it committed upon a peace officer or judicial officer?  Was it committed in a particularly heinous way or in a manner that endangered the lives of many persons?  In addition the jury's attention is focused on the characteristics of the person who committed the crime; does he have a record of prior convictions for capital offenses?  Are there any special facts about this defendant that mitigate [sic] against imposing capital punishment. . . As a result while some jury discretion still exists, "the discretion to be exercised is controlled by clear and objective standards so as to produce non-discriminatory application.  [Citation omitted].  49 L. Ed. 2d at 888.  [Emphasis added].

Against this test, the Idaho statute not only follows the approved language, it serves the purpose identified in Gregg v. Georgia, that is, to give the sentencing authority

some guidance in the exercise of sentencing discretion.   No
pretext is made in <u>Gregg</u> v. <u>Georgia</u> or any of its companion
cases that all discretion must be eliminated from the capital
sentencing process.   Obviously, that would be an unattainable
and unproductive goal.   It would also be unconstitutional.
<u>Woodson</u> v. <u>North Carolina</u>, <u>supra</u>.

Gregg had complained that the statutory aggravating
circumstances leading to his death penalty were so broad and
vague ". . . as to leave juries free to act as arbitrarily
and capriciously as they wish in decided whether to impose
the death penalty."   49 L. Ed. 2d at 890.   He also attacked
"the seventh statutory aggravating circumstance, which
authorizes imposition of the death penalty if the murder was
'outrageously or wantonly vile, horrible or inhuman in that
it involved torture, depravity of mind, or an aggravated
battery to the victim,' contending that it is so broad that
capital punishment could be imposed in any murder case."   49
L. Ed. 2d at 890.   Gregg did not prevail with this argument.

> . . . It is, of course, arguable that
> any murder involves depravity of mind
> or an aggravated battery.   But this
> language need not be construed in this
> way, and there is no reason to assume
> that the Supreme Court of Georgia will
> adopt such an open-ended construction.
> 49 L. Ed. 2d at 890.

The language of aggravating circumstance (6), the
"utter disregard" factor, is of the same character as that

appearing in point (5) which was discussed in Gregg v.
Georgia, and the question of its sufficiency is also settled
by the decisions in Gregg, Jurek, and Proffitt.  The court
is asked to consider whether "by the murder, or circumstances
surrounding its commission, the defendant exhibited utter
disregard for human life."  As with the characteristics of
"heinousness" and "depravity", it may be argued that anyone
who takes a life with premeditation has exhibited utter
disregard for human life.  However, in Mr. Justice Stewart's
words, ". . . this language need not be construed in this
way. . . ."  Nor should it be.  Clearly, the intention of
requiring the use of guided discretion in capital sentencing
cases is to reserve the death penalty for the most cold-
blooded of killers.  With that in mind, the phrase "utter
disregard" means more than the kind of disregard for human
life that is evident in other premeditated murder cases.
Hence, the court should construe this statutory aggravating
circumstance to refer to those cases in which the offender
has demonstrated himself to be a conscienceless, cold-
blooded killer of the type who is not affected by the moral
precept that it is wrong to commit murder.  Drawing examples
from cases with which this court is familiar, this statutory
aggravating circumstance would apply to the case of Thomas
Creech, who appears to have routinely committed murder for

no particular reason and to the case of Phillip Lewis Lindquist who had no apparent hesitation about murdering a helpless stranger for hire.

There is no question that the United States Supreme Court looks to the highest courts of the states to limit the sweep of language which might otherwise be too broadly applied in capital sentencing statutes. See: Jurek v. Texas, 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1977), in which it was observed that the Texas death penalty statute did not include any provision for receiving evidence in mitigation but that the Texas Court of Criminal Appeals had read such a requirement into the statute, a result which was approved.

It is a fundamental principle of law that a reviewing court is to affirmatively seek an interpretation of a legislative enactment which supports constitutionality. Leonardson v. Moon, 92 Idaho 796, 451 P.2d 542 (1969); United States v. Nat'l Dairy Products Corp., et. al., 372 U.S. 29, 9 L. Ed. 2d 561, 565 (1963). Every presumption and intendment favors the validity of the legislative enactment, United States v. Nat'l Dairy Products Corp., supra, and statutes should be given a limiting construction which is given meaning by the particular conduct at issue in the case. State v. Carringer, 95 Idaho 929, 523 P.2d 532 (1974).

The present statute was enacted on the heels of Gregg v. Georgia, supra, and its companion cases and, because legislative intent is the lodestar of statutory construction, Willard v. First Security Bank of Idaho, 69 Idaho 265, 206 P.2d 770 (1949), the conditions which gave rise to the legislation and the purposes motivating its enactment are important. Noble v. Glenns Ferry Bank, Ltd., 91 Idaho 364, 367, 421 P.2d 444 (1966); Messenger v. Burns, 86 Idaho 26, 29-30, 382 P.2d 913 (1963). Applying these principles, it is apparent that the state legislature sought to apply, by Idaho Code, §19-2515, the principles enunciated by the United States Supreme Court in Gregg v. Georgia, supra; Woodson v. North Carolina, supra; Proffitt v. Florida, supra; Jurek v. Texas, supra. In that light, the purpose of the statute must be seen to be that of limiting the death penalty to the most aggravated of cases. It is also apparent that the legislature, because it did not attempt to more specifically define the statutory aggravating circumstances, intended to leave for case-by-case construction the precise manner in which the aggravating circumstances would be applied, as is entirely appropriate.

The "especially heinous, atrocious or cruel" provision of a like statute in Florida has been said by the Florida Supreme Court to have the purpose of limiting application of

the death penalty statute to a narrow category of capital felonies.

> What is intended to be included are
> those capital crimes where the actual
> commission of the capital felony was
> accompanied by such additional acts
> as to set the crime apart from the
> norm of capital felonies--the con-
> scienceless or pitiless crime which is
> unnecessarily torturous to the victim.
> State v. Dixon, 281 So.2d 1 (1973).

The "utter disregard" provision was added by the Idaho legislature to apply to a slightly different category of offender.  If the "especially heinous" provision refers to the manner of committing the crime and applies to those offenders who commit capital murders in a sadistic manner or with the application of torture, then the "utter disregard" aggravating circumstance must be seen to apply to the cold-blooded, pitiless killer who does not possess the normal restraints against committing murder, but nonetheless does not do so sadistically or with torture.  Nothing in any of the governing cases prevents the legislature from making this judgment.

The "utter disregard" aggravating circumstance is not different in quality from the aggravating circumstances found to exist in Gregg v. Georgia, supra.  There, the trial court found that the offense was committed while the offender was engaged in the commission of another capital felony, namely, armed robbery and, secondly, that the murder was

committed for the purpose of receiving money.  As noted, the
Idaho legislature has chosen to include in the capital
felonies list those murders which are pecularly inexcusable
but do not necessarily involve the offense of robbery or the
commission of another capital felony.  In <u>Gregg</u>, the offense
was committed as follows:

> . . . Allen was asked, in petitioner's
> presence, how the killing occurred.
> He said that he had been sitting in the
> back seat of the 1960 Pontiac and
> was about half asleep.  He woke up when
> the car stopped.  Simmons and Moore
> got out, and as soon as they did
> petitioner turned around and told Allen:
> "Get out, we're going to rob them."
> Allen said that he got out and walked
> toward the back of the car, looked around
> and could see petitioner, with a gun in
> his hand, leaning up against the car so
> he could get a good aim.  Simmons and
> Moore had gone down the bank and had
> relieved themselves and as they were
> coming up the bank petitioner fired
> three shots.  One of the men fell, the
> other staggered.  Petitioner then circled
> around the back and approached the two
> men, both of whom were now lying in the
> ditch, from behind.  He placed the gun
> to the head of one of them and pulled
> the trigger.  Then he went quickly to
> the other one and placed the gun to his
> head and pulled the trigger again.  He
> then took the money, whatever was in
> their pockets.  He told Allen to get
> in the car and they drove away.
>
> When Allen had finished telling this
> story, one of the officers asked peti-
> tioner if this was the way it had happened.
> Petitioner hung his head and said that
> it was.  The officers then said:  "You
> mean you shot these men down in cold

> blooded murder just to rob them" and
> petitioner said yes.  The officer then
> asked him why and petitioner said he
> did not know. . . .
> 49 L. Ed. 2d at 897.

In appellant's case, evidence from the preliminary
hearing record, which was placed before the court for con-
sideration in sentencing, reflects the following facts about
the murder:

1.   The appellant admitted to friends that he had
committed the crime and asked them to hide his car.  (Prelim.
Hear. Tr., p.38).

2.   The appellant stated to a witness who testified at
the preliminary hearing that the motive for the murder was
that the victim had threatened to report, or had reported,
Osborn for a robbery he had committed.  (Prelim. Hear. Tr.,
p.39).

3.   One Curtis Short testified that the appellant had
stated that he "had to" kill the victim because she had
"called the cops on him."  (Prelim. Hear. Tr., p.67).

4.   Shortly after the offense, Osborn did not appear
to be severely intoxicated.  (Prelim. Hear. Tr., p.46 et
seq.).

5.   Appellant's gun had been modified in a manner
which required manually pulling the hammer backward before
the gun could be fired a second time.  (Prelim. Hear. Tr.,
p.58).

6.     Appellant stated to Curtis Short that he had "shot a girl in the head four times." (Prelim. Hear. Tr., p.64).

7.     The victim was shot at least twice, once in the head and once in the abdomen. (Prelim. Hear. Tr., p.84).

8.     The victim had been badly beaten. Her face was bruised and she had tremendous contusions over the right side of her face. Her nose had been broken and five entrance wounds from bullets were found in her body. (Prelim. Hear. Tr., p.110).

9.     The beating apparently occurred prior to the shooting. (Prelim. Hear. Tr., pp.113, 119). The testimony with respect to the time when the bruises were inflicted, in relation to the time of death, was stricken, probably improperly. (Prelim. Hear. Tr., p.120). The testimony expressing a pathologist's opinion that the victim's nose was broken prior to the shooting remains in the record.

The prosecution and defense submitted the preliminary hearing transcript for consideration in mitigation and aggravation. (R., p.96). Based upon it the trial court concluded that the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity and by the murder or circumstances surrounding its commission, the defendant exhibited utter disregard for human life. (R., p.100).

The pre-sentence investigative report was also considered by the trial court.  It reflected a long-standing anti-social personality, drug dealing and the physical abuse of women to whom the appellant had been married.  (R., pp.98-99).

A psychiatric report was considered.  The psychiatrist had reported to the court that the defendant had the capacity at the time of the offense to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law.  (R., p.94).

The facts considered by the court support the finding of statutory aggravating factors sufficient to justify imposition of the penalty of death.  The beating administered to the victim might be considered evidence of heat of passion, and thus a mitigating factor, were it not for the fact that the victim was also shot five times.  The evidence also affords a fair inference for the conclusion that because the appellant's gun had to be manually positioned for firing each time, the shooting was carried out in a cold-blooded manner and the appellant had ample time to calculate and fire the shots.  Had this been a "heat of passion" killing, it is likely that the victim would have been beaten to death.  However, it appears from the evidence that the appellant beat the victim and shot her in a different series of actions and the inference to be drawn from the facts set out is that the killing was

carried out with aggravated brutality and with utter indifference to human life.  This seems especially to be the case in light of appellant's statement that he "had to" kill the victim in order to avenge himself for what he believed to be a report to the police concerning a robbery he had committed.

## II.

### Proof Of Aggravating Factors Beyond A Reasonable Doubt

The appellant contends that the aggravating factors were not proven beyond a reasonable doubt, as required by I.C. §19-2515.  In fact, however, the facts described above were not disputed.  The appellant signed a questionnaire indicating that he understood that by pleading guilty to the charge he was admitting all of the elements of the offense and that he could be sentenced to death or imprisonment for life.  (R., p.88).

Appellant contends that the court was not entitled to use evidence from the preliminary hearing transcript in order to establish the criteria of proof beyond a reasonable doubt.  This theory is based on the provision of I.C. §19-2515(c), which provides that "evidence admitted at trial shall be considered and need not be repeated at the sentencing hearing."  No trial was held because appellant pleaded guilty. However, the quoted statute also provides that at the hearing

in mitigation and aggravation "the state and the defendant shall be entitled to present all relevant evidence in aggravation and mitigation." Idaho Code, §19-2515(c). The defendant, as well as the State, relied on the transcript of the preliminary hearing, (R., p.96), and the appellant is now in no position to contend that the trial court was not permitted to use the preliminary hearing transcript in its inquiry into aggravating and mitigating circumstances.

The trial court is entitled to take into account all relevant factors which may bear upon the sentencing decision. I.C. §19-2515(c); Williams v. New York, 377 U.S. 241, 93 L. Ed. 1337 (1949); State v. Wolfe, 99 Idaho 382, 582 P.2d 728 (1978).

The undisputed evidence in the record clearly furnishes an adequate basis upon which the trial court could conclude that the aggravating factors had been demonstrated beyond a reasonable doubt.

### III.

### Burden Of Proving Mitigating Circumstances

Osborn argues that because the statutory scheme at issue here requires the court to impose the penalty of death upon the finding of an aggravating factor, an impermissible burden of proof has been placed upon the defendant in violation of the Eighth and Fourteenth Amendments. A quick answer to

this contention is that the statutory procedure utilized by the Idaho legislature has been considered and approved by the United States Supreme Court in <u>Gregg</u> v. <u>Georgia</u>, <u>supra</u>, and the cases decided with it.

The purpose of this kind of sentencing procedure was described in <u>Gregg</u> v. <u>Georgia</u>.

> The new Georgia sentencing pro-
> cedures. . . focus the jury's attention
> on the particularized nature of the
> crime and the particularized charac-
> teristics of the individual defendant.
> While the jury is permitted to consider
> any aggravating or mitigating circum-
> stances, it must find and identify at
> least one statutory aggravating factor
> before it may impose a penalty of death.
> In this way the jury's discretion is
> channeled.  No longer can a jury wan-
> tonly and freakishly impose the death
> sentence; it is always circumscribed
> by the legislative guidelines.
> 49 L. Ed. 2d at 893.

Discussion of a shifting burden of proof is inappropriate here.  The sentencing scheme comprised by the Idaho statutes must be viewed as a unitary procedure to carry out the purpose of channeling the discretion of the finder of fact in order to prevent arbitrary and capricious results.  No burden of proof is shifted to the defendant; he has no more burden under the present statutory scheme than he would have at trial when, in order to rebut a <u>prima facie</u> case of guilt made by the state he would have the burden of going forward with any evidence he might have in defense.

IV.

## Delegation Of The Power To Select The Method Of Carrying Out The Death Penalty

Finally, the appellant contends that the legislature improperly delegated the power to inflict the penalty of death by leaving it to the Board of Corrections to select the manner of carrying out the penalty of death by lethal injection, without adequate guidelines.  The same contention was presented to the Texas Court of Criminal Appeals in the case of Ex parte Granviel, 561 S.W.2d 503 (Tex.Cr.App. 1978). The Texas statute also provided that the selection of the chemical agents to be used would be left to the director of corrections.  The Texas court held that the statute did improperly delegate legislative authority.  See also: Earvin v. State, 582 S.W.2d 794 (Tex.Cr.App. 1979); State v. Gee Jon, 46 Nev. 418, 211 P.2d 676 (Nev. 1923); Cf. State v. Kellogg, 98 Idaho 541, 568 P.2d 514 (1977), (discussing delegations of legislative authority).

## CONCLUSION

The judgment of the trial court should be affirmed.

DATED this 4th day of April, 1980.

Respectfully submitted,

LYNN E. THOMAS
Deputy Attorney General
State of Idaho

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this 7th day of April, 1980, served two true and correct copies of BRIEF OF RESPONDENT, by placing same in the United States mail, postage prepaid, and addressed to Hartwell H. K. Blake, McDERMOTT & McDERMOTT, P.O. Box 3, Pocatello, Idaho 83201, counsel for appellant.

LYNN E. THOMAS
Deputy Attorney General
State of Idaho

ORIGINAL

IN THE SUPREME COURT OF THE STATE OF IDAHO

STATE OF IDAHO,                    )
                                   )
        Plaintiff-Respondent,      )
                                   )
vs.                                )        Supreme Court No. 13400
                                   )
DAVID ALLEN OSBORN,                )
                                   )
        Defendant-Appellant.       )
_____)



APPELLANT'S REPLY BRIEF

Appeal from the District Court of the Sixth Judicial District

of the State of Idaho, in and for the County of Bannock

Honorable Arthur P. Oliver
District Judge

DAVID H. LEROY                      GAYLEN L. BOX
ATTORNEY GENERAL                    McDERMOTT & McDERMOTT
State of Idaho                      P. O. Box 3
                                    Pocatello, Idaho 83201
LYNN E. THOMAS                      Telephone:  (208) 232-3162
Deputy Attorney General
State of Idaho                      ATTORNEYS FOR DEFENDANT-APPELLANT
Statehouse, Boise, Idaho 83720
Telephone:  (208) 334-2400

ATTORNEY FOR PLAINTIFF-RESPONDENT

SEP 11 1980

# OFFICE OF PUBLIC DEFENDER

SIXTH JUDICIAL DISTRICT

136 SOUTH 4TH AVENUE — P. O. BOX 3
PHONE 232-3162
POCATELLO, IDAHO 83201

PETER D. McDERMOTT
PUBLIC DEFENDER

DEPUTY DEFENDERS
HARTWELL H. K. BLAKE
KEITH A. ZOLLINGER
RONALD J. JARMAN
GAYLEN L. BOX

September 9, 1980

R. H. Young, Clerk
Idaho Supreme Court
451 West State Street
Boise, Idaho 83720

    RE:  State of Idaho vs. David A. Osborn
          Supreme Court No. 13400

Dear Mr. Young:

      We wish to correct errors in Appellant's Reply Brief, as follows:

      At Page 1, typed line 10:  I.C. § 19-2515 should read I.C. § 19-2516.

      At Page 2, typed line 21:  I.C. §§ 19-2516(f)(5) should read I.C. §§ 19-2515(f)(5).

      At Page 4, typed line 18:  I.C. § 19-2515 should read I.C. § 19-2516.

      At Page 5, typed line 15:  19-2515, I.C. should read 19-2516, I.C.

      At Page 6, typed line 21:  I.C. § 19-2515 should read I.C. § 19-2516.

      At Page 20, third paragraph, typed line 7: I.C. § 19-2516 should read I.C. § 19-2515.

      It will be appreciated if you will circulate this letter to the Court.  Thank you.

Sincerely yours,

GAYLEN L. BOX

GLB:pb
Enclosures  9 copies letter
cc:  Mr. Lynn E. Thomas (2)

FILED

SEP 11 1980

SUPREME COURT OF
R. H. YOUNG, CLERK

IN THE SUPREME COURT OF THE STATE OF IDAHO

STATE OF IDAHO,               )
                              )
     Plaintiff-Respondent,    )
                              )
vs.                           )       Supreme Court No. 13400
                              )
DAVID ALLEN OSBORN,           )
                              )
     Defendant-Appellant.     )
_____)

---

### APPELLANT'S REPLY BRIEF

---

Appeal from the District Court of the Sixth Judicial District

of the State of Idaho, in and for the County of Bannock

---

Honorable Arthur P. Oliver
District Judge

---

DAVID H. LEROY                       GAYLEN L. BOX
ATTORNEY GENERAL                     McDERMOTT & McDERMOTT
State of Idaho                       P. O. Box 3
                                     Pocatello, Idaho 83201
LYNN E. THOMAS                       Telephone:  (208) 232-3162
Deputy Attorney General
State of Idaho                       ATTORNEYS FOR DEFENDANT-APPELLANT
Statehouse, Boise, Idaho 83720
Telephone:  (208) 334-2400

ATTORNEY FOR PLAINTIFF-RESPONDENT

TABLE OF CONTENTS

Page

STATEMENT OF THE CASE . . . . . . . . . . . . . . . 1

ISSUES PRESENTED ON APPEAL. . . . . . . . . . . . . 1

POINTS AND AUTHORITIES. . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . 44

APPENDIX. . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . 48

-i-

## STATEMENT OF THE CASE

The case has been set out in Appellant's Brief.


## ISSUES PRESENTED ON APPEAL

In addition to the issues set out in Appellant's Brief, the following issues are set out in Appellant's Reply Brief:

1.  Is this a case where the death penalty is warranted.

2.  Is this an extraordinary case requiring strict adherence to I.C. § 19-2515.


## POINTS AND AUTHORITIES

I.

IDAHO'S AGGRAVATING CIRCUMSTANCE (8), WHICH ALLOWS IMPOSITION OF DEATH WHEN THE SENTENCING COURT FINDS THAT "THE DEFENDANT, BY PRIOR CONDUCT OR CONDUCT IN THE COMMISSION OF THE MURDER AT HAND, HAS EXHIBITED A PROPENSITY TO COMMIT MURDER WHICH WILL PROBABLY CONSTITUTE A THREAT TO SOCIETY" IS UNCONSTITUTIONALLY VAGUE.

Arnold v. State
236 GA 534
244 S.E.2d 386

II.

THE DETERMINATION AS TO FUTURE DANGEROUSNESS CANNOT
BE PREDICTED WITH ANY MEANINGFUL DEGREE OF EVIDENTIARY
CERTAINTY.

Cocozza and Steadman, The Failure of Psychiatric
Predictions of Dangerousness:
Clear and Convincing Evidence,
29 Rutgers L.R. 1084, (1976)

Addington v. Texas
439 U.S. 908 (1979)


III.

ANY AGGRAVATING CIRCUMSTANCE RELIED UPON BY THE TRIAL
COURT MUST BE PROVEN BEYOND A REASONABLE DOUBT.

In Re Winship
397 U.S. 358 (1970)

State v. Brown
607 P.2d 261 (Utah 1980)

Patterson v. New York
432 U.S. 198 (1977)


IV.

IDAHO CODE §§ 19-2516(f)(5) and (6) ARE UNCONSTITU-
TIONAL BECAUSE THERE IS NO LIMITATION PLACED UPON
THE NARROW APPLICATION OF THOSE AGGRAVATING CIRCUM-
STANCES ONLY TO SPECIFIC CASES.

Gregg v. Georgia
428 U.S. 153 (1976)

Godfrey v. Georgia
Sup.Ct. No. 78-6899
48 L.W. 4541, May 19, 1980

Proffitt v. Florida
428 U.S. 242
96 Sup.Ct. 2960
49 L.Ed.2d 913 (1976)

V.

A DEATH PENALTY THAT IS MANDATORY IN APPLICATION IS
UNCONSTITUTIONAL.

Woodson v. North Carolina
428 U.S. 280 (1976)

State v. Lindquist
99 Idaho 766 (1979)
589 P.2d 101 (1979)


VI.

THE FAILURE OF IDAHO'S DEATH STATUTE TO ENUMERATE
MITIGATING CIRCUMSTANCES RENDERS THAT STATUTE UN-
CONSTITUTIONAL FOR VAGUENESS.

State v. Lopez
98 Idaho 581 (1977)

Furman v. Georgia
408 U.S. 238 (1972)


VII.

MITIGATING CIRCUMSTANCES OFFERED BY THE DEFENDANT
WERE SIMILAR TO MITIGATING CIRCUMSTANCES DEFINED IN
OTHER SIMILAR DEATH STATUTES.

Utah Code § 76-3-207

Florida Statutes Annotated
Section 921.141(5)

A.L.I., Model Penal Code, § 201.6


VIII.

THE DEFENDANT HAS A SUBSTANTIAL INTEREST IN THE
CHARACTER OF THE PROCEEDINGS THAT LEAD TO THE IMPOSI-
TION OF A SENTENCE IN A CAPITAL PUNISHMENT CASE.

<u>Garner v. Florida</u>
<u>430 U.S. 349 (1977)</u>

## IX.

AT THE SENTENCING STAGE OF A CRIMINAL PROCEEDING
THE DEFENDANT HAS A RIGHT, BASED IN CONSTITUTIONAL
LAW, TO BE CONFRONTED WITH LIVE TESTIMONY OF WIT-
NESSES AGAINST HIM, WITH THE ATTENDANT ABILITY TO
CROSS-EXAMINE.

<u>Spect v. Patterson</u>
<u>386 U.S. 605</u>

<u>Garner v. Florida</u>
<u>430 U.S. 349 (1977)</u>

## X.

IN A CAPITAL PUNISHMENT CASE ANY EVIDENCE RECEIVED
BY THE COURT IN AGGRAVATION OR MITIGATION OF THE
SENTENCE MUST BE PRESENTED THROUGH LIVE TESTIMONY
OF WITNESSES PRESENTED IN OPEN COURT.

Idaho Code <u>§ 19-2515</u>

<u>State v. Coutts</u>
27 I.C.R. 433, April 10, 1980

<u>Spect v. Patterson</u>
<u>386 U.S. 605</u>

## XI.

BEFORE IMPOSING SENTENCE IN A CRIMINAL MATTER, THE
COURT MUST ADDRESS THE DEFENDANT AND ADVISE HIM OF
HIS RIGHT TO PRESENT ANY INFORMATION IN MITIGATION
OF PUNISHMENT.

<u>Idaho</u> <u>Criminal</u> <u>Rule</u> <u>32(a)</u> (1979)

## XII.

IN IDAHO THERE EXISTS A PRESUMPTION AGAINST THE
WAIVER OF FUNDAMENTAL CONSTITUTIONAL RIGHTS, AND A
DEFENDANT CANNOT WAIVE A CONSTITUTIONAL RIGHT EXCEPT
BY AN INTELLIGENT AND COMPETENT WAIVER.

State v. Fuchs
100 Idaho 341 (1979)

State v. Fisk
92 Idaho 675 (1968)

## XIII.

IN A CAPITAL PUNISHMENT CASE WHERE A DEFENDANT'S
LIFE IS AT STAKE, THE COURT SHOULD BE PARTICULARLY
SENSITIVE TO INSURE THAT EVERY SAFEGUARD IS OBSERVED
IN ORDER TO ASSURE THAT A DEFENDANT'S RIGHTS UNDER
19-2515, I.C., ARE PROTECTED, THE TRIAL JUDGE SHOULD
ADVISE THE DEFENDANT OF HIS RIGHTS THEREUNDER, AND,
SHOULD THE DEFENDANT DECIDE TO WAIVE THOSE RIGHTS,
THE COURT SHOULD INSURE THAT THE DEFENDANT IS MAKING
A KNOWING, VOLUNTARY, AND INTELLIGENT WAIVER.

Idaho Judge's Sentencing Manual
Section 6.3 (1976)

State v. Fisk
92 Idaho 675 (1968)

State v. Fuchs
100 Idaho 341 (1979)

Gregg v. Georgia
428 U.S. 153 (1976)

## XIV.

THIS COURT CAN CONSIDER SUA SPONTE ERRORS BELOW
THAT MAY HAVE LEAD TO THE IMPROPER IMPOSITION OF
THE DEATH PENALTY, EVEN THOUGH TRIAL COUNSEL MAY
NOT HAVE PRESERVED HIS RIGHT TO APPEAL THEREFROM
AT THE TRIAL COURT LEVEL.

<u>State v. Brown</u>
607 P.2d 261 (Utah 1980)

<u>State v. Stenback</u>
<u>78 Utah 350</u>
2 P.2d 1050 (1931)

XV.

A CAPITAL PUNISHMENT CASE IS AN EXTRAORDINARY CASE
AND THE STATE'S INTEREST IN INSURING A VIABLE
SYSTEM OF SENTENCING HEARINGS SHOULD NOT OVERRIDE
THE APPELLANT'S INTEREST IN INSURING THAT THE DE-
CISION TO IMPOSE DEATH RESTS UPON COMPETENT EVIDENCE.
WHEN A DEFENDANT'S LIFE IS AT STAKE, THE COURT SHOULD
BE PARTICULARLY SENSITIVE TO INSURE THAT EVERY SAFE-
GUARD IS OBSERVED.

<u>Garner v. Florida</u>
430 U.S. 349 (1977)

<u>Spect v. Patterson</u>
386 U.S. 605

<u>State v. Coutts</u>
27 I.C.R. 433, April 10, 1980

Idaho Code § 19-2515

<u>Idaho Judge's Sentencing Manual</u>
Section 6.3 (1976)

<u>Gregg v. Georgia</u>
428 U.S. 153 (1976)

XVI.

MEANINGFUL APPELLATE REVIEW MUST BE PROVIDED IN ORDER
TO SAFEGUARD AGAINST THE IMPOSITION OF A SENTENCE OF
DEATH UNDER THE INFLUENCE OF PASSION, PREJUDICE, OR
ANY OTHER ARBITRARY FACTOR.

<u>Gregg v. Georgia</u>
428 U.S. 153 (1976)

XVII.

CASES IN WHICH SENTENCING AUTHORITIES HAVE DECLINED
TO GIVE POTENTIALLY MITIGATING FACTORS THE SAME
SIGNIFICANCE GIVEN THEM IN SIMILAR CASES MAY BE RE-
GARDED AS VIOLATING THE REQUIREMENT THAT THE DEATH
PENALTY BE IMPOSED WITH REASONABLE PROPORTIONALITY.

Dix, <u>Appellate Review of the
Decision to Impose Death</u>,
<u>Georgetown Law Journal</u>, Vol. 68:  97 at 107


XVIII.

PUNISHMENT OF DEATH SHOULD BE RESTRICTED FOR APPLI-
CATION TO CASES AT THE CORE OF THE AGGRAVATING
CIRCUMSTANCES, RATHER THAN AT THE PERIPHERY.

<u>Harris v. State</u>
237 Ga. 718
230 S.E. 2d 1 (1976)

ARGUMENT

I.

Since the 1972 decision of Furman v. Georgia, 408 U.S. 238 (1972), the imposition of death as a punishment has been subject to considerable scrutiny.  The basis for invalidating pre-Furman death penalty statutes was primarily that they were being applied with unconstitutional arbitrariness.  Justices Stewart, Powell, and Stevens concluded that the imposition of death in the absence of guided discretion and legislatively defined standards violated the "cruel and unusual punishment" clause of the Eighth Amendment.  See Lockett v. Ohio, 438 U.S. 586 at 599 (1978).

State response to the decision in Furman was indicated by several states' (Idaho included) modifying their death penalty statutes to eliminate arbitrariness by making the penalty manda-tory for certain crimes.  Roberts v. Louisiana, 428 U.S. 325 (1976) and Woodson v. North Carolina, 428 U.S. 280 (1976) rendered that response unconstitutional.  The Idaho Supreme Court followed suit and declared Idaho's mandatory death penalty unconstitutional in State v. Lindquist, 99 Idaho 766 (1979).

Out of the Court's decision in Woodson arose the require-ment that the individual's character and record, as well as the circumstances of the particular offense, be taken into considera-tion in determining whether life should be taken in punishment

for crime.  See Woodson, 428 U.S. at 304, and see Roberts, 428
U.S. at 333, 334.

     Since Woodson and Roberts, statutes allowing the death
penalty have been enacted and have often withstood constitutional
scrutiny.  The landmark decision of Gregg v. Georgia, 428 U.S.
153 (1976) upheld Georgia's death penalty statute, once again
echoing the warning of Furman:

> "Where discretion is afforded a sentencing body on
> a matter so grave as the determination of whether a
> human life should be taken or spared, that discretion
> must be suitably directed and limited so as to minimize
> the risk of wholly arbitrary and capricious action."
> 428 U.S. at 189.

The continuing vitality of that language was reemphasized as
recently as May of 1980.

> "This means that if a state wishes to authorize
> capital punishment it has a constitutional responsi-
> bility to tailor and apply its law in a manner that
> avoids the arbitrary and capricious infliction of the
> death penalty.  Part of a state's responsibility in
> this regard is to define the crimes for which death may
> be sentenced in a way that obviates 'standardless
> [sentencing] discretion'... It must channel the sen-
> tencer's discretion by 'clear and objective standards'
> that provide 'specific and detailed guidance', and that
> make rationally reviewable the process for imposing a
> sentence of death."  Godfrey v. Georgia, Sup.Ct.
> No. 78-6899, 48 L.W. 4541, May 19, 1980.

     It is against this constitutional background that the
Court is asked to review the imposition of the death penalty in
this case.  This Court is seldom faced with a more ominous task.
According to Gregg v. Georgia, supra, "There is no question that
death as a punishment is unique in its severity and irrevocability

... .  When a defendant's life is at stake, the Court has been particularly sensitive to insure that every safeguard is observed ..."  428 U.S. at 153.

In response to the United States Supreme Court's decisions in Gregg and Woodson, the Idaho Legislature enacted a death penalty statute aimed at complying with constitutional requirements, and consistent with the presumed will of the people that death should be employed as punishment for crime in appropriate cases.  That statute has been set out in Appellant's Brief at pages 2 and 3.  In addition, an integral part of Idaho's death penalty provides for appellate review of the decision to impose death on a case by case basis.[1]

It is urged that Idaho's death penalty goes farther than death statutes that have heretofore been considered and upheld by the United States Supreme Court.  This is the case for two important reasons.  First, the standards employed by the Idaho statute are not as susceptible of clear and objective application as similar statutes considered by the United States Supreme Court; and second, the absence of designation of mitigating circumstances, when blended with the subjectivity of the aggravating circumstances, carries the statute over the limits of constitutionality.

Of all of the death statutes analyzed by the United States Supreme Court, Georgia's and Florida's death statutes are

---

[1] See Appendix

most similar to Idaho's.   Two of the aggravating circumstances
found to exist in the instant case are, also, found in similar
provisions of the Georgia statute.   Those circumstances are, (5)
that the murder was especially heinous, atrocious, or cruel,
manifesting exceptional depravity, and (8) that the defendant, by
prior conduct or conduct in the commission of the murder at hand,
has exhibited a propensity to commit murder which will probably
constitute a continuing threat to society.   R. p. 100.

With respect to aggravating circumstance (8), allowing
the imposition of death, if the court finds the defendant has
exhibited a propensity to commit murder which will probably
constitute a continuing threat to society, the Georgia case of
Arnold v. State, 236 GA 534, 224 S.E.2d 386, (1976), is instruc-
tive.   The Georgia statute considered in that case allowed the
imposition of death upon a finding of the aggravating circumstance
that "the murder was committed by a person who has a substantial
history of assaultive criminal convictions".

The Georgia statute is similar to Idaho's circumstance
(8) in that it entails a retrospective evaluation of the defen-
dant's character and a conclusion as to whether or not life
should be taken, which is premised largely upon subjective factors.
In the Georgia case the Court held:

> "Black's Law Dictionary defines 'substantial' as
> 'of real worth and importance'; 'valuable'.   Whether
> the defendant's prior history of convictions meets this
> legislative criterion is highly subjective.   While we

might be more willing to find such language sufficient in another context, the fact that we are concerned with the imposition of a death sentence compels a different result.  We therefore hold that the portion of [the Georgia statute] which allows for the death penalty where 'murder [is] committed by a person who has a substantial history of assualtive criminal conviction,' is unconstitutional and, thereby, unenforceable."  224 S.E.2d at 392.

Idaho's legislative criterion contained in circumstance (8) is no less subjective.  The Court is required to delve into the defendant's past and determine whether he has exhibited a "propensity" to commit murder.  A propensity is defined by Webster as a "natural inclination" or "leaning".  In addition, the statute requires that the sentencing judge find that the defendant will "probably constitute a continuing threat to society".  The subjectivity of these statutory criteria should, under the rationale of Arnold v. State, render that particular aggravating circumstance unconstitutional.

In addition, studies by noted psychiatrists reveal that predictions relating to future dangerousness of individuals are grossly inaccurate.  According to a recent study:

". . . At the present time psychiatry lacks the capacity to identify dangerous patients with sufficient reliability to meet a court's evidentiary test of either beyond a reasonable doubt or clear and convincing evidence.  It in fact appears that psychiatrists cannot even predict accurately enough to be more often right than wrong."  Cocozza and Steadman, The Failure of Psychiatric Predictions of Dangerousness:  Clear and Convincing Evidence, 29 Rutgers L.R. 1084, (1976) at 1101.

-12-

The Court is therefore placed in a position of being able to impose death based upon a psychiatric judgment call relating to predictions of future dangerousness that psychiatrists admit even they cannot make.  According to the American Psychiatric Association:

> "Psychiatric expertise in prediction of 'dangerousness' is not established and clinicians should avoid 'conclusory' judgments in this regard."  Am. Psy. Assoc., <u>Clinical</u> <u>Aspects of the Violent Individual</u>, <u>Task</u> <u>Force</u> <u>Report</u> <u>8</u>, at 33 (1974) as quoted in <u>Rutgers</u> <u>L.R.</u>, supra.

The inquiry into the existence of circumstance (8) involves a consideration of whether the defendant, because of his dangerousness poses a threat to society.  Whether an individual is dangerous and poses a threat to society must be determined by those competent to make such predictions.  Customarily this duty has been performed by psychiatrists and psychologists.  Yet, as noted above, the accuracy of those predictions leaves much to be desired.  <u>Addington v. Texas</u>, 439 U.S. 908 (1979), a case dealing with the standard of proof to be employed in civil commitment proceedings, made the following observation:

> "Given the lack of certainty and the fallibility of psychiatric diagnosis, there is a serious question as to whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous.  [cases cited]".

<u>Addington</u> recongnized the difficulty of proving future dangerousness beyond a reasonable doubt in civil commitment proceedings.  However, noting the lack of any need for such a

stringent standard of proof in civil commitment proceedings, the court allowed proof of such dangerousness to be by clear and convincing evidence.  Of compelling importance in the <u>Addington</u> decision was the fact that civil commitment proceedings are at least partially beneficent, advancing both the interest of the state and the patient.  There are no similar benefits conferred upon an individual who is facing a death penalty, and it is urged that the strictest standard of proof should apply to criminal proceedings wherein an individual is facing deprivation of life.

In conjunction with the United States Supreme Court's own admission that proof of future dangerousness beyond a reasonable doubt may be unattainable and the studies of noted psychiatrists reflecting the inaccuracy of such predictions, the Court is also urged to examine the evidence upon which the sentencing judge based his conclusion that this appellant constitutes a continuing threat to society.  According to the court:

> "Prior evaluations and the evaluation by
> Dr. Reichman indicate the defendant has an antisocial
> personality.  That, cornered, he may very well strike
> out in an uncontrolled way and, when frightened, acts
> impulsively."  R. p. 99.

The evidence relied upon by the court, in drawing its conclusion that the appellant may very well strike out in an uncontrolled way and, when frightened, acts impulsively, is a seventeen-year-old psychological evaluation, conducted by a psychology trainee at the Utah State Industrial School when the appellant was thirteen (l3) years old.

The more recent evaluation by Dr. John B. Reichman, contains no predictions as to future dangerousness, and the prior record of the appellant does not reflect a serious pattern of dangerous conduct.  As a juvenile, the appellant had two assault and battery convictions.  The appellant's adult record reflects no convictions for any type of dangerous or assaultive conduct.

Considering the inherent difficulty in making predictions of future dangerousness combined with the inadequacy of evidence underlying the sentencing court's conclusion, it is urged that the finding of aggravating circumstance (8) by any degree of legal certainty must be overruled.

The State has argued that, because aggravating circumstance (8) was found to exist only by a preponderance of the evidence, that this Court need not concern itself with that particular circumstance.  State's Brief, p. 10.  This conclusory statement passes over the importance of the finding of any aggravating circumstance.  It is by the finding of an aggravating circumstance that a criminal defendant is placed in the position of fighting for his life.  More importantly, it is by the outweighing of the aggravating over the mitigating circumstances that the District Court is authorized, indeed, instructed to impose the penalty of death.  The District Court noted the existence of aggravating circumstance (8) and one must assume that it was taken into consideration in the weighing of aggravating and

mitigating circumstances.   Otherwise, why was it included in the specific findings of fact and conclusions of law?

Furthermore, the statute does not prohibit the consideration of aggravating circumstances which are proven only by a preponderance of the evidence.   According to the terms of the statute, the sentencing authority must find statutory aggravating circumstances, "at least one of which must be found to exist beyond a reasonable doubt before a sentence of death can be imposed".   Idaho Code § 19-2515(f).   So long as at least one aggravating circumstance is found to exist beyond a reasonable doubt, the statute could conceivably permit a penalty of death to be imposed upon that aggravating circumstance plus any other aggravating circumstances which have only been proven by a preponderance of the evidence.   This is inconsistent with constitutional principles.   According to In Re Winship, 397 U.S. 358 (1970):

> "Lest their remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  397 U.S. at 364.

In State v. Brown, 607 P.2d 261 (Utah 1980):

> "How much more appropriate it is to apply that standard when life itself is at stake and any error irreversible.   It is at best anomalous that the issue of life or death should be decided on the basis of a burden of persuasion standard which is typically used to decide ordinary run of the mill civil cases."  607 P.2d at 273.

Appellant urges this Court to hold that the Due Process Clause requires that the standard of proof of "beyond a reasonable doubt" must apply to the finding of any aggravating circumstance relied upon in the court's decision to impose the death penalty.

The constitutional principles enunciated in Winship, supra, reflect the concern that the risk of error in a criminal prosecution must be minimized, even at the risk that some who are guilty may go free. See Patterson v. New York, 432 U.S. 198, at 208 (1977). The effect of an erroneous decision to impose death carries with it obvious irreversible consequences. Therefore, the risk of error in a death case must, likewise, be minimized through the application of a standard of proof insuring, to the highest degree possible, an error-free execution. In a capital punishment case, an individual facing death should not be required to share with the State the risk of error when the possible injury to the individual is significantly greater than any possible harm to the State. Compare Addington v. Texas, supra.

Assuming the unconstitutionality of aggravating circumstance (8); or assuming the unconstitutionality of allowing the sentencing authority to consider an aggravating circumstance where it has only been proven by a preponderance of the evidence, where does the balance lie? Can it be said that, upon the elimination of that circumstance, the mitigating circumstances do not outweigh the aggravating circumstances? The record lends no

assistance, for all it contains is the conclusion that the mitigat-
ing circumstances do not outweigh the aggravating circumstances.
R. p. 100.[a]  Because of the court's failure to specify factors
considered in mitigation, this Court is precluded from exercising
any meaningful appellate review and cannot determine if, in the
absence of circumstance (8), the mitigating circumstances would
outweight the aggravating circumstances.

It is urged that, once this Court finds any defect
upsetting the balance relied upon by the sentencing judge, then
the death penalty must be reversed.  In Presnell v. Georgia, 439
U.S. 14, 15 L.E.2d 207, 99 Sup.Ct. 235 (1978), the United States
Supreme Court noted that the defendant is entitled, on appeal, to
have his conviction appraised on consideration of the case as it
was tried and as the issues were determined by the trial court.
439 U.S. at 16.  The United States Supreme Court overruled the
Georgia Supreme Court's examination of the record and finding on
its own volition of aggravating circumstances which would support
death.  Therefore, in the instant case, upon the finding of any

---

[a]   Appellant agrees with respondent that there is uncertainty as to the
trial judge's proper application of the statute.  The statute requires
that the mitigating circumstances considered be set out by the court.
I.C. § 19-2515(d).  This was not done in the instant case.  Appellant
disagrees with the conclusion the State urges from the lack of such
noncompliance.  In a case of this gravity, noncompliance with statu-
tory procedures should, of itself, lead to reversal.  The impact that
such noncompliance has on effective appellate review is considered
infra at 35.

defect which upsets the balance, it is respectfully urged that the death penalty must be overruled.

The second similarity to the Georgia statute heretofore considered by the United States Supreme Court is in Idaho's aggravating circumstance (5), providing that the murder was especially "heinous, atrocious, or cruel, manifesting exceptional depravity". Georgia's death statute contains a similar provision that the offense was "outrageously or wantonly vile, horrible, or inhuman, in that it involved torture, depravity of mind or an aggravated battery to the victim".

Upon a close analysis, it is urged that the Georgia aggravating circumstance is a clearer and more objective standard than Idaho's similar provision.  The first half of the Georgia circumstance is qualified and clarified by the second half. According to the Georgia statute, a murder is especially or wantonly vile, horrible, or inhuman when it involves torture, depravity of mind or an aggravated battery to the victim.  Idaho's statute is couched in much more ambiguous and subjective terms. There is nothing qualifying or explaining the subjective terms "especially heinous, atrocious, or cruel" except the equally subjective and ambiguous standard that the murder manifests exceptional depravity.

The State has submitted that Idaho's aggravating circumstance (5) was given United States Supreme Court approval in

-19-

the Gregg case and, also, in Proffitt v. Florida, 428 U.S. 242, 96 Sup.Ct. 2960, 49 L.Ed.2d 913 (1976).

The petitioner in Gregg contended that the Georgia aggravating circumstance which authorized capital punishment if the murder was "outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind, or an aggravated battery to the victim" was so broad that it could be imposed in any murder case.  The Court, noting that its grant of certiorari was limited to the question of the constitutionality of that particular aggravating circumstance as applied "in this case", 49 L.Ed.2d at 868, went on to conclude that prior decisions of the Georgia Supreme Court had applied a narrow interpretation of that circumstance, and that there was "no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction".

The statute before this Court today is not salvaged by the Gregg analysis for two reasons.  First, the Georgia aggravating circumstance is clearer and more objective than the Idaho aggravating circumstance, as noted above.  Second, and most important, there is nothing limiting the application of Idaho's aggravating circumstance (5) to prevent its application to all murder cases.  Idaho Code § 19-2516 does not clearly define it as having a narrow application, and in no way was the sentencing judge's discretion limited to such a narrow application.  The

mandate of the Gregg decision is clear; the sentencer's discretion must be channeled and guided by clear, objective, and specific standards.  In Georgia, the statute was aided by case law interpreting and instructing the sentencer as to its proper application. The Idaho sentencing judge does not have the benefit of such prior interpretation and instruction by his own legislative or judicial authority, and guidance is not properly taken from other jurisdictions which may or may not be controlling in Idaho.

Even assuming that this Court accepts the State's offer to construe the death statute in a manner supporting its constitutionality, State's Brief, p. 18, the mere narrow interpretation by this Court of the statute so as to limit its application "to the most aggravated of cases", State's Brief, p. 19, does not cure the constitutional defect.  It is the sentencer's discretion that must be channeled, not the appellate court's review.  See Godfrey v. Georgia, supra, Marshall and Brennan concurring at 48 L.W., 4546.

In the Godfrey case, the Georgia Supreme Court affirmed a sentence of death, based upon no more than a finding that the offense was "outrageous or wantonly vile, horrible and inhuman". The United States Supreme Court analyzed that conclusion and held:

> "There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence.  A person of ordinary sensibility could

fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman'. 48 L.W. at 4544.

In the absence of definite guidance concerning the meaning and application of this language, the sentencer is left with the discretion to impose the death penalty in a standardless and unchanneled manner.  This renders Idaho's death penalty statute unconstitutional under the mandate of Godfrey and Gregg.

The case of Proffitt v. Florida, supra, undertook an analysis similar to that undertaken in Gregg.  In Profit, the circumstance considered was that the murder be "especially heinous, atrocious, or cruel".  428 U.S. at 255.  As in Gregg, the Supreme Court looked to the Florida Supreme Court's decisions to determine if that aggravating circumstance could be salvaged from its claim to vagueness and over-breadth.  According to the United States Supreme Court:

> "[The Florida Supreme Court] has recognized that while it is arguable 'that all killings are atrocious, ... [s]till, we believe that the legislature intended something "especially" heinous, atrocious, or cruel when it authorized the death penalty for first degree murder [cases cited].'  As a consequence, the court has indicated that the eighth statutory provision is directed only at 'the consciousless or pitiless crime which is unnecessarily torturous to the victim' [cases cited].  We cannot say that the provision as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases."  428 U.S. at 255, 256 (emphasis added).

As in Gregg, the aggravating circumstance considered in Profit was not unconstitutional because of its prior construction.

The Florida Supreme Court had, in essence, instructed the sentencing authority on the proper application of that particular circumstance.  The sentencer was instructed to apply that circumstance only to those crimes that were "especially" heinous, atrocious, or cruel and the "consciousless or pitiless crime which is unnecessarily tortuous to the victim".

In the instant case, the sentencing judge had no such instruction.  It can be argued that the sentencing judge, in fact, applied a narrow interpretation of the statutory provision.  The constitutional defect is that <u>it</u> <u>can</u> <u>just</u> <u>as</u> <u>easily</u> <u>be</u> <u>argued</u> <u>that</u> <u>he</u> <u>did</u> <u>not</u>.  There was nothing commanding such an application, and it was left to the sentencer's unchecked and unguided discretion to apply the aggravating circumstance in accordance with the direction of his own particular whim, passion, or prejudice.

Contrary to the State's assertion, the United States Supreme Court has not placed its stamp of approval on Idaho's death statute.  A close analysis reveals that something more than the mere language of aggravating circumstance (5) is necessary to save that circumstance from constitutional infirmity.  <u>The words</u> <u>of the statute, standing alone, imply no inherent restraint on the</u> <u>arbitrary and capricious infliction of the death sentence</u>.  <u>See</u> <u>Godfrey</u>, supra.  In the absence of instruction from this Court, or the legislature imposing standards of application, and channeling the sentencer's discretion, the death penalty cannot be

constitutionally imposed in this case.  No such standards or guidelines exist.

From a reading of the District Court is even more susceptible to constitutional attack.  The trial court found that, by the murder of this victim, or the circumstances surrounding the commission of this murder, the appellant exhibited an utter disregard for human life.  R. p. 101.

From a reading of _Gregg_, _Proffitt_, and _Godfrey_, it is quite clear that the United States Supreme Court is persuaded that, standing alone, some aggravating circumstances may be applied to almost any murder case.  Such application would be unconstitutional.  In addition, an aggravating circumstance that would, in all likelihood, apply to any first degree murder, would come close to the mandatory type death penalty prohibited in _Woodson_.

In _Woodson_, the Court reflected that mandatory and automatic imposition of death for certain crimes has long been inconsistent with contemporary American standards.  The Court viewed the enactment of mandatory penalties as an effort at constitutional compliance with _Furman_, and not as a reflection of a change in society's attitude toward automatic death.  _See_ _State v. Lindquist_, 99 Idaho 766, 589 P.2d 101 (1979).  It became clear to the Court that mandatory statutes enacted in response to _Furman_ had simply papered over the problem of unguided and

unchecked sentencers' discretion.  <u>See</u> <u>Woodson</u>, 428 U.S. at 302.

        Such is the case with Idaho's efforts at constitutional
compliance.  It is axiomatic that all murders of the first degree
reflect utter disregard for human life.  One need only read
Idaho's first degree murder statute to find this truth.  Further-
more, there are no legislative limitations restricting the
application of this aggravating circumstance, nor are there any
directions from this Court restraining the application of that
circumstance to only those murders warranting the death penalty.
Combining this fact with the requirement of the statute that the
sentencing judge "shall impose death" upon the finding that the
aggravating circumstances outweigh the mitigating circumstances
produces the result that the death penalty shall be imposed for
all first degree murders, unless the defendant can establish that
the mitigating circumstances outweigh the aggravating circumstances.
Therefore, after a defendant has suffered a conviction for first
degree murder, the burden of proving that his life should not be
taken is placed squarely upon his shoulders.

        The law instructs the appellant that he can save his
life by proving mitigating circumstances which outweigh the
aggravating circumstances advanced by the State.  The court can
vary the appellant's burden of proof by exercising its broad
discretion in selecting the number of aggravating circumstances
in existence.  As the court did in this case, the appellant's

burden was to overcome aggravating circumstances (f), (5), (6), and (8).  In addition to allowing the arbitrary infliction of the death penalty, this procedure is constitutionally impermissive for two additional reasons.  First, the failure to specify and define mitigating circumstances makes the statute unconstitutionally vague; and, second, such a procedure constitutes an impermissible shifting of the burden of proof to the defendant.

The failure of the State to enumerate the mitigating circumstances results in the arbitrary, discriminatory, and imprecise infliction of the death penalty.  The sentencing judge not only has discretion to broadly construe aggravating circumstances (5), (6), and (8), but he also has unguided discretion in determining what a mitigating circumstance is, and when it exists. There are no guidelines to prevent arbitrary and discriminatory application of the death penalty; therefore, the statute should, be declared unconstitutional pursuant to Furman.  See also State v. Lopez, 98 Idaho 581 (1977), Appellant's Brief at page 29.

The appellant in this case offered mitigating circumstances into evidence.  Among those reflected by the record were the following:

(1)  Appellant's past record was not a record of violence against others.

(2)  Appellant came from a disruptive and broken home.

(3)  Appellant suffered from a long history of poly drug abuse.

(4)  Appellant was suffering from intoxication and the effects of such poly drug abuse at the time of the commission of the crime.

(5)  Appellant cooperated fully with the police and court, confessing his guilt and placing himself at the mercy of the court.  Tr. pp. 56, 57.

Although the Idaho statute does not specify what a mitigating circumstance is, a review of other death statutes reflects the type of mitigating circumstances offered by the appellant are often considered factors in mitigation.  The Florida death statute, considered in Proffitt, specifies the following similar mitigating circumstances:

> "(a) Defendant has no significant history of prior criminal activity.  (b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance. ... (f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."  See Florida's Statutes Annotated, Section 921.141(5) (West Supp. 1979).

Utah defines similar circumstances in mitigation:

> "(a) The defendant has no significant history of prior criminal activity.  (b) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.  ... (d) At the time of the murder, the capacity of the defendant to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental disease, intoxication, or influence of drugs. ... (g) Any other fact in mitigation of the penalty."  Utah Code § 76-3-207.

-27-

Both of these statutes are patterned after the Model Penal Code which sets out nearly identical mitigating circum- stances.  See A.L.I., Model Penal Code, § 201.6.  Because of the omission from the Idaho statute of specification of mitigating circumstances, the appellant had no other source of guidance except to look to other death statutes to determine what a mitigating circumstance was.  Appellant presented mitigating circumstances that would clearly fall within the language of the other statutes.  The State urges that the appellant presented no circumstances of mitigation.  See State's Brief p. 7, n. 1.  The court did not enumerate the mitigating circumstances considered, therefore, there is no way of knowing how the items offered by the appellant in mitigation were weighed by the court, if at all.

Due to the absence of any definition of mitigating circumstances in the statute, the trial judge is free to exercise uncontrolled discretion in setting his own definition of what a mitigating circumstance is.  There is no guideline, instructing him to consider any particular factor as mitigating, nor what weight that factor should be afforded.  The sentencing judge is free to exercise unfettered and uncontrolled discretion to totally ignore any item offered by the defendant in mitigation.  This is exactly what the State urges that the sentencing judge did in the instant case.  According to the State:

> "There is, however, in light of the court's order, no way to interpret the memorandum except as described

above, that is, <u>that the court found no mitigating factors to be enumerated</u>."  State's Brief at p. 7, n. 1. (emphasis added).

<u>Gregg</u> requires that, in order to avoid arbitrary and capricious infliction of death, the circumstances of aggravation and mitigation should be weighed, and weighed against each other. By allowing the sentencing authority the latitude to reject the proffered mitigating circumstances as non-mitigating, the danger warned against in <u>Gregg</u> becomes ever-present.  Idaho's death penalty statute is so broad that it, not only gives the sentencing judge the discretion to find aggravating circumstances in almost any case, but it, also, gives the sentencing judge the discretion to determine that no mitigating circumstances exist, although they may have been offered.

In addition, by placing the burden of proof on the defendant to establish that the mitigating circumstances outweigh the aggravating circumstances, the State is relieved of the burden of proving every fact necessary to constitute the capital offense of first degree murder.  <u>See</u> <u>In</u> <u>Re</u> <u>Winship</u>, supra. The <u>Winship</u> Court also stressed that the inherent risk of error should not fall on a defendant who has immense interest at stake in preserving his liberty and avoiding the stigma that accompanies a criminal conviction.

The application of such a constitutional principle in this case is clear.  At stake in this case is much more than the

-29-

possibility that a guilty man may go free.   The appellant should
not be made to bear the risk of ascertaining what a mitigating
circumstance is and, then, of proving that any specified aggravat-
ing circumstances are outweighed by the mitigating circumstances.

                              II.

       Appellant furthermore contends on this appeal that the
trial court failed to follow the provisions of Idaho Code
§ 19-2516.   That section provides:

       "Inquiry into circumstances -- Examination of
       witnesses. -- The circumstances must be presented by
       the testimony of witnesses examined in open court,
       except that when a witness is so sick or infirm as to
       be unable to attend, his deposition may be taken by a
       magistrate of the court, out of court, upon such notice
       to the adverse party as the court may direct.   No
       affidavit or testimony, or representation of any kind,
       verbal or written, can be offered to or received by the
       court, or a judge thereof, in aggravation or mitigation
       of the punishment, except as provided in this and the
       preceding section."

       The trial court ordered a formal aggravation/mitigation
hearing pursuant to § 19-2515.   R. p. 91.   At the time of the
aggravation/mitigation hearing, the court instructed defense
counsel to go forward with circumstances in mitigation.   Counsel
for appellant advised that no witnesses would be called in mitiga-
tion, but proceded to deliver to the court a statement in mitiga-
tion.   Tr. pp. 54-59.

       The State was next asked to present statements or

witnesses in aggravation.   The State then proceeded to introduce
prior testimony as evidence in aggravation:

> MR. PINCOCK: "I have chosen, Your Honor, because
> I think we do have a -- a good record of what transpired
> in the preliminary hearing, instead of calling witnesses
> today, to rely on the testimony presented at the pre-
> liminary hearing ... ."  Tr. pp. 59, 60.[b]

Idaho Criminal Rule 32(a), in effect at the time of the
sentencing, provided:

> "[b] Before imposing sentence, the court shall
> afford counsel an opportunity to speak on behalf of
> the defendant and shall address the defendant person-
> ally to ask him if he wishes to make a statement in
> his own behalf and to present any information in
> mitigation of punishment."  (emphasis added).

Although a formal aggravation/mitigation hearing was
ordered by the court, there is nothing in the record indicating
that the appellant was made aware of his statutory right under
Idaho Code § 19-2516, or that, upon being advised of that very
important statutory right, the appellant made a knowing,
intelligent, and voluntarily waiver thereof.

It is urged that the Due Process Clause requires that
a defendant's statutory rights be respected at the sentencing
stage, just as much as any other stage of a criminal proceeding.
According to the United States Supreme Court:

---

[b]   Although defense counsel did not object to this testimony, it is urged
that, because this is a death case, this court can consider the pro-
priety of the admissions of such evidence on appeal.  See  State v.
Brown, 607 P.2d 261 (Utah 1980); State v. Stenback, 78 Utah 350,
2 P.2d 1050 (1931) at 1056.

>        "It is now clear that the sentencing process,
> as well as the trial itself, must satisfy the require-
> ments of the Due Process Clause.  Even though the
> defendant has no substantive right to a particular
> sentence within the range authorized by statute, the
> sentencing is a critical stage of the criminal pro-
> ceeding, at which he is entitled to effective
> assistance of counsel ... .  The defendant has a
> legitimate interest in the character of the proceed-
> ings which leads to the imposition of sentence even
> if he may have no right to object to a particular
> result of the sentencing process ... ."  Garner v.
> Florida, 430 U.S. 349 (1977).  (emphasis added).

The defendant in a death penalty case has a very sub-
stantial interest in his sentencing hearing.  Where this Court
may be willing to make concessions in other criminal cases, it is
urged that because this is a death case, strict adherence to
statutory requirements must be demanded.  This is not an ordinary
case where the State's interest in maintaining a viable and
expeditious procedure overrides the defendant's interest in
having the decision to impose death rest upon competent evidence.
Death penalty cases are relatively infrequent and, considering
the gravity of the proceedings, the concern for a viable system
of sentencing hearings expressed in State v. Coutts, 27 I.C.R.
433, April 10, 1980, should not override the appellant's interest.
According to Coutts:

>        "In order to maintain a viable system of sentencing
> hearings, under ordinary circumstances, such
> hearings normally need not be encumbered with all
> the procedural requirements which attend a resolu-
> tion of the issue of guilt or innocence.  The
> court therefore holds that in the absence of an
> explicit request for the formal hearing contemplated
> by I.C. 19-2516, the court may reach its sentencing

decision by receiving the unsworn formal statements
presented by both sides, together with the presentence
report and arguments of the respective counsel."
27 ICR 437.  (emphasis added).

It is urged that this Court, through limiting its rule
to "ordinary circumstances", left open the possibility of applying
a stricter rule of compliance in extraordinary circumstances.
The present case represents such an extraordinary circumstance
where strict compliance with the statute should be demanded.

Furthermore, because of the clear requirements of
§ 19-2516, counsel for the defendant had a reasonable basis for
expecting that the trial court could not impose a death sentence
in the absence of competent, live testimony presented at the
aggravation/mitigation hearing.  The record supports a contention
that trial counsel was aware of the type of evidence that the
prosecution intended to offer, and that, with knowledge that the
prosecutor would present no competent evidence upon which the
court could base the death penalty, the maximum penalty that
could be imposed would be life imprisonment.  See Tr. p. 54.

In addition to the statutory right to be confronted
with live testimony contained in § 19-2516, it is urged that the
appellant had a right, based in constitutional law, to be con-
fronted with live testimony of witnesses against him with the
attendant ability to cross-examine those witnesses.  The consti-
tutional right has its basis in Gardner, supra, as well as in
Spect v. Patterson, 386 U.S. 605, which reflected that the Due

-33-

Process Clause requires that a convicted person be present at his sentencing hearing, that he have an opportunity to be heard, to be confronted with witnesses against him, and have the right to cross-examine and offer evidence of his own.   386 U.S. at 608.

Having argued that the appellant had a statutory and constitutional right to live testimony at his sentencing hearing, the next inquiry must be whether he waived that right.   According to the Idaho Judge's Sentencing Manual, § 6.3 (1976):

> "If either the prosecutor or defendant insists, the court may not receive any evidence in violation of this section of the Code [19-2516].   That means that all evidence must be in the form of live testimony with an opportunity for cross-examination, except where a deposition is permitted in accordance with statute, or unless the parties waive the requirements of § 19-2516.   In order to make a proper record, the court should ask the parties specifically if they are willing to waive the requirements of the statute, if evidence other than that permitted in § 19-2516 is presented."   (emphasis added).

It is fundamental that a defendant in a criminal proceeding cannot abandon any constitutional protection except by an intelligent and competent waiver.   See State v. Fuchs, 100 Idaho 341, (1979).   Indeed, in Idaho, there exists a presumption against waiver of fundamental constitutional rights.   State v. Fisk, 92 Idaho 675 (1968).   It is impossible to conclude that this appellant waived his constitutional and statutory rights when the record does not even reflect that he was aware of those rights.   It is, therefore, urged that the decision to impose death in this case be invalidated because of the failure of the trial court to

advise the appellant of his rights under § 19-2516, as well as his constitutional right to confront and cross-examine witnesses at his sentencing hearing, and the court's attendant failure to elicit a knowing, voluntary, and intelligent waiver from the appellant before permitting evidence in contravention of those rights.

Appellant also urges that the reliance upon the preliminary hearing transcript at the sentencing stage permitted the trial court to impose death upon the basis of inadmissible hearsay evidence. See State v. Mee, pending Idaho Supreme Court Case No. 12879.

In addition, the judge's failure to set out, in writing, the mitigating circumstances considered constitutes error and renders meaningful appellate review impossible. As noted above, the trial court did not specify mitigating circumstances considered, although the statute directed that he do so. The constitutional significance of effective appellate review is acknowledged by the State:

> "Meaningful appellate review must be provided as a further safeguard against the imposition of sentences of death under the influence of passion, prejudice, or any other arbitrary factor. Gregg v. Georgia, 49 L.E.2d at 808." State's Brief at p. 13.

As an integral part of effective appellate review, Idaho Code § 19-2515(d) directs that the court set forth, in writing, any mitigating factors considered. Such a requirement

-35-

allows the appellate court to review the balancing process under-
taken by the trial court in order to discover any factors indicat-
ing passion, prejudice, or bias.

The failure of the trial court to do so renders effective
appellate review impossible and, therefore, the decision to
impose death in this case should be invalidated.

The State has suggested that the absence of written
specification of mitigating circumstances is merely an indication
that no such mitigating circumstances existed.  The appellant has
set out the proffered mitigating circumstances, supra at pp. 26,27
of this brief.  Appellant urges that, if this be the case, the
failure of the trial court to consider mitigating circumstances
when such circumstances were offered gives rise to a strong
indication that the sentence of death was imposed under the bias
and prejudice of the sentencing authority.

In addition, notable authorities have indicated that
the failure to consider mitigating circumstances when offered
may, also, violate the requirement that the death penalty be
imposed with consistency and uniformity.  According to Professor
Dix:

> "Cases in which sentencing authorities have
> declined to give potentially mitigating factors the
> same significance given them in similar cases can,
> in addition, be regarded as violating the require-
> ment of reasonable proportionality."  Dix, Appellate
> Review of the Decision to Impose Death, Georgetown
> Law Journal, Vol. 68: 97 at 107."

Appellant urges that the trial court's failure to specify the mitigating circumstances in writing must lead to reversal of the decision to impose death because it renders any meaningful appellate review impossible.  In addition, assuming the Court accepts the State's argument that the trial court found no mitigating circumstances to exist, even though such circumstances were offered by the appellant, it is submitted that this is a strong indication that the decision to impose death was a result of bias, passion, or prejudice.  Finally, the failure of the trial court to give the same significance to the mitigating circumstances offered by the appellant as has been given in other death penalty cases renders the imposition of death in this case unconstitutional because it is disproportionate to penalties imposed in other cases.

### III.

Finally, appellant urges that this is not a case where death should be imposed because the facts of the case do not fit within that class of cases intended to be punishable by death. It has been said that the punishment of death should be restricted for application to cases at the core of the aggravating circumstances, rather than at the periphery.  Harris v. State, 237 Ga. 718, 230 S.E.2d 1 (1976).  Insight into the proper application of the death statute may be gained from the following case, inter-

preting an aggravating circumstance included in Florida's death statute:

> "It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies--the conscious-less or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon 283 S.E. 1, 9 (Florida 1973).

The State refers this Court to the cases of Thomas Creech and Philip Lindquist as cases in which the penalty of death would be properly invoked. Because of the scarcity of cases in which death has been imposed in Idaho, a more illuminating analysis may be provided by considering cases where defendants have been charged with first degree murder, and death has not been imposed. Appellant urges that, because of the lack of cases where death has been imposed, a broader basis for comparison can be found in the following cases where death has not been imposed.

## CASE NO. 1

State v. Jonathan LaFon, February 1978, Bannock County. The defendant in the above matter plead guilty to first degree murder in February of 1978, and was sentenced to life imprison-

ment in August of 1978 by the Honorable George W. Hargraves.

The evening before the murder was committed, the defendant had committed an armed robbery of a local convenience store, obtaining approximately $300.00 in cash.  Following the robbery the defendant went to a bar and consumed a few hard drinks.  He later went to another bar which had a reputation as being a meeting place for homosexuals and consumed several pitchers of beer.  It was at the second bar that the defendant met the victim. The defendant, the victim, and another individual drove to a party in Idaho Falls in the victim's car.  The trio returned from Idaho Falls in the early morning hours of the following day and dropped off the third individual at his home.

The defendant indicated that the victim, who was homosexual, invited him to come to his room; and, although the defendant was admittedly bisexual, he declined the offer.  The defendant and the victim drove to the west bench of Pocatello where they slid off the road and became stuck in the snow.  A tow truck was called from a nearby residence and they were pulled back onto the road.  Following this they drove around Pocatello and the defendant fell asleep.  Upon awaking, the defendant found that they were proceeding into the hills south of Pocatello.  The defendant fell asleep again, to be awakened some time later to find the victim making sexual advances towards him.  The victim became angry when the defendant refused to engage in sexual

activity and they quarreled while continuing to drive.  The
victim stopped at a natural spring south of Pocatello, at which
time the defendant requested the victim to return to Pocatello.
They re-entered the car and the victim continued to drive away
from the city of Pocatello and the defendant demanded to be let
out of the vehicle, planning to walk back to town.  They stopped
in a parking lot approximately eleven miles from Pocatello.  As
the defendant got out of the car he felt the gun in his coat
pocket.  The victim exited the vehicle and the defendant withdrew
the weapon from his pocket and shot the victim in the forehead.
The defendant emptied the four-shot, 22-caliber derringer into
the body of the victim, reloaded it and fired additional rounds
into the body.  The postmortem report indicated that one shot had
struck the victim in the forehead, that two more shots had entered
his chest, and that one shot had entered the victim's left arm,
and at least two more shots, probably the immediate cause of
death, were fired into the victim's head from behind.

When the defendant was asked by investigating officers
as to why he had continued to shoot the victim, he indicated
that, "The son-of-a-bitch just wouldn't die."

The defendant then dragged the body of the victim to
the bank of a nearby stream, took the victim's credit cards,
traveler's checks, and jewelry, and then pushed the victim over
the bank.  He then took the victim's automobile and headed west

towards Twin Falls, Idaho.  He was arrested the following day in Twin Falls for drunk and disorderly at the Twin Falls Police Department.

The defendant was twenty-one (21) years old at the time of the shooting and had three (3) prior felony arrests.  Two of these charges had been reduced to misdemeanors pursuant to plea bargaining, and he had served approximately ninety (90) days in a California state correctional institution for car theft under a sentence comparable to Idaho's retained jurisdiction on the third felony.

The robbery charge occurring the evening before the shooting was dismissed pursuant to a plea bargain.

### CASE NO. 2

State v. Hutchenson, State v. Jordon, Cassia and Twin Falls Counties, June 1980.  Each defendant plead guilty to first degree murder, first degree kidnapping, and robbery, and were each sentenced to three concurrent life sentences.

Hutchenson and Jordon were involved in an organized drug distribution scheme in Southern Idaho.  The victims of the murder provided a large-scale supply of drugs and dealt in large quantities of drugs and money for distribution throughout Southern Idaho.  Prior to the murder defendants Hutchenson and Jordon and one, Harris, who was given immunity to testify against Hutchenson

and Jordon, decided to rip off the drug suppliers as they came
back through Burley, after traveling across Idaho.  When the
victims arrived, they were bound with rope, and made to lie on
the floor of the residence.  It was then discovered that the pair
did not have the large sums of money on them that was expected,
and a decision was made to take the pair to a deserted gravel pit
south of Burley and to leave them bound and to torch their auto-
mobile.  Hutchenson proceeded to the gravel pit and Harris and
Jordon were to bring the victims and the automobile to meet him
there.  After Hutchenson left, Jordon and Harris apparently
changed the plan and decided to kill the victims.  The victims
were placed in the trunk of the automobile and driven to Milner
Dam, an area of the Snake River near the border of Cassia and
Twin Falls Counties.

The victims, still bound, were taken out of the trunk
of the car and placed on the edge of the bridge, where they were
shot, falling into the river.  Jordon and Harris then drove the
automobile to the gravel pit where it was torched.

The badly decomposed bodies of the victims were found
in the river two months later.

Each defendant plead guilty to one count each, first
degree murder, kidnapping, and robbery, and were sentenced to
three concurrent life term sentences each.  The defendants were
approximately twenty-three (23) years old and neither one of them

had a prior record of serious assaultive conduct.  There was evidence of intoxication or drug influence at the time of the commission of the offenses.

## CASE NO. 3

State v. Betty Jane Mitchell, July 1980, Power County case, venue changed to Bannock County.  The defendant in the above matter was convicted by a jury of first degree murder in July of 1980, and was sentenced to life imprisonment by the Honorable Arthur P. Oliver.

The defendant, was convicted by a jury of contracting for the execution-style murder of her husband.  The motive for the murder was apparently to receive life insurance benefits on her husband's life.

The defendant made arrangements with two ex-convicts to have someone enter the Mitchell home in a well-planned scheme to murder the victim and make the murder appear as though it was incident to a burglary or robbery.  The home was ransacked, and the victim was bound by nylon ropes, with a section of the rope extending from the victim's feet up to and around his neck, causing death by strangulation.

Defendant appeared shortly after the murder to report it to the police as an apparent burglary/murder.

Defendant was a forty-eight-year-old (48) woman and

had, on previous occasion, mentioned to her daughter the subject of having her husband, and the daughter's father, killed.

CONCLUSION

Appellant has urged the Court to accept several allegations of error.

Should the Court conclude that Idaho's death penalty statute is unconstitutional for any of the reasons enumerated above, appellant requests that this Court find the defendant guilty of the lesser included offense of second degree murder, and remand to the District Court for resentencing.   State v. Lindquist, 99 Idaho 766.

Should the Court conclude that the sentence of death was imposed under passion, prejudice, or any other arbitrary factor, it is urged that this Court correct or modify the sentence and reduce appellant's sentence.   The authority for such procedure is found in State v. Sprouse:

> "'Justice is imperative, and must not be denied.
> ... In other words, the provisions of our criminal
> procedure act make it the duty of this court to review
> the record, and in a proper case, if necessary in the
> furtherance of justice, modify the judgment so as to
> prevent the imposition of punishment which the evidence
> will not warrant.'"  63 Idaho at 170.

In the event the Court determines that the sentence of death could have been imposed under passion, prejudice or any arbitrary

factor, it is submitted that the resentencing by the same court would be improper.  Therefore, it is requested that this Honorable Court modify the sentence and impose sentence less than death.

Should the Court conclude that the case below involved a procedural error, rendering the sentence of death invalid, it is urged that the cause be remanded to the District Court for resentencing by the trial judge, based on the record and argument of counsel.

Should the Court conclude that the sentence of death imposed herein is disproportionate and excessive, it is urged that the disposition is controlled by Idaho Code § 19-2827(e)(2), and this Court should:

> "Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel."

DATED this 22nd day of August, 1980.

Respectfully submitted,

GAYLEN L. BOX
McDermott & McDermott
Office of the Public Defender
Attorney for Defendant-Appellant

APPENDIX

[1] Idaho Code, § 19-2827.  "Review of death sentences --
Preservation of records. -- (a)  Whenever the death penalty is
imposed, and upon the judgment becoming final in the trial court,
the sentence shall be reviewed on the record by the Supreme Court
of Idaho.  The clerk of the trial court, within ten (10) days
after receiving the transcript, shall transmit the entire record
and transcript to the Supreme Court of Idaho and to the attorney
general together with a notice prepared by the clerk and a report
prepared by the trial judge setting forth the findings required
by section 19-2515(d), Idaho Code, and such other matters concern-
ing the sentence imposed as may be required by the Supreme
Court.  The notice shall set forth the title and docket number of
the case, the name of the defendant and the name and address of
his attorney, a narrative statement of the judgment, the offense,
and punishment prescribed.  The report may be in the form of a
standard questionnaire prepared and supplied by the Supreme Court
of Idaho.

(b)  The Supreme Court of Idaho shall consider the
punishment as well as any errors enumerated by way of
appeal.

(c)  With regard to the sentence the court shall deter-
mine:

(1)  Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2)  Whether the evidence supports the judge's finding of a statutory aggravating circumstance from among those enumerated in section 19-2515, Idaho Code, and

(3)  Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(d)  Both the defendant and the state shall have the right to submit briefs within the time provided by the court, and to present oral argument to the court.

(e)  The court shall include in its decision a reference to those similar cases which it took into consideration.  In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:

(1)  Affirm the sentence of death; or

(2)  Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel.

(f)  The sentence review shall be in addition to direct appeal, if taken, and the review and appeal shall be consolidated for consideration.

(g)   The Supreme Court shall collect and preserve the records of all cases in which the penalty of death was imposed from and including the year 1975.  [I.C., § 19-2827, as added by 1977, ch. 154, § 5, p. 390.]"

## CERTIFICATE OF SERVICE

I, GAYLEN L. BOX, of the firm McDermott & McDermott, Office of the Public Defender for the Sixth Judicial District, hereby certify that I have, this 22nd day of August, 1980, served two true and correct copies of APPELLANT'S REPLY BRIEF, by placing same in the United States mail, postage prepaid, and addressed to LYNN E. THOMAS, ESQ., Deputy Attorney General, Office of the Attorney General, State of Idaho, Statehouse, Boise, Idaho 83701, counsel for respondent.

GAYLEN L. BOX