Charles Peterson
Executive Director
Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, New York Bar No. 5414099
Miles Pope, Alaska Bar No. 1508066
Assistant Federal Defenders
Federal Defender Services of Idaho
702 W. Idaho Street, Suite 900
Boise, ID 83702
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org
       Christopher_M_Sanchez@fd.org
       Miles_Pope@fd.org

Stanley J. Panikowski, California Bar No. 224232
(admitted *pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:  619.699.2700
Facsimile:  619.699.2701
ECF:   stanley.panikowski@dlapiper.com


*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| **GERALD ROSS PIZZUTO, JR.,** | ) | **CASE NO. 1:20-cv-114-DCN** |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **MOTION TO COMPEL** |
| | ) | **DEFENDANTS TO DISCLOSE** |
| **JOSH TEWALT**, et al., | ) | **DRUG CHOICE** |
| | ) | |
| Defendants. | ) | **Execution Scheduled for June 2, 2021** |
| _____ | ) | |

For the reasons that follow, Plaintiff Gerald Ross Pizzuto, Jr. respectfully asks the Court to compel Defendants to reveal the name of the drug or drugs[1] they have selected for his execution, which has been scheduled at the Attorney General's request to take place in only fifteen days, on June 2, 2021.

Mr. Pizzuto has been diligently and consistently pursuing that core fact about his own death for two and a half years, but the State has shrouded it in secrecy so as to prevent its execution plans from receiving the searching judicial review that is appropriate in this life-and-death matter. Mr. Pizzuto first requested that Defendants tell him the drugs they had chosen for his execution on December 18, 2018. *See* Dkt. 29-1 at 2.[2] Instead of answering, Defendants strung undersigned counsel along for months and then never responded. *See* Dkt. 18 at 6–11. Because Defendants have historically insisted that execution-related claims be exhausted administratively before they are pursued in court, *see, e.g.*, *Creech v. Reinke*, No. 1:12-cv-173, 2012 WL 1995085, at *2 (D. Idaho June 4, 2012), Mr. Pizzuto did so and was denied the information at all three levels of the administrative process, *see* Dkts. 17-5, 17-8. As a result, Plaintiffs were forced to sue Defendants for the information, which they did in a Complaint filed in this action on March 5, 2020. *See* Dkt. 1. In the Complaint, undersigned counsel explained that Mr. Pizzuto had a particularly strong interest in learning the identity of the drugs that would be used to execute him, as he suffers from a host of severe health problems, including terminal cancer, severe heart disease, and an unusually long prescription-medication history. *See* Dkt. 1 at 40–46. These health issues would require his

---

[1] For simplicity, Mr. Pizzuto will henceforth use the word "drugs," "chemicals," and so forth, in the plural, though he does not know whether Defendants plan to utilize a single- or multiple-chemical cocktail, as the State has not made even that much clear.

[2] All ECF citations are to the page numbers provided by the electronic filing system and stamped in blue on the top of the page.

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE – Page 2

counsel to explore whether the chosen chemicals create the risk of an unconstitutionally torturous execution.  *See id.*

Rather than name the drugs, Defendants vigorously contested the lawsuit, seeking to dismiss it on multiple grounds.  *See* Dkt. 21.  As relevant here, Defendants argued that all of Plaintiffs' claims were unripe because Messrs. Pizzuto and Creech both had pending challenges to their convictions and/or sentences.  *See* Dkt. 21-1 at 6.  In response, Plaintiffs contested Defendants' position on ripeness, partly because it would unnecessarily force execution litigation into a highly compressed, last-minute timeframe.  *See* Dkt. 22 at 4.  This Court sided with Defendants, concluding that the claims were brought too early.  *See* Dkt. 34 at 8–9.  Mr. Pizzuto appealed.  At his request, the Ninth Circuit expedited the appeal.  *See Pizzuto v. Tewalt*, No. 20-36044, Dkts. 10, 11 (9th Cir.).

"[O]n the eve of argument," Dkt. 47 at 23 (six days prior), Defendants published a new execution protocol.  *See* Exs. 1, 2.[3]  Like the protocol that preceded it, *see* Ex. 3 at 36–39, and unlike numerous protocols in other jurisdictions, *see infra* at 5–7, the new protocol does not settle on any particular set of drugs for executions.  Rather, it gives the Director of the Department of Correction a menu of four possible recipes to choose from.  *See* Ex. 2 at 2–5.  As if this uncertainty was not enough, the new protocol also includes a proviso that it is "subject to revision at the discretion of the Director," who can "revise, suspend, or rescind any procedural steps, at any time." Ex. 1 at 1.  This provides the Director with unfettered discretion to change the protocol at any time

---

[3] When Mr. Pizzuto refers to the current "protocol" here, he has in mind version 4.0 of Standard Operating Procedure 135.01.01.001, as well as the documents hyperlinked there, including the Execution Chemicals Preparation and Administration form (hereinafter "Chemicals Form"), which also bears the date of March 30, 2021, and which was also—to undersigned counsel's knowledge—first published that day.

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE – Page 3

for any reason.  Similarly, the Chemicals Form that comprises part of the protocol states that there will be "no deviation from the . . . chemicals in this procedure without prior consent from the Director," Ex. 2 at 1, which presumably means that it *is* permissible to pick different drugs if one *does* have the Director's agreement.

While this case was pending on appeal, and after the Attorney General's Office had convinced this Court that pending post-conviction litigation made an execution speculative, and after the Attorney General's Office stood by that position in the Ninth Circuit—the Attorney General's Office proceeded to nevertheless request and obtain a death warrant before that post-conviction case had concluded.

After expedited briefing and oral argument, the Ninth Circuit issued an opinion on May 12, 2021, reversing and remanding this action.  *See* Dkt. 47.  The Ninth Circuit noted that this Court's ripeness analysis relied "solely on the fact that both Pizzuto and Creech have ongoing post-conviction litigation."  *Id.* at 8–9.  However, the panel "reject[ed] the district court's reasoning."  *Id.* at 9.  It described how this Court's "bright-line rule effectively compels a result" that the Ninth Circuit has "repeatedly and emphatically directed plaintiffs to avoid," i.e., the filing of "eleventh-hour challenges to their executions."  *Id.*  Consequently, the Ninth Circuit remanded and in so doing observed that Plaintiffs' "claims are important and deserve speedy resolution."  *Id.* at 23.  Two days after the opinion, on May 14, 2021, Plaintiffs filed an unopposed motion to expedite the issuance of the mandate and release it immediately.  *See* 9th Cir. Dkt. 43.  The Ninth Circuit granted the motion, *see* 9th Cir. Dkt. 44, and entered its mandate the same day, *see* 9th Cir. Dkt. 45.

Mr. Pizzuto has diligently and persistently sought from the State the most rudimentary information about its plans for executing him: the names of the drugs.  Defendants have steadfastly

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE – Page 4

refused to give him the information for 882 days and counting.  Now, with only fifteen days before

the execution, they continue to stonewall.   There is no legitimate basis for the State's

obstructionism.   Its own protocol requires it to "[e]nsure that execution chemicals have been

purchased or that sources have been established" between thirty and twenty-one days before the

execution.  *See* Ex. 1 at 19.  The State indicated to the Ninth Circuit at oral argument that

Defendants would inform Mr. Pizzuto of the drugs they had selected for his execution.  *See* Ex. 4

at 30 ("I do not think there's plans to withhold the information of the execution chemicals until

the last minute.").   Based on that representation, the Ninth Circuit clearly understood that

Defendants would do so in a timely fashion and in keeping with their own protocol's timeline.  In

fact, Judge Gould remarked upon the provision in his separate opinion, stressing that, "[u]nder this

procedure, there will always be at least three weeks before execution when the State of Idaho could

give notice to the prisoner and the prisoner's counsel of record about the chemicals purchased or

planned for in the execution," so that counsel could "evaluate their potential claims and . . . get the

matter of any federal constitutional claim before a federal court."  Dkt. 47 at 32.

Despite the State's assurances to the Ninth Circuit, and the terms of its protocol, it

continues to keep Mr. Pizzuto in the dark on the most essential fact about his own upcoming

execution—the identity of the drugs.  The State is plainly doing so to gain a litigation advantage

and trying to prevent Mr. Pizzuto from fully litigating—and the Court from fairly adjudicating—

any potential constitutional problems with the drugs.

The State could easily have chosen a drug for Mr. Pizzuto's execution years ago, adopted

a protocol selecting that drug, and made the protocol publicly available.  Other states routinely

follow this approach.  *See, e.g.*, *Arthur v. Thomas*, 674 F.3d 1257, 1265–66 (11th Cir. 2012)

(Hull, J., dissenting) (noting Alabama's three-drug protocol using sodium thiopental,

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE – Page 5

pancuronium bromide, and potassium chloride); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*,

779 F.3d 1275, 1278 (11th Cir. 2015) (noting Georgia's one-drug protocol using pentobarbital);

*DeYoung v. Owens*, 646 F.3d 1319, 1322 (11th Cir. 2011) (noting Georgia's three-drug protocol

using pentobarbital, pancuronium bromide, and potassium chloride); *Zink v. Lombardi*, 783 F.3d

1089, 1096 (8th Cir. 2015) (noting Missouri's one-drug protocol using pentobarbital); *Ringo v.*

*Lombardi*, 677 F.3d 793, 795 (8th Cir. 2012) (noting Missouri's three-drug protocol using

sodium thiopental, pancuronium bromide, and potassium chloride); *In re Fed. Bureau of*

*Prisons' Execution Protocol Cases*, 980 F.3d 123, 125 (D.C. Cir. 2020) (per curiam) (noting

federal government's one-drug protocol using pentobarbital); *Mann v. Palmer*, 713 F.3d 1306,

1309–10 (11th Cir. 2013) (noting Florida's three-drug protocol using pentobarbital, vecuronium

bromide, and potassium chloride); *Grayson v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1204,

1210–11 (11th Cir. 2017) (noting Alabama's three-drug protocol using midazolam, rocuronium

bromide, and potassium chloride); *Valle v. State*, 70 So. 3d 530, 538 (Fla. 2011) (noting

Florida's three-drug protocol using pentobarbital, pancuronium bromide, and potassium

chloride); *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017) (noting Tennessee's one-drug

protocol using pentobarbital); *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1269 (11th Cir.

2014) (noting Florida's three-drug protocol using midazolam, vecuronium bromide, and

potassium chloride); *McGehee v. Tex. Dep't of Criminal Justice*, No. H-18-1546, 2018 WL

3996956, at *1 (S.D. Tex. Aug. 21, 2018) (noting Arkansas' three-drug protocol using

midazolam, vecuronium bromide, and potassium chloride); *Wood v. Collier*, 836 F.3d 534, 536

(5th Cir. 2016) (noting Texas's single-drug protocol using pentobarbital); *Lightbourne v.*

*McCollum*, 969 So.2d 326, 345 (Fla. 2007) (noting Florida's three-drug protocol using sodium

pentothal, pancuronium bromide, and potassium chloride); *Brant v. Reddish*, No. 3:13-cv-412,

2019 WL 4600366, at *5 (M.D. Fla. Sept. 23, 2019) (noting Florida's three-drug protocol using etomidate, rocuronium bromide, and potassium acetate); *Evans v. State*, 914 A.2d 25, 73 (Md. 2006) (noting Maryland's three-drug protocol using sodium pentothal, pancuronium bromide, and potassium chloride); *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 297 (Tenn. 2005) (noting Tennessee's three-drug protocol using sodium pentothal, pancuronium bromide, and potassium chloride); *Foster v. Tex. Dep't. of Criminal Justice*, 344 S.W.3d 543, 545 (Tex. App. 2011) (noting Texas's three-drug protocol using pentobarbital, pancuronium bromide, and potassium chloride); *Fresnius Kabi USA v. Nebraska*, 4:18CV3109, 2018 WL 3826681, at *1 (D. Neb. Aug. 10, 2018) (noting Nebraska's four-drug protocol using diazepam, fentanyl, cisatracurium, and potassium chloride); *In re Ohio Execution Protocol Litig.*, 994 F. Supp. 2d 906, 909 (S.D. Ohio 2014) (noting Ohio's two-drug protocol using midazolam and hydromorphone).

Notably, the eleven jurisdictions listed above have carried out a combined 979 executions since the reinstatement of the death penalty in 1976. *See* Death Penalty Information Center, Execution Database (hereinafter "DPIC Executions"), available at

https://deathpenaltyinfo.org/executions/execution-database?filters%5Bstate%5D=Alabama&filters%5Bstate%5D=Arkansas&filters%5Bstate%5D=Florida&filters%5Bstate%5D=Georgia&filters%5Bstate%5D=Maryland&filters%5Bstate%5D=Missouri&filters%5Bstate%5D=Tennessee&filters%5Bstate%5D=Texas; Death Penalty Information Center, Executions Under the Federal Death Penalty, available at

https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/executions-under-the-federal-death-penalty. By contrast, Idaho has carried out three executions since 1976. *See* DPIC Executions, available at https://deathpenaltyinfo.org/executions/execution-

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE – Page 7

database?filters%5Bstate%5D=Idaho. Plainly, there is nothing about this modest measure of transparency that prevents a state from accomplishing executions.

In waiting until the last possible moment to shed light on the most crucial aspect of the execution, Defendants are following an established pattern of gamesmanship how they discharge their graves responsibilities. *See Creech,* 2012 WL 1995085 at *2–3 (describing how the State announced the drug it would use at the Leavitt execution within three weeks of the event). The Ninth Circuit denounced a similar course of conduct in *Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012) (per curiam). There, Arizona announced a change in the execution drug ten days before the date set by the death warrant and in the midst of litigation. *See id.* at 652. A unanimous panel of the Ninth Circuit deemed Arizona's "frequent changes to its protocol during litigation" to be "not sustainable." *Id.* at 653. This was so because Arizona's approach left "the courts with a rolling protocol that forces us to engage with serious constitutional questions and complicated factual issues in the waning hours before executions." *Id.* In the view of the Ninth Circuit, Arizona's dilatory tactics were incompatible with the principle that "[b]ecause the death penalty is undeniably the most serious penalty available to a State, the procedures for such penalty must be implemented in a reasoned, deliberate, and constitutional manner." *Id.* The Ninth Circuit warned that Arizona's gamesmanship "cannot continue." *Id.*

And yet, in Idaho, it does. As we speak, the State here is doing precisely what the Ninth Circuit rebuked Arizona for: withholding pivotal information abouts its execution plans until the last minute. To prevent Defendants from opportunistically continuing to obscure from Mr. Pizzuto the most important information about the most important duty they perform, undersigned counsel respectfully requests that the Court immediately compel the State to disclose the drugs it has selected for Mr. Pizzuto's execution.

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE – Page 8

DATED this 18th day of May 2021.

/s/ Jonah J. Horwitz
Jonah J. Horwitz
Christopher M. Sanchez
Miles Pope
Federal Defender Services of Idaho

/s/ Stanley J. Panikowski
Stanley J. Panikowski
DLA PIPER LLP (US)

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Mark Kubinski                                      Oscar Klaas
mkubinsk@idoc.idaho.gov                            oklaas@idoc.idaho.gov


/s/ Julie Hill
Julie Hill