UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS EUGENE CREECH,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JOSH TEWALT; Director, Idaho Department of Correction; TIM RICHARDSON, Warden, Idaho Maximum Security Institution; CHAD PAGE, Chief, Division of Prisons, Idaho Department of Correction, in his official capacity; and UNKNOWN EMPLOYEES, AGENTS, OR CONTRACTORS OF THE IDAHO DEPARTMENT OF CORRECTION,<br><br>　　　　　　Defendants. | Case No. 1:20-cv-00114-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are Plaintiff's Motion for Leave to Amend Complaint (Dkt. 86); Defendants' Motion to Take Judicial Notice (Dkt. 104); and Defendants' Motion to Dismiss Claims I, VI, and VII  (Dkt. 105).  On January 12, 2024, the Court heard oral argument on these motions.  For the reasons set forth below, the Court denies Defendants' Motion to Take Judicial Notice and grants in part and denies in part both Plaintiff's Motion for Leave to Amend Complaint and Defendants' Motion to Dismiss Claims I, VI, and VII.

## BACKGROUND

Plaintiff Thomas Eugene Creech is a death-row inmate in the custody of the Idaho Department of Correction ("IDOC").  He originally filed this civil rights action under 42 U.S.C. § 1983 in March 2020, raised numerous claims challenging the State's execution protocol, and

then subsequently filed an amended complaint.[1]  *Pizzuto v. Little*, No. 1:20-cv-00114-DCN, 2020 WL 6747974, at *1 (D. Idaho Nov. 17, 2020).  Defendants moved to dismiss Creech's amended complaint, and the district court granted the motion, concluding Creech's claims were not ripe for review because "the ultimate question of whether [Creech] will even be executed remains an undetermined and open question, rendering the claims in this case speculative and abstract."  *Id.* at *4.

On appeal, the Ninth Circuit concluded that some of Creech's claims were moot, held several others were ripe, reversed the district court's decision dismissing the case, and remanded for Creech to amend his complaint.  *Pizzuto v. Tewalt*, 997 F.3d 893, 905, 908 (9th Cir. 2021).  On remand, Creech filed an amended complaint, but the district court sua sponte dismissed his amended claims as futile and later denied Creech's motion for reconsideration of that dismissal.  *Creech v. Tewalt* ("*Creech I*"), No. 1:20-cv-00114-DCN, 2022 WL 60602, at *3-4 (D. Idaho Jan. 5, 2022).

On the second appeal, the Ninth Circuit affirmed the district court's decision in part, vacated it in part, and remanded the case once again.  *Creech v. Tewalt* ("*Creech II*"), 84 F.4th 777, 783 (9th Cir. 2023).  In doing so, the Ninth Circuit noted three developments during the second appeal's pendency that potentially impact Creech's claims:  First, the Idaho legislature enacted a new statute providing that certain execution-related information shall be confidential, Idaho Code § 19-2716A.  *Creech II*, 84 F.4th at 786.  Second, the legislature amended another statute to authorize a firing squad as an alternative method to lethal injection, I.C. § 19-2716.  *Creech II*, 84 F.4th at 787.  Third, IDOC had twice scheduled another inmate's execution and

---

[1]     Originally, Gerald Ross Pizzuto, Jr., who is also an Idaho death-row inmate, joined Creech in this action.  He is, however, no longer a party to this case but is proceeding separately.

"suspended" the execution protocols in connection with those planned executions.  *Id.*  The Ninth Circuit remanded to the district court with instructions to grant Creech leave to amend or supplement certain claims and to allow him to seek leave to amend his complaint in other respects under Rule 15 of the Federal Rules of Civil Procedure.  *Creech II*, 84 F.4th at 797.

The mandate on the Ninth Circuit's decision issued on October 13, 2023.[2]  On October 16, a state district court issued a death warrant,[3] and Creech filed his motion to amend his complaint in this case on October 17.  (Dkt. 86).  In his proposed second amended complaint, Creech asserts eight proposed claims for relief, including both those claims the Ninth Circuit instructed this Court to grant Creech leave to amend and other new claims.  (Dkt. 86-1).  According to Creech, his proposed Claims One, Six, Seven, and Eight are the realleged claims the Ninth Circuit instructed this Court to grant him leave to amend; and Claims Two, Three, Four, and Five are newly proposed claims, which the Ninth Circuit ruled Creech may seek leave to amend under Rule 15.

Defendants oppose Creech's motion to amend to assert Claims Two, Three, Four, and Five, arguing these newly alleged claims are futile.[4]  (Dkt. 103 at pp. 7-19).  Further, they assert Claim Eight is one which the Ninth Circuit has already rejected.  (*Id.* at p. 19).  Defendants, however, acknowledge the Ninth Circuit instructed this Court to grant Creech leave to reallege Claims One, Six, and Seven.  For this reason, they do not oppose Creech's motion to amend to assert these

---

[2]     After the Ninth Circuit's mandate issued, this case was reassigned to the undersigned judge.

[3]     The death warrant scheduled Creech's execution for November 8, 2023.  On October 19, however, the state district court stayed the execution pending a commutation hearing before the Idaho Commissions of Pardons and Parole.  That hearing occurred on January 19, 2024.

[4]     Although the legal standard for amendment under Rule 15(a) of the Federal Rules of Civil Procedure includes consideration of undue delay, bad faith, repeated failure to cure, undue prejudice, and futility, Defendants' opposition to Creech's motion to amend focuses primarily on futility.  *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (noting standard).

claims; instead, they move to dismiss them, arguing that Claims One and Seven fail to state a claim for relief (Dkt. 105-1 at pp. 6-12, 14-19) and that Creech lacks standing to assert Claim Six.  (*Id.* at pp. 4-5).

## LEGAL STANDARDS

### 1.    Standards Governing Amendment of Claims

#### a.   Rule 15(a)

Rule 15 of the Federal Rules of Civil Procedure provides a trial court should grant leave to amend freely when justice so requires.  Fed. R. Civ. P. 15(a)(2).  The policy favoring leave to amend is to be applied with "extreme liberality."  *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  Federal policy strongly favors determination of cases on their merits.  Whether to grant or deny a motion to amend is within the district court's discretion, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Courts may decline to grant leave to amend only if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc."  *Sonoma County*, 708 F.3d at 1117 (quoting *Foman*, 371 U.S. at 182).  "[T]he consideration of prejudice to the opposing party carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  *Eminence Capital, LLC*, 316

F.3d at 1052.  "The party opposing leave to amend bears the burden of showing prejudice."  *Serpa v. SBC Telecommunications, Inc.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004).

**b.  Rule 12(b)**

Dismissal is appropriate under Rule 12(b)(6) if the complaint fails to state a claim on which relief can be granted because it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim's implausibility "can be based on [either] the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint fails to state a claim for relief if the factual assertions in the complaint are insufficient for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In other words, a complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  If the alleged facts are "merely consistent with a defendant's liability," the complaint has not stated a plausible claim for relief.  *Id.* (internal quotation omitted).

In resolving a Rule 12(b)(6) motion, the court generally should not consider materials outside the complaint.  *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).  The court may consider, however, any attachments to the complaint and documents to which the complaint refers (even if not appended) if the authenticity of such a document is not in question.  *Id*. at 622-23. Further, a court may take judicial notice of a fact "not subject to reasonable dispute" if the fact:

"(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including, for example, "records of state agencies and other undisputed matters of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).

Finally, a trial court must dismiss a claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure if the plaintiff lacks standing to assert the claim.  Absent standing, the court lacks subject-matter jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## ANALYSIS

### 1.	Failure to Exhaust Administrative Remedies

As an initial matter, the Court addresses Defendants' argument that all of Creech's claims should be dismissed because he failed to exhaust his administrative remedies under IDOC's grievance procedure, IDOC Divisions of Prisons Standard Operating Procedure 316.02.01.001 ("SOP 316").  (*See* Dkt. 103 at p. 5 ("Plaintiff has not made any effort to resolve the substance of any of his proposed new claims."); Dkt. 105-1 at p. 4 ("Plaintiff has not exhausted his administrative remedies as to Claims [One], [Six], or [Seven]."); Dkt. 103-1 (explaining SOP 316 requires filing of informal concern, formal grievance, and appeal of grievance response)).

The Prisoner Litigation Reform Act of 1994 ("PLRA") requires a prisoner to exhaust all available administrative remedies within the prison system before he can assert claims in a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  The Court has previously ruled the exhaustion requirement, which applies to challenges to "prison conditions," also applies to method-of-execution challenges.  *Creech v. Reinke*, No. 1:12-cv-00173-EJL, 2012 WL 1995085, at *9 (D. Idaho June 4, 2012) (unpublished).

The failure to exhaust under the PLRA is an affirmative defense, however, which the defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). For that reason, a defendant may assert a failure to exhaust in a Rule 12(b)(6) motion to dismiss only if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1169; *see also id.* at 1166 ("In the rare event that a failure to exhaust is clear on the face of the complaint, the defendant may move for dismissal under Rule 12(b)(6)."). Otherwise, "defendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino*, 747 F. 3d at 1166.

In this case, Creech's failure to exhaust is not clear from the face of his proposed amended complaint. Creech does not and is not required to allege he exhausted his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (ruling that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). Further, the information the parties provide on the issue does not make Creech's failure to exhaust "clear" but rather raises factual issues. For example, Creech apparently did submit a "concern" under SOP 316 about the use of pentobarbital violating his Eighth Amendment rights (Dkt. 103-7); the IDOC "grievance coordinator" attests Creech had "not yet [as of November 9, 2023] submitted a grievance on this matter" (Dkt. 103-1 at ¶ 15); but Creech's counsel attests that on October 30, Creech signed a grievance form which counsel gave to an IDOC guard who agreed to "accept and process the grievance form." (Dkt. 116-1 at ¶ 5). This conflicting information raises factual questions about whether Creech has already exhausted his administrative remedies regarding Claim One, and the Court declines to resolve the issue at this juncture before Creech has filed a second amended complaint.

Further, Creech argues he is not required to exhaust administrative remedies regarding Claim Two, which asserts a procedural due process claim for lack of information regarding IDOC's execution protocol.  In support, Creech states IDOC informed his counsel it would not provide him any further executed-related information.  (Dkt. 114 at p. 13) ("IDOC officials were approached directly by Mr. Creech's counsel, engaged with them on their requests, and told them what execution-related information would and would not be made available.").  For this reason, Creech argues any grievance would be futile.  Depending on the nature of these communications, the exhaustion requirement may be excused with regard to Claim Two.  *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (holding exhaustion requirement is excused if plaintiff has "been reliably informed by an administrator that no remedies are available").

Likewise, the requirement may also be excused with respect to Creech's other claims which assert a right to execution-related information.  (*See* Dkt. 86-1 at ¶¶ 467-70, 531-32).  Finally, Creech's remaining claims are statutory challenges to legislative enactments.  No IDOC administrative procedure is available to address these challenges.  *See Ross v. Blake*, 578 U.S. 632, 643 (2016) (ruling inmate not required to exhaust administrative remedies where procedure is unavailable).

To the extent Defendants have an affirmative defense based on Creech's failure to exhaust his administrative remedies, the Court declines to rule on that defense at this time and reserves any ruling until the parties have fully developed the record on the issue.  Resolution of the issue, however, should be a priority for the parties.  *Albino*, 747 F.3d at 1171 (noting "disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation").

2.      **Eighth Amendment Violations Alleged in Claims One and Eight**

Creech has previously attempted to allege an Eighth Amendment violation related to his execution. By way of background, Creech previously alleged that IDOC's refusal to provide him any meaningful information about his execution creates a substantial risk he will be subjected to a severely painful execution. *See Creech II*, 84 F.4th at 796 (quoting Creech's prior "Claim Nine"). Addressing this claim, the Ninth Circuit noted that Creech failed to "identify the legal framework" for this claim and that it "appears to be most analogous to an Eighth Amendment method-of-execution claim," which requires a plaintiff to establish the execution method "creates 'a substantial risk of severe pain.'" *Id.* (quoting *Glossip v. Gross*, 576 U.S. 863, 882 (2015)).

The Ninth Circuit ruled that "given Creech's health conditions and medications," "Creech should be afforded the opportunity to amend this claim." *Id.* Relying on this ruling, Creech realleges two separate Eighth Amendment claims on remand:  (1) Claim One alleges "use of pentobarbital creates a substantial risk of serious pain and suffering because of his health conditions" in violation of the Eighth Amendment (Dkt. 86-1 at ¶¶ 320-418); and (2) Claim Eight alleges, again, that the "deprivation of information creates a substantial risk [Creech] will be subjected to a severely painful execution" in violation of the Eighth Amendment. (*Id.* at ¶¶ 530-38).

a.   **Claim Eight—"Deprivation of Information"**

Defendants opposed Creech's amendment to add Claim Eight, arguing "the Ninth Circuit has already rejected [Creech's] claim that the Eighth Amendment includes a right to information." (Dkt. 103 at p. 19).  In reply, Creech asserts the Ninth Circuit's ruling allows him to assert this claim; "the propriety of allowing the [inclusion of the] revamped claim has therefore already been

conclusively decided in [Creech's] favor"; and "he does not discuss it further." (Dkt. 111 at p. 2 n.1). This Court disagrees with Creech's reading of the Ninth Circuit's ruling.

In its opinion, the Ninth Circuit suggested Creech allege a method-of-execution Eighth Amendment claim, and at the same time, it questioned the validity of Creech's prior Eighth Amendment claim based on a lack of "any meaningful information." *Creech II*, 84 F.3d at 796. In particular, the Ninth Circuit noted Creech fails to identify a legal framework for such a claim. *Id.* On remand, instead of alleging a lack of meaningful information violated his Eighth Amendment right, Creech now alleges a "deprivation of information" violates his Eighth Amendment right. This claim, however, is not appreciably different than the one the Ninth Circuit questioned. Furthermore, Creech once again fails to identify any legal framework by which to analyze the claim. For example, Creech does not offer any citation to legal authority, any applicable standard, or any plausible elements for such a claim.

The Court declines to construct a legal framework to address Creech's purported Eighth Amendment "deprivation of information" claim. Because Creech failed to cure the deficiencies with this claim by identifying a legal framework for its analysis, the Court denies Creech's motion to amend to assert Claim Eight. *See Balistreri*, 901 F.2d at 699 (noting claim may be dismissed for "lack of a cognizable legal theory"); *Sonoma County*, 708 F.3d at 1117 (identifying repeated failure to cure deficiencies as factor in denying amendment).

**b. Claim One—"Substantial Risk of Serious Pain and Suffering"**

The Court concludes, however, that Creech's Claim One, which alleges (as the Ninth Circuit suggested) that the execution protocol creates "a substantial risk of serious pain and suffering because of his health conditions and medical history," does state a viable claim for relief under the Eighth Amendment. (*See* Dkt. 86-1 at ¶ 321) (alleging risk). Creech alleges in Claim

One that, because of his medical condition, a protocol using pentobarbital as applied to him is unconstitutional.  In support of Claim One, Creech alleges numerous health issues from which he suffers including, for example, type II diabetes, mixed hyperlipidemia, edema, an abdominal vascular aneurysm, atherosclerotic vascular disease, severe coronary artery disease, mild cerebral white matter disease, and an organic brain disorder.  (*Id.* at ¶¶ 322-32).

Further, Creech alleges these medical conditions "create a substantial risk of serious harm at an execution involving pentobarbital." (*Id.* at ¶ 333).  Specifically, he alleges, "a pentobarbital execution" would "likely" induce "an acute heart attack"; pentobarbital's sedating effects "are likely to occur minutes after the heart attack" has already begun; and as a result, Creech would suffer "substantial physical suffering, including chest pain, the feeling of crushing weight, and difficulty breathing" and "psychological discomfort, including a feeling of impending doom, anxiety, or fear." (*Id.* at ¶¶ 339-42).  Creech alleges he "would experience cruel and unusual pain and suffering from a heart attack" for a "significant amount of time before the pentobarbital completely sedates him." (*Id.* at ¶ 344).

"The Eighth Amendment does not guarantee a prisoner a painless death." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019).  Rather, the Eighth Amendment forbids forms of punishment that intensify the death sentence with a cruel, superaddition of terror, pain, or disgrace. *Id.*  To successfully challenge an execution method under the Eighth Amendment, the plaintiff must establish two factors.  First, the method presents a risk that is sure or very likely to cause serious illness and needless suffering and to give rise to sufficiently imminent dangers.  *Glossip v. Gross*, 576 U.S. 863, 877 (2025).  In other words, there must be an objectively intolerable, substantial risk of serious harm.  *Id.*

Second, a prisoner must show that "a feasible and readily implemented alternative method of execution would significantly reduce a substantial risk of severe pain" and that "the State has refused to adopt [the alternative method] without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125. "The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.'" *Id.* (quoting *Glossip*, 135 S. Ct. at 2738). "[I]dentifying an available alternative is 'a requirement of *all* Eighth Amendment method-of-execution claims,' alleging cruel pain." *Id.* at 1126 (quoting *Glossip*, 135 S. Ct. at 2731) (emphasis added).

In this case, Defendants argue Creech has failed to allege "IDOC's execution protocol . . . creates a substantial risk of serious imminent harm beyond the pain attendant to death by execution." (Dkt. 105-1 at p. 6). In support, Defendants characterize Creech's allegations as raising only "a speculative risk" of "some increase in pain during the execution process," asserting pain "consistent with the pain associated with death," failing to allege "superadded pain" (*id.* at p. 9), and alleging "a near instantaneous heart attack during his execution." (Dkt. 115 at p. 2).

Defendants' characterization of Creech's allegations, however, raise factual issues which are inappropriate for consideration under Rule 12(b)(6). Although Creech's allegations do not directly parrot the case law setting forth the standard for establishing an execution method as applied to him is unconstitutional, the Court finds Creech has plausibly alleged an Eighth Amendment method-of-execution claim. *Creech II*, 84 F.4th at 796; *cf. In re Federal Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 132-33 (D.C. Dist. 2020) (concluding plaintiffs plausibly alleged Eighth Amendment claim by alleging one-drug pentobarbital execution method causes "flash pulmonary edema"); *Johnson v. Lombardi*, No. 2:15-cv-4237-DGK, 2015 WL

6501083, at *1, 3 (W.D. Mo. Oct. 27, 2015) (noting inmate suffering from "atypical parasagittal meningioma brain tumor" would suffer irreparable harm if executed with pentobarbital).

Defendants also argue Creech has failed to allege "an alternative to lethal injection using pentobarbital that he would not challenge as unconstitutional." (Dkt. 105-1 at p. 11). Indeed, Creech attempts to dodge this issue by alleging his counsel has an ethical duty of loyalty not to identify an alternative execution method. (Dkt. 86-1 at ¶¶ 413-17; Dkt. 114 at p. 7). Nevertheless, as Creech argues, one of the challenges of identifying an alternative execution method in this case is that IDOC has not disclosed to Creech the exact method of lethal injection it certified as available for his execution. (*See* Dkt. 86-3 at p. 8) (stating that, although "facing an imminent execution date," Creech "has been told nothing by IDOC about what drug it will use"); (*see also* Dkt. 86-1 at ¶¶ 424-26) (alleging IDOC has not identified which of "four separate options" for lethal injection it selected for Creech's execution but told his counsel, "it [was] 'focusing' on obtaining pentobarbital for a single-drug protocol, without ruling out other options").

Although Creech did not allege an alternative execution method per se, he did allege alternative manners of executing him by lethal injection. Specifically, he alleges that "if the State relies on shady offshore compounding pharmacies to procure its lethal injection chemicals, it could simply not do so"; "it could employ an anesthesiologist to monitor the execution"; it could establish a direct sight line between the medical team and [Creech]"; and "it could allow the medical team to be present in the execution chamber so that they can react quickly should complications arise." (Dkt 86-1 at ¶ 412). Creech alleges that "removal of these failings could conceivably remove the risk of an Eighth Amendment violation occurring in [his] execution." (*Id.*). The Court finds that these allegations satisfy the pleading requirement that Creech allege an alternative execution method, particularly because he is apparently being forced to guess about the

exact method of lethal injection IDOC intends to use.  Accordingly, the Court grants Creech's motion to amend to assert Claim One and denies Defendants' motion to dismiss this claim for failure to state a claim.

**3.      Due Process Violations Alleged in Claims Two, Three, and Seven**

Creech proposes the amendment of three claims which allege due process violations under the Fifth and Fourteenth Amendments—Claims Two, Three, and Seven.  Two of these claims— Claims Two and Seven—allege a lack of execution-related information.  The Ninth Circuit previously addressed Creech's claim regarding Defendants' "failure to provide the execution-related information." *Creech II*, 84 F.4th at 793 (addressing prior Claim Four).  In that claim, Creech alleged a lack of information about IDOC's execution procedure precluded the courts from meaningfully reviewing the constitutionality of that procedure. *Id.*

Addressing Creech's prior procedural due process claim, the Ninth Circuit acknowledged that other circuits, including the Fifth, Sixth, Eighth, and Eleventh Circuits, "have rejected due process claims to execution-related information." *Id.*  Regardless, the Ninth Circuit ruled it had "left open the possibility" inmates may assert a procedural due process right to execution-related information, "when they would otherwise be denied the opportunity to have an Eighth Amendment method-of-execution challenge heard at a meaningful time and in a meaningful manner." *Id.* Contemplating whether Creech was being denied an opportunity to meaningfully assert an Eighth Amendment method-of-execution challenge, the Ninth Circuit noted that IDOC's execution protocol did "not identify the drug or drugs to be used in a particular execution" and that IDOC had twice suspended its protocol after scheduling an execution. *Id.*  Based on these circumstances and the enactment of I.C. §§ 19-2716 and 19-2716A, the Ninth Circuit concluded Creech should

be allowed to amend his procedural due process claim.  *Creech II*, 84 F.4th at 793-94; *see also id.* at 786-87 (noting developments during appeal).

### a.  Claim Seven Alleging Deprivation of Accurate Information

Defendants move to dismiss Creech's Claim Seven, which Defendants characterize as Creech's reassertion of his prior procedural due process claim that the Ninth Circuit ruled he could reallege.  Creech's Claim Seven alleges the State violates his due process rights by refusing to provide him "with information that would enable him to determine how the State intends to execute him."  (Dkt. 86-1 at ¶ 469).  In support, Creech relies on various examples of IDOC's alleged obfuscation, including IDOC's prior suspension of SOP 135 related to another scheduled execution and its refusal to provide any information about drug testing.  (Dkt. 86-1 at ¶¶ 483-86, 493-501).  Creech specifically challenges the constitutionality of I.C. § 19-2716A, which prohibits the disclosure of the identity of "[a]ny person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution or that provides the medical supplies or medical equipment for the execution process."  I.C. § 19-2716A(4)(b).  (*See* Dkt. 86-1 at ¶ 499) (alleging I.C. § 19-2716A violates due process).

Challenging Claim Seven, Defendants do not directly address Creech's challenge to I.C. § 19-2716A.  Instead, they argue that "other circuits have routinely rejected similar due process claims"; "the Ninth Circuit has previously rejected just such a claim" in *McKenzie v. Day*, 57 F.3d 1461 (9th Cir. 1995); and this case is distinguishable from *First Amendment Coalition of Arizona, Inc. v. Ryan*, 938 F.3d 1069 (9th Cir. 2019).  (Dkt. 105-1 at pp. 14-18).  The problem with Defendants' argument and citation to these authorities, however, is that the Ninth Circuit was aware of and cited to these same authorities when it ruled, nonetheless, that it has "left open the

possibility" of a procedural due process claim for failure to provide "execution-related information." *Creech II*, 84 F.4th at 793 (citing other circuit authorities rejecting claim and relying on *First Amend. Coal.*, 938 F.3d at 1080, to conclude claim is possible); *see also Creech II*, 84 F.4th at 792 n.6 (citing *McKenzie*, 57 F.3d at 1461). Obviously, the Ninth Circuit did not read these authorities as precluding a procedural due process claim for failure to provide execution-related information.

The clear import of the Ninth Circuit's decision addressing Creech's previous procedural due process claim is that Creech could allege such a claim if the lack of execution-related information "rais[ed] some doubts about whether [he] will be able to have an Eighth Amendment method-of-execution challenge heard at a meaningful time and in a meaningful manner." *Creech II*, 84 F.4th at 793. Creech's allegations in Claim Seven raise those doubts. Specifically, Creech alleges he has been left to guess at IDOC's intended method of execution scheduled by the October 2023 death warrant, i.e., whether IDOC intended to use only pentobarbital or some other drug or combination of drugs. Further, now that the legislature has approved a firing squad as an alternative to lethal injection if it is unavailable, I.C. § 19-2716A, Creech could conceivably be executed by firing squad (as Defendants' counsel acknowledged during oral argument) for which there is apparently no protocol presently. For these reasons, the Court grants Creech's motion to amend to assert Claim Seven and denies Defendants' motion to dismiss the claim.

**b. Claim Two Alleging Lack of Valid Execution Protocol**

Like Creech's Claim Seven, his proposed Claim Two alleges a procedural due process violation based on the lack of execution-related information, i.e., "lack of a valid execution protocol." (Dkt. 86-1 at p. 56). In support of this claim, Creech alleges that the "now-outdated [protocol SOP 135] does not govern [his] . . . execution"; "[n]o execution protocol yet exists which

can validly govern [his] method of execution"; and the "now-outdated protocol does not identify

a recipe for executions."  (Dkt. 86-1 at ¶¶ 421, 423, 425).  Further, he alleges that "without notice

of the procedures to be used in his execution, [he] will be deprived of his life without being able

to adequately challenge the constitutionality of the procedures."  (*Id.* at ¶ 429).

Creech premises his allegation that SOP 135 (which was last revised on March 30, 2021)

is "outdated" on the fact the legislature has since amended I.C. § 19-2716 in July 2023 to provide

for execution by lethal injection or, alternatively, by firing squad if lethal injection is not

"available."  Defendants, however, dispute Creech's assertion that SOP 135 is outdated as "false"

and assert SOP 135 "will continue in full effect unless IDOC adopts a new version."  (Dkt. 103 at

pp. 10-11).  Further, they argue SOP 135 "satisfies constitutional safeguards."

In support of this latter assertion, Defendants argue courts have previously found SOP 135

meets constitutional standards, citing *Rhoades v. Reinke*, 671 F.3d 856 (9th Cir. 2011), and *Creech*

*v. Reinke* ("*Creech III*"), No. 1:12-cv-00173-EJL, 2012 WL 1995085 (D. Idaho June 4, 2012).

These cases, however, address different versions of SOP 135.  *Creech III*, 2012 WL 1995085, *16

(addressing protocol amended January 2012 and noting *Rhoades* addressed 2011 protocol).

Further, the conclusions in *Rhoades* and *Creech III* that prior versions of SOP 135 were

constitutional were based on additional evidence regarding how IDOC would implement SOP 135.

In *Rhoades*, the Ninth Circuit affirmed the district court's conclusion SOP 135 met the

constitutional safeguards after considering the affidavit and testimony of Jeff Zmuda, the Deputy

Chief of the Bureau of Prisons charged with implementing SOP 135's procedures.  *Rhoades*, 671

F.3d at 860; *see also id.* at 861 (noting district court correctly concluded SOP 135 protocol "as it

will be implemented" contained requisite safeguards).  Likewise, in *Creech III*, the district court

considered Zmuda's supplemental affidavit, and the Ninth Circuit concluded "the supplemental

evidentiary record" resolved any arguments about "the risk of harm."  2012 WL 1995085, at *13, 16.

Because the decisions in *Rhoades* and *Creech III* addressed different versions of SOP 135 and considered supplemental evidence regarding the procedure's implementation, they are inapposite in this case.  Defendants neither articulate how the 2021 version of SOP 135 is the same as prior versions nor explain why supplemental evidence is now unnecessary to establish the 2021 version of SOP 135 satisfies constitutional standards.  Additionally, Creech is correct that no SOP addresses the protocol for execution by firing squad in the event the Director concludes lethal injection is not "available"—which is a conceivably possible future scenario.

Finally, the Court notes the 2021 version of SOP 135 provides that "this SOP is subject to revision at the discretion of the Director of the IDOC.  The Director may revise, suspend, or rescind any procedural steps, at any time, at the Director's sole discretion."  Unlike *Creech III*, there is no evidence in this case IDOC "will not exercise its discretion to depart" from the protocol "at any time," including after a death warrant issues.  *See Creech III*, 2012 WL 1995085, at *16 (noting IDOC notified inmate "it will not exercise its discretion to depart from the 2012 Protocol").  For these reasons, the Court grants Creech's motion to amend his complaint to assert Claim Two.

### c.  Claim Three

Creech's proposed Claim Three also purports to assert a due process violation because I.C. § 19-2716 "permits state officials to act with unfettered discretion."  (Dkt. 86-1 at p. 59).  In support of this claim, Creech alleges the Director has "sole and unqualified discretion in choosing which [execution] method to employ and what procedures to use during the execution," and as a result, I.C. § 19-2716 violates his due process rights.  (Dkt. 86-1 at ¶ 437).  In support of his motion to amend his complaint to add Claim Three, Creech argues, "That kind of sweeping authority raises

all manner of constitutional questions, none of which have ever been resolved by binding precedent" and "deserve to be fully litigated, which is all that amendment guarantees." (Dkt. 86-3 at p. 17). Creech, however, offers no legal framework for analyzing a due process claim based on a state official's overly broad discretion. For example, he does not cite any legal authority addressing such a claim; he does not offer a standard for reviewing it; and he does not state what the elements of the claim are. The Court, meanwhile, has been unable to identify any authority providing for a due process claim based on a state official's purportedly overbroad discretion. Because Creech's Claim Three fails to state a claim for relief, the Court denies Creech's motion to amend his complaint to assert Claim Three. This denial, however, is without prejudice. If Creech can identify a plausible legal framework, he may be able to reallege the claim.

**4.      Violation of Separation of Powers Alleged in Claim Four**

In proposed Claim Four, Creech alleges I.C. § 19-2716 violates the separation of powers clause of the Idaho Constitution. *See* Idaho Constitution, art. II, § 1 (articulating distribution of powers). In support, Creech alleges that "the Idaho legislature may not delegate its lawmaking powers to another body"; "an impermissible delegation of authority occurs when the legislature grants 'unbridled' authority to the separate body"; and I.C. § 19-2716 "gives unbridled, unregulated, and uncontrolled discretion" to the IDOC Director by allowing him "to determine what method(s) of execution are available." (Dkt. 86-1 at ¶¶ 439-43).

The Idaho Supreme Court has previously addressed a similar argument challenging the prior version of I.C. § 19-2716 in *State v. Osborn*, 631 P.2d 187 (Idaho 1981). At that time, I.C. § 19-2716 provided that "the punishment of death must be inflicted by the intravenous injection of a substance or substances in a lethal quantity sufficient to cause death until the defendant is dead. The director of the department of corrections shall determine the substance or substances to

be used and the procedures to be used in any execution."  Osborn, a death-row inmate, challenged this statute, arguing the legislature improperly delegated the power to inflict the death penalty to the IDOC under I.C. § 19-2716.  *Osborn*, 631 P.2d at 201.  The Idaho Supreme Court rejected Osborn's argument, reasoning that "the existence of an area for exercise of discretion by an administrative officer under delegation of authority does not render delegation unlawful where standards formulated for guidance and limited discretion, though general, are capable of reasonable application."  *Id.* (quoting *Ex parte Granviel*, 561 S.W.2d 503, 514-15 (Tex. Crim. App. 1978)); *see also Creech II*, 84 F.4th at 795-96 (relying on *Osborn* and rejecting Creech's previous separation of powers claim).

Creech does not directly address *Osborn* but rather cursorily argues I.C. § 19-2716 is a "newly-enacted statute raising new constitutional issues based on new statutory language, involving a new method of execution, a new 'availability' scheme that was not present in the old law," and as a result, Claim Four is not "identical" to his prior claim rejected by the Ninth Circuit under *Osborn*.  (Dkt. 111 at p. 5).  Although the legislature has amended I.C. § 19-2716 since the Ninth Circuit rejected Creech's prior separation of powers claim, the amendment does not render *Osborn* inapplicable.

The newly amended I.C. § 19-2716 does not grant the IDOC Director any greater discretion than it did previously.  Under the prior version of the statute, the legislature granted the Director the authority to determine the substances and procedures to be used.  Subsumed within that discretion was the authority to determine whether the substances to be used were available.  The amendment to I.C. § 19-2716 now requires the Director to certify whether lethal injection—i.e., the substances for that method—is "available."  The new requirement of certification does not grant the Director greater discretion then he previously had.  Further, this Court finds that, as with

the prior version of I.C. § 19-2716, the Director's discretion under the newly amended I.C. § 19-2716 can be capable of reasonable application with appropriate protocols.  Because *Osborn* remains applicable to the newly amended I.C. § 19-2716, Claim Four is futile, and the Court denies Creech's motion to amend to assert Claim Four.

**5.      Equal Protection Violation Alleged in Claim Five**

In Claim Five, Creech alleges I.C. § 19-2716 violates his equal protection rights.   In support, he alleges he has "a fundamental right to be free of cruel and unusual punishment"; "no principled basis [exists] for determining what execution method is available and what conditions make it 'available'"; and as a result, I.C. § 19-2716 "permits the State to act in an arbitrary manner with respect to [Creech] as compared to other condemned prisoners leading to disparate treatment across executions" and affecting his fundamental right.  (Dkt. 86-1 at ¶¶ 448-51).

As Defendants note, the Ninth Circuit has previously rejected just such a claim in *Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012).  In that case, plaintiffs, who were death-row inmates, argued the execution protocol granting the Director of the Arizona Department of Corrections discretion to make decisions regarding how their executions would be carried out violated the Equal Protection Clause of the Fourteenth Amendment.  *Id.* at 659.  In addressing this challenge, the Ninth Circuit noted that "treating one similarly situated prisoner differently from another with regard to punishment does not inherently impact the right to be free of cruel and unusual punishment." *Id.* at 660.  It ruled that "the class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments.'" *Id.* (quoting *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008)).  Rather, a plaintiff is required to show an actual pattern of treating prisoners differently and detrimentally in ways that affect the risk of pain.  *Towery*, 672 F.3d at 660.  "In

other words, the existence of discretion, standing alone, cannot be an Equal Protection violation." *Id.* at 661.   Moreover, the Ninth Circuit concluded it was rational to conclude the Director was "best situated" to implement execution protocols.   *Id.*

The Ninth Circuit has previously relied on *Towery* to reject Creech's Equal Protection claim.   *Pizzuto*, 997 F.3d at 907 ("To the extent [Creech] claim[s] that Idaho's execution protocol allows so much variance in execution procedures that it violates the Equal Protection Clause, we have already rejected such a theory [in *Towery*].").   Like Creech's prior Equal Protection claim, his proposed Claim Five fails to allege he is "being treated less favorably than others generally are." *Id.* (quoting *Towery*, 672 F.3d at 661).   Further, contrary to *Towery*, Creech fails to allege an actual pattern of treating prisoners differently and detrimentally in ways that affect the risk of pain. For these reasons, the Court denies Creech's motion to amend to assert Claim Five.

**6.   First Amendment Right to Access Alleged in Claim Six**

Creech's proposed Claim Six is entitled, "Deprivation of Information Violates First and Fourteenth Amendment Rights to Access to Government Proceedings."   (Dkt. 86-1 at p. 62). Previously, the Ninth Circuit addressed Creech's claim asserting "the public's First Amendment right of access to government proceedings."   *Creech II*, 84 F.4th at 790.   Regarding this claim, it noted that "Creech appears to be asserting the First Amendment rights of others" but that "the parties have not briefed the issue of whether Creech has standing to make this claim."   *Id.* at 791. The Ninth Circuit stated that it would "allow Creech to assert this claim on remand" and that "the district court should address whether Creech has standing to do so."   *Id.*   It limited Creech's potential amendment, however, by specifically concluding Creech's First Amendment claim "would be futile ***except*** with respect to Creech asserting that his attorneys have a right to observe the entire execution."   *Id.* (emphasis added).

Relying on the Ninth Circuit's ruling allowing him to reallege a First Amendment claim, Creech proposes Claim Six.  Creech, however, disregards the express limitation on the Ninth Circuit's ruling.  Namely, he again alleges "the public—and the press—have an affirmative, enforceable right of access" to executions.  (Dkt. 86-1 at ¶ 455).  Because the Ninth Circuit has already concluded asserting a First Amendment right on behalf of anyone other than Creech's attorneys would be futile, the Court denies Creech's proposed Claim Six to the extent that it attempts to assert a First Amendment right on behalf of the press and the public.

The Court also denies Creech's proposed Claim Six as it relates to his attorneys, whom he alleges have a constitutional right "to access the execution chamber, the right to witness the entire execution procedure, and the right to be permitted access to cameras and phones during the execution." (*Id.* at ¶ 460).  Although the Ninth Circuit did not rule such a claim would be futile, it did indicate Creech likely lacked standing to assert such a claim.  *Creech II*, 84 F.4th at 791; *see also Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (ruling ordinarily party must assert his own legal rights and cannot rest his claim for relief on legal rights of third parties).

Despite the Ninth Circuit's instruction that standing be addressed, Creech does not allege standing to assert a violation of another's First Amendment Rights.  (*See* Dkt. 86-1 at ¶¶ 454-65) (alleging violations of others' First Amendment Rights but not standing to do so).  Further, Defendants moved to dismiss Claim Six for lack of standing (Dkt. 105-1 at pp. 4-5), but Creech failed to respond to Defendants' argument or to otherwise argue he has standing to assert a First Amendment claim on behalf of others, including his attorneys.  (*See generally*, Dkts. 86-3, 111 (providing argument in support of motion to amend); Dkt. 114 (providing argument in opposition to motion to dismiss)).  Because Creech failed to provide any argument, cite any legal authority, or otherwise address his standing to assert proposed Claim Six, Creech has waived the claim.  *See*

Dist. Idaho Loc. Civ. R. 7.1(e) (providing failure to respond "may be deemed a waiver by the moving party of the pleading or motion").

**7.     Motion for Judicial Notice**

Defendants filed a motion seeking judicial notice under Federal Rule of Evidence 201(b)(2) of four documents.  (Dkt. 104).  These documents include:  (1) three IDOC press releases providing information about (a) the issuance of a death warrant for another inmate and the suspension of SOP 135; (b) IDOC's suspension of that inmate's execution; (c) the second issuance of a death warrant for the other inmate and the suspension of SOP 135; and (2) the Director's declaration, dated October 12, 2023, certifying lethal injection is available for Creech's execution.  Creech does not oppose Defendants' motion.

Notwithstanding Creech's non-opposition, the Court declines to take judicial notice as IDOC requests.  Under Rule 201(b), the court may judicially notice an adjudicative fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Rule 201(b), however, only permits a court to take judicial notice of a fact, not of the source of that fact.  *Williams v. Employers Mut. Casualty Co.*, 845 F.3d 891, 904 n.6 (8th Cir. 2017); *see also Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 649-50 (7th Cir. 2011) (affirming refusal to take judicial notice of various documents where offering party failed to identify facts to be noticed).

The documents for which Defendants request judicial notice contain numerous "facts"; Defendants do not identify which facts are judicially noticeable; and the Court cannot readily determine the accuracy of numerous facts based on the source of those facts.  Moreover, the Court does not rely on Defendants' conduct described in those documents to resolve either Creech's motion to amend or Defendants' motion to dismiss.  *See, e.g.*, *Santa Monica Food Not Bombs v.*

*City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of reports that were not relevant to the resolution of the appeal); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 2000) (declining to take judicial notice of statistics that were not relevant to any issue on appeal).  Accordingly, the Court denies Defendants' motion for judicial notice.

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's Motion to Amend (Dkt. 86) is **GRANTED IN PART AND DENIED IN PART** as set forth above.  Creech may proceed on Claims One, Two, and Seven of the Second Amended Complaint.  Claim Three is dismissed without prejudice.  Claims Four, Five, Six, and Eight are dismissed with prejudice.

2.    Defendants' unopposed Motion to Take Judicial Notice (Dkt. 104) is **DENIED**.

3.    Defendants' Motion to Dismiss (Dkt. 105) is **GRANTED IN PART AND DENIED IN PART** as set forth above.  Claims Four, Five, Six, and Eight of the Second Amended Complaint are dismissed with prejudice.

DATED: January 30, 2024

Amanda K. Brailsford
**Amanda K. Brailsford**
U.S. District Court Judge